**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | On appeal from the United |
| ) | | States District Court for the |
| Plaintiff-Appellee, | ) | Southern  District of Illinois |
| ) | | (East St. Louis) |
| ) | | |
| vs. | ) | No.  07 CR 30179 |
| ) | | |
| CARL A. COURTRIGHT, III, | ) | Honorable David R. Herndon |
| ) | | United States District Judge, |
| Defendant-Appellant. | ) | Presiding. |

---

**BRIEF AND ARGUMENT
OF
CARL A. COURTRIGHT, III
AND
SHORT APPENDIX**


GARETH G. MORRIS,
1704 N. Dayton St., Ste 100.
Chicago, Illinois 60614
312 943-6178


COUNSEL FOR DEFENDANT-APPELLANT
CARL A. COURTRIGHT, III


**ORAL ARGUMENT REQUESTED**

**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | On appeal from the United |
| ) | States District Court for the |
| Plaintiff-Appellee, ) | Southern  District of Illinois |
| ) | (East St. Louis) |
| vs. ) | **No.  07 CR 30179** |
| ) | |
| CARL A. COURTRIGHT, III, ) | Honorable David R. Herndon |
| ) | United States District Judge, |
| Defendant-Appellant. ) | Presiding. |

---

**DISCLOSURE STATEMENT**

The undersigned, counsel for Defendant-Appellant, furnishes the following list in compliance with Circuit Rule 26.1:

1.  The full name of every party or amicus the attorney represents in the case: CARL A. COURTRIGHT, III. Said party is not a corporation.

2.  The names of all law firms whose partners or associates have appeared for a party in the district court or are expected to appear for the party in the case:

- Jeffrey Rosanswank, 920-A East Broadway, Ste. 205, Columbia, MO 65205;

- Judith A Kuenneke, 401 W. Main St., Benton, IL 62812;

- Renee E. Schooley, 650 Missouri Ave. Ste G10A, East St. Louis, IL 62202;

- Timothy J. Capps, 780 E. Grand Ave., Carbondale IL 62902;

- Michael Thompson and Nicole Gorovsky, AUSA's, 9 Executive Drive, Ste 300, Fairview Heights, IL 62208;

- James Anthony Silver, USDOJ, 1400 New York Ave. NW, Ste. 600, Washington, D.C. 20530; and

- Gareth G. Morris, 1704 N. Dayton St., Ste. 100, Chicago, Ill. 60614

Dated:  July 2, 2010

_____

Gareth G. Morris

ii

**TABLE OF CONTENTS**

PAGE

DISCLOSURE STATEMENT…………………………………………………… ii

TABLE OF AUTHORITIES………………………………………………… v

JURISDICTIONAL STATEMENT…………………………………………........... 1

ISSUE PRESENTED………………………………………………………… 2

STATEMENT OF CASE…………………………………………………… 4

STATEMENT OF FACTS……………………………………………….. 5

SUMMARY OF ARGUMENT…………………………………………….. 11

ARGUMENT………………………………………………………………... 14

I.  The Court's preliminary elements instructions were clearly erroneous, incon-
sistently worded and misleading, particularly in suggesting prior convictions
that did not exist…………………………………………………………… 14

II. The court failed to properly correct the elements instruction errors, and left
the jury with the impression that Courtright had a prior child pornography of-
fense and that it was somehow relevant to his guilt in relation to the present
charges…………………………………………………………………... 16

III. It was clear and prejudicial error for the court, over defendant's objection,
to admit Lisa Miller's testimony under Federal Rules of Evidence 413 and
414…………………………………………………………………….. 17

IV. Rule 404(b) does not provide an alternate basis for admitting this evidence.. 23

V.  The limiting instruction given right before Lisa Miller's testimony, and the
final instructions based on Rules 413 and 414 were erroneous; they misled, con-
fused and prejudiced the jury..…………………………………………… 27

VI. The final Rule 413/414 Instruction was likewise erroneous and mislead-
ing…………………………………………………………………….. 29

VII. Instruction 12 also erred by telling the jury that evidence of a prior offense
was *generally relevant* to the issue of defendant's guilt. . …………………….. 31

VIII.   Each error alone is a sufficient basis for setting aside this verdict, and be-
cause they all relate to prior bad acts and prior convictions, each interacted with
and amplified the prejudicial effects of the others.  The cumulative effect of
these  was immensely prejudicial and denied Courtright a fair trial…………… 32

CONCLUSION………………………………………………………………. 33

**TABLE OF AUTHORITIES**

**Cases**

*Michelson v. United States*, 335 U.S. 469 (1948)........................................................28

*United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007),........................................ 29-31

*United States v. Conner* 583 F.3d 1011 (7th Cir. 2009) ......................................23, 26, 33

*United States v. Farinella* 558 F.3d 695 (7th Cir. 2009)...................................................21

*United States v. Hawpetoss*, 478 F.3d 820 (7th Cir. 2007)..........................................13, 21

*United States v. Hale*, 448 F.3d 971 (7th Cir. 2006) ......................................................24

*United States v. Hunter*, 145 F.3d 946 (7th Cir. 1998) ...................................................18

*United States v. Johnson* 495 F.3d 536 (7th Cir. 2007) ..................................................16

*United States v. Julian*, 427 F. 3d 471 (7th Cir. 2005) ...................................................17

*United States v. Liporace*, 133 F.3d 541 (7th Cir. 1998) ................................................14

*United States v. Lloyd*, 71 F.3d 1256, 1266 (7th Cir. 1995)......................................14, 24

*United States v. Ortiz, 474 F.3d 976, 982 (7th Cir. 2007)* ..............................................18

*United States v. Paladino*, 401 F.3d 471, 474-5 (7th Cir. 2005)......................................23

*United States v. Rogers* 587 F.3d 816 (7th Cir. 2009) ..............................................13, 19

*United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984) ...................................26

*United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004).........................................24

*United States v. Wright*, 901 F.2d 68, 70 (7th Cir. 1990) ...............................................28

**Statutes**

18 U.S.C. § 1344  .............................................................................................. 1

iv

18 U.S.C. § 2251 ...............................................................................1, 4, 15

18 U.S.C. § 2252 ...................................................................................1, 15

18 U.S.C. § 3231… ....................................................................................1

18 U.S.C. § 3559(e) ...................................................................................4

18 U.S.C. §§ 3742(a)(1), (2) and (3) .........................................................2

28 U.S.C. § 1291 .......................................................................................2

**Other Authorities**

Federal Rule of Evidence 403 ..............................................................23-25

Federal Rule of Evidence 404(b) .................................................. 3, *passim*

Federal Rule of Evidence 413 ....................................................... 3, *passim*

Federal Rule of Evidence 414 ....................................................... 3, *passim*

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of Illinois had jurisdiction pursuant to Title 18 U.S.C. § 3231, which provides exclusive jurisdiction of offenses against the United States, and, Rule 18, Fed. R. Crim. P. The February 18, 2009 Second Superseding Indictment (R. 67) charged appellant, Carl Courtright, III ("Courtright"), with five felony counts:

- Count One charged production of child pornography in violation of 18 U.S.C. § 2251(a);

- Counts Two and Three charged possession of child pornography in violation of 18 U.S.C. § 2252(b)(2);

- Count Four charged receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2);

- Count Five charged bank fraud for devising a scheme to defraud the Regions Bank, insured by the FDIC, in violation of 18 U.S.C. § 1344; and

- Counts Six and Seven were forfeiture counts.

The case was tried to a jury in a five-day trial. The jury returned verdicts of guilty on all counts. Mr. Courtright was sentenced to: Life in prison plus 120 months on Count One, 240 months on Counts Two and Three, 480 months on Count Four and 360 months on Count Five, all to run concurrently; supervised release for life on each Count; a special assessment of $500; a fine of $1,500; and ordered to pay restitution of $3,100.

1

This appeal is from the district court's final judgment of conviction and sentence imposed on July 17, 2009. R.[1] 115.  The United States Court of Appeals for the Seventh Circuit has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §§ 3742(a)(1), (2) and (3) based on the following particulars:

> ➤ Date of judgment sought to be reviewed: The judgment was imposed on July 17, 2009 and entered on **July 21, 2009** (R. 115, App. 37-43).

> ➤ Filing date of Notice of Appeal: **July 24, 2009**. (R. 117).

## ISSUES PRESENTED

1.      Was it clear error for the court at the beginning of the trial, *sua sponte*, to give the jury initial instructions as to Count One (manufacture of child pornography), that added as a required element,  proof of defendant's prior conviction "… of a sex offense"; and that added as to Counts Two and Three (possession of child pornography), proof of "… sexual abuse …involving a minor or production, possession, receipt… of child pornography "?

2.      Did the court compound this admitted error by giving revised elements instructions – on the second day of trial - that omitted these prior conviction elements without explaining that in fact there could be no proof of a prior conviction for the  "production, possession, receipt…" of child pornography because, as the government knew, Courtright had no such prior conviction?

3.      Was it clear and prejudicial error for the court to admit testimony from a 14-year-

_____

[1] **R.** is used as an abbreviation for the District Court Clerk's Record.
**Sent. Tr.** is an abbreviation for the Sentencing Transcript on October 3, 2008, which is in the Appendix.
**Tr.** is an abbreviation for the Trial Transcript.
**App**. is an abbreviation for the Appendix to this brief.

2

old victim of a 1998 sexual assault, on the express basis of Rules of Evidence 413 and 414; and assuming it was, did Rule 404(b) provide an alternate basis for admission of this prior bad acts testimony?

4.     Was the court's limiting instruction prior to the 14-year-old's testimony, that the evidence they were about to hear of "another" sexual assault or child molestation offense "or offenses" not only erroneous but highly prejudicial, because: This could not be "another" such offense, as Courtright was not charged in the present case with either an offense of sexual assault or child molestation; and because Courtright had only one prior conviction for sexual abuse, so there could not be multiple prior "*offenses*"?

5.     Were the court's limiting instruction and final instruction concerning prior bad acts erroneous and prejudicial, because they were based on Rule of Evidence 413, which only applies when the present charge is sexual assault, and on Rule 414 ,which only applies where the charge is molestation of a "child," that is, someone under 14 years of age?

6.     Were the limiting instruction and final instruction also erroneous because they stated that evidence of a prior offense "…on its own is not sufficient to prove the defendant guilty of the crimes charged in the Second Superseding Indictment," because this highlighted rather than limited the jury's consideration of the prior offense evidence?

7.     Did all these errors -- with respect to the elements instruction, in admitting the 1998 victim's testimony, and in relation to the substance and wording of the two instructions based on Rules 413 and 414 – considered together, and as they affected each other - mislead

the jury so that Courtright was denied a fair trial?

**STATEMENT OF THE CASE**

The initial Indictment, filed November 15, 2007 (R. 1) charged Carl Courtright with three child pornography counts; and, in September of 2008, the Superseding Indictment (R. 30) charged defendant with manufacturing, possessing and receiving child pornography, and bank fraud involving the cashing of forged checks.

In November 2007, a Notice of Prior Sex Offense was served on the defendant stating that under 18 U.S.C. § 3559(e) the mandatory minimum penalty under Count One, for production of child pornography, was life in prison, and that as Courtright was a registered sex offender, a conviction under 18 U.S.C. § 2251 mandated the addition of a consecutive 10-year sentence on top of the life sentence. R.9. Courtright filed a Response denying he had a prior offense or that he was subject to the enhanced penalty. R. 81.

In August of 2007, after reading and signing a Miranda warning, Courtright gave a long videotaped statement to the police. Tr. 3/3/09, page 35; Gov't Ex. 38. In it, he admitted downloading child pornography, that the computers were his, that he was the only Limewire subscriber and that SJ was 14 or 15 years old. Tr. 3/3/09, pages 41- 43 and 74. In a second interview he was asked about ten images in the HP computer program of a naked teenager, "SJ". He denied taking these, or of seeing them. Interview of Carl Courtright, August 30, 2007, page 7. Mr. Courtright moved to suppress his statements and the evidence flowing from them. Following an evidentiary hearing, however, defendant's motions to suppress were denied. Tr. 2/13/09, pages 1-153; R. 71.

4

The jury trial lasted five days, and included the testimony of SJ, who testified that when she was 14 years old, Courtright paid her $500 to pose for nude pictures. Tr. 3/4/09, Pages 85-91. This was the basis of the manufacturing of child pornography charge. Courtright was convicted on all counts, and later sentenced to life in prison plus 10 years, on the manufacturing of child pornography charge. Concurrent sentences were imposed on the other counts. Judgment, R. 115; App. pages 37 to 43.

This appeal followed.

**STATEMENT OF FACTS**

**Trial Day One: March 2, 2009**

The first day was occupied with jury selection and a hearing concerning prior bad acts, which is a central focus of this appeal. The transcript of the hearing on these evidentiary issues is in the Appendix at App. 1 to 29.

**Trial Day Two: March 3, 2009**

At the beginning of the government's case, instructions were given to the jury, laying out the elements of each offense and as to Count One, charging manufacture of child pornography, the Judge said the fourth element was that **" ...defendant has been previously convicted of a sex offense in which a minor was the victim...."** As to Counts Two and Three, possession of child pornography, the jury was instructed that the fourth element was that **"defendant had a prior conviction... relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor... or production, possession, receipt mailing, sale, distribution, shipment, or transportation of child pornography"**. Tr. 3/3/09, page 9 (emphasis added). Before the government gave its opening, the fact that

these instructions might be erroneous was discussed but the prosecutor and the court de-
cided not to correct them right away. Tr. 3/2/09, 14-16.

The government's first witness testified that after the search of his home, Courtright
was asked to go to the police station to give a statement and there he signed a *Miranda*
waiver and gave a detailed two-hour videotaped statement, admitting that he had down-
loaded child pornography.  Tr. 3/2/09, page 74. Throughout the trial and at sentencing,
however, Courtright denied that he had photographed SJ.  Sent. Tr. 7/17/09, page 41.

The defendant objected, on a continuing basis, to the prior bad acts evidence pre-
sented to the jury. At the beginning of the trial, defendant had objected to the admission of
evidence received from the search of the home or the statements made by Courtright at the
police station for the reasons developed in the Motions to Suppress (R. 53, 54 and 56),
which the court denied. See, for example, Tr. 3/3/09, pages 13 and 15 where defendant's
counsel said, " objection based on previously litigated motion."  A little later, while the first
witness was still on direct examination, the court confirmed that the objection would be
continuing:

> THE COURT:  Same objection. We talked about this off the record.  You're go-
> ing to make this a continuing objection to everything that comes within the
> purview and scope of that previous motion that was litigated?
>
> MR. ROSANSWANK:    Yes. In addition, the motion that was stricken [R. 60]
> without - -
>
> THE COURT:  Okay. And the court will allow that to be a continuing objection
> so you don't have to keep repeating that.  Tr. 3/3/09, page 37.

The DVD of Courtright's interrogation at the police station was played to the jury.

Tr. 3/3/09, page 39. At a break, the court agreed to expand the scope of the defendant's

standing objection:

> MR. ROSANSWANK:  When I asked you for a continuing objection**,** I failed to cite our most recently filed motions regarding use of bad acts evidence [R.83], and also Mr. Courtright's criminal history. I would have objected to the video-tape on those grounds had I thought of it. I didn't. But in any event, I wonder if I might have a continuing objection on those grounds as well.

> THE COURT:  Sure. We'll make that part of your continuing objection.  Be overruled.

Tr. 3/3/09, 40. (Emphasis added).

David Vucich**,** a computer forensics expert at the Madison County Sheriff's department, testified that the seized computers contained photos of a naked under-age girl, taken with an HP camera that had file information showing they were not down-loaded from the internet. Tr. 3/3/09, 108. The girl had a bandage on her neck and looked a lot like a girl on an ID card found in the search who had a mole on her neck in the same place. Tr. 3/3/09, 114.  Detective Wojtowicz knew SJ's father, Drew Johnson, and he thought that the girl in the photos might be his daughter.  The police traced her, discovered that she was indeed Johnson's daughter and that she and her father lived in the garage at 2527 Madison Avenue, Granite City, Illinois.  Tr. 3/3/09, page 117.

**Trial Day Three: March 4, 2009**

On the morning of the third day of trial, Judge Herndon acknowledged that the elements instructions he had given were erroneous and gave revised instructions for Counts One, Two and Three. Tr. 3/4/09, page 8-10; App. 33-35.

After that, Drew Johnson**,** SJ's father, testified that he met Courtright in prison and upon release came to live with him in Granite City.  First, he and SJ were allowed to live in

the tree house, and later, above the garage.  SJ testified that around Christmas of 2006, when she was 14 years old, she used to live with her mother, but after her father got out of jail, she came to live with him in the tree house, and later in the garage at the Courtright's Madison Street house.

SJ testified next, and explained how she came to live at Courtright's home.  Tr. 3/4/09, page 72-73.  On one occasion, after Courtright had allowed her to shower in the house (as neither the tree house or garage had a bathroom) he rubbed lotion on her, on her back, abdomen and buttocks. Tr. 3/4/09, pages 81-82.  At some point, Courtright asked SJ if she knew anyone who would be willing to take pictures and send them to a guy in California, "undressed pictures, sex pictures." Tr. 3/4/09,  page 84.  At first, she turned down his suggestion that she do this. But her dad was on drugs really bad and spent the money he earned on drugs, and SJ didn't have money to eat.  So later, "I didn't have nothing, so I told him [Courtright] I would do it…" Tr. 3/4/09, page 85.

SJ testified that in the spring of 2007, when everyone was away, Courtright told her to undress in stages, and he photographed her naked in a green chair.  Courtright asked her to put a Band-Aid over a birthmark on her neck, so that people couldn't identify her if the pictures were found.  Tr. 3/4/09, page 89.  For one picture, he told her to spit and wet her vagina so that she would appear aroused.  Tr. 3/4/09, page 91.  SJ did not testify that Courtright ever touched her when he was taking these photographs.

LRJ (SJ's boyfriend) was 17 when he testified. He met SJ about two years earlier at a camp. LRJ heard Courtright say that if SJ could get any friends to pose for pictures, he could pay them. Tr. 3/4/09, page 148.

Then, Lisa Miller took the stand to testify that she had been molested by Courtright in 1998. Before she was questioned, the court gave a "limiting" instruction to the jury.[2] Tr. 3/4/09, page 154-5. Defendant objected to Lisa Miller testifying, based on the previous motions concerning prior bad acts, but the objection was overruled. Lisa Miller then testified that when she was 15 years old, in 1998, she knew the defendant because she was dating his roommate, Eric West, who was 5 years older than she.

Lisa Miller would go over to Courtright's place with her boyfriend and help roll newspapers for delivery. At Lisa and Eric's request, Carl took pictures of them doing "sexual stuff", and nude pictures of Lisa alone. Tr. 3/4/09, page 155-60. Lisa Miller acknowledged that she and her boyfriend Eric had wanted these sexual pictures taken. Tr. 3/4/09, pages 161-2. Another time, when Lisa was feeling unwell and had pain in her stomach and vaginal area, Carl "examined" her and "He stuck his finger in me" Tr. 3/4/09, page 159. Neither through this witness, nor through any other evidence, was it made clear to the jury that Courtright had been prosecuted for this, or that this was the basis for his being a registered sex offender.

Adolph Paulson testified that he was a cellmate of Courtright's at the Jefferson County Jail in Mt. Vernon, Illinois. Courtright told him about making ID's and the "check fraud scam." Tr. 3/4/09, page 168.Courtright also discussed with Paulson that there was a lot of money in child porn and admitted he had taken pictures of a young lady. He explained how to do this, and the need to cover up tattoos or anything that could identify

---

[2] The instruction is at page 27 of this brief.

them. Tr. 3/4/09, page 172.

**Trial Day Four: March 5, 2009**

Matthew Goward, a computer forensic specialist, reviewed the two computers seized at Carl Courtright's home and found a password protected user account for "Carl". Tr. 3/5/09, page 33. A series of photos on the computer were taken with an HP camera and were named "SJ 2007". (These are the same naked pictures that SJ described and identified in her testimony). The "SJ 2007" photos were in the folder of files that were available for automatic sharing over Limewire. Tr. 3/5/09, pages 50-54 and 113. Courtright alone used this computer, which, at the time of the seizure, had hundreds of child pornography images, including the SJ pictures, and that these were all available to anyone with a Limewire account. Tr. 3/5/09, page 206.

Through cross-examination, the defense showed that the computers were left at the house and that others had access to them and could have used them. The defendant did not testify and rested without presenting any evidence. Tr. 3/6/09, pages 3-4.

**SUMMARY OF ARGUMENT**

Even before the government's opening statement, the court had made two material errors, both relating to what the jury would hear and be told concerning Courtright's prior convictions. The first was the court's decision to admit evidence of prior bad acts under Rules 413 and 414 which expressly allow propensity evidence, but not in this case. The second error was to tell the jury, at the commencement of the trial, that the government had the burden of proving a prior conviction in relation to three of the four child pornography counts, and to do so in a way that listed prior offense categories having no bearing on

10

Courtright's criminal history – referring to prior offenses of "manufacture of child pornography", for example. Although the Judge admitted he gave erroneous instructions relating to Courtright's prior convictions, at the government's suggestion he waited a full day to correct them. When he did, he failed to explained that Courtright's past offense (he only had one) was not relevant to his guilt. He failed to explain that it was not for child pornography, and failed to make explicit that prior convictions were not an element of proof on any count.

     In the opening statement, the government said Courtright was a registered sex offender and that he had been convicted of a sex offense in which a minor was the victim. Then, after an agent confirmed Courtright's prior conviction, the government called Lisa Miller to the stand. Before she testified, the court committed further error, by giving the government proposed, "limiting" instruction. This had major flaws: First, it said that Courtright's prior offense involved "another offense *or offenses* of sexual assault" (emphasis added), suggesting that the present charge involved sexual assault or child molestation, when, in fact, it involved neither. Second, it suggested there was more than one prior sex offense, when in fact there was only one. Even if such propensity evidence were admissible, it was highly prejudicial to suggest to the jury there were prior convictions ("offenses") that didn't exist. Third, this instruction suggested that the prior offense "on its own was not sufficient to prove the Defendant guilty…." Far from limiting the jury's consideration of this evidence to the issue of intent, this expanded its relevance so that the prior conduct – 11 years earlier -- could not alone be sufficient to prove guilt, but could, for example, be most of the evidence on which the jury rested a guilty verdict. Fourth, it stated that the

prior offense was relevant to Courtright's bank fraud charge, Count Five. It was not. Particularly in light of the erroneous elements instructions, which inexplicably referred to numerous prior offenses that the government was going to prove, this so called limiting instruction must have thoroughly confused the jury.

Lisa Miller testified. On the basis of rules allowing propensity evidence in limited, and here inapplicable, cases, the jury heard that Courtright had photographed Lisa Miller and her boyfriend 11 years ago, at their request, and that he had once touched her vagina while checking her for a medical problem. This was pure propensity evidence. It's only impact was to suggest to the jury that Courtright was guilty because he'd done the same sort of thing before. However, not once, in arguing to allow this evidence, did the government or the court mention how it might bear on intent under Rule 404(b), nor was the word "intent" mentioned at all in the pre-trial hearing concerning whether to admit this evidence. (See the transcript of this hearing, App. 1-29).

All of the same language in the limiting instruction was repeated in the final prior convictions instruction submitted by the government, repeating all of the above errors. These instructions were submitted by the government and borrowed from an instruction in a clearly inapposite 10th Circuit opinion, *United States v. Benally,* 500 F.3d 1085 (10th Cir. 2007). Because the court had earlier decided that Rules 413 and 414 could apply in a child pornography prosecution, it used the *Benally* instruction, even though it was aware of, and discussed, United *States v. Hawpetoss,* 478 F.3d 820 (7th Cir. 2007) were the limited scope of Rules 413 and 414 is discussed in relation to a child molestation prosecution.

Each of these errors fed on and amplified the other errors, painting a confusing picture of a defendant with a variety of awful past crimes. The catalog of offenses in the elements instructions didn't happen; there was only one sex offense in Courtright's past, but the jury heard about a prior sexual assault conviction, that he was a registered sex offender and that he had molested and photographed Lisa Miller, but there was no indication these were all one and the same event, and many suggestions that they were not. Thus, the jury not only heard and was told to consider propensity evidence in determining guilt, but this evidence was exaggerated when the court and the government strongly suggested that Courtright had *several* prior convictions involving children and child pornography. Courtright's conviction and life sentence rests not only on this propensity evidence, but on grossly exaggerated and non-existent prior bad acts, and instructions that failed to properly limit the jury's consideration of that evidence.

In a prosecution where the penalty Courtright faced for photographing a naked teenager was a *mandatory minimum of life in prison plus 10 years*, it was highly improper for the court to allow the government to present this panoply of prejudicial propensity evidence having nothing to do with whether Courtright was guilty of the pornography and fraud offenses charged in the indictment. As a result, he was denied due process of law, and in all probability convicted on the basis of his past, of who he was and what he had purportedly done before, rather than evidence of the actual charges.

In these circumstances, involving clear and structural errors of the most fundamental kind, basic principles of justice and due process requires reversal and remand for a new trial.

**ARGUMENT**

**I.     The Court's preliminary elements instructions were clearly erroneous, inconsistently worded and misleading, particularly in suggesting prior convictions that did not exist.**

This Court reviews jury instructions to determine whether the instructions as a whole provided the jury with sufficient guidance and correctly informed the jury of the applicable law and theory of defense. *United States v. Liporace*, 133 F.3d 541 (7th Cir. 1998). Reversal for improper instruction is warranted only if instruction misguides jury so much that the litigant is prejudiced. *United States v. Lloyd*, 71 F.3d 1256, 1266 (7th Cir. 1995), cert. denied, 116 S. Ct. 2511 (1996).

The preliminary instructions Judge Herndon gave to the jury at the beginning of the trial were no doubt erroneous and misled the jury. They laid out the elements of each offense, but the Judge, *sua sponte*, added an additional element to Counts One, Two and Three. As to Count One, charging manufacture of child pornography, the court added a fourth element, suggested by neither the defendant nor the government, that the government must prove " …**defendant had been previously convicted of a sex offense in which a minor was the victim…."** Tr. 3/3/09, page 7 (emphasis added). As to Counts Two and Three, charging possession of child pornography, the  court added a fourth element that "**defendant had a prior conviction… relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor …or the production, possession, receipt, mailing, sale, distribution…of child pornography** ".  Tr. 3/3/09, page 9 (emphasis added).

There is no indication in the record as to why the two elements are phrased differently; ; the statutory sentencing enhancement language is the same under § 2251 and

14

§2252A. Why Count One's instruction was fashioned to say nothing about "sexual abuse of a minor" or "child pornography" and instead suggests that proof of any "sex offense" would be sufficient, is also unexplained.[3]  Further, there is no explanation as to why the court didn't add either version of this prior conviction element to Count Four, which charged *receipt* of child pornography as opposed to manufacture or possession.

Right after the jury heard these erroneous instructions, the prosecutor noted to the court that it was her position that the government did not need to prove as an element of the offense that the defendant had a prior conviction, as this was a matter for the court at sentencing. Tr. 3/3/09, pages 14-15.   The court offered to correct this and "tell the jury these are not elements right now" but the prosecutor asked the court to "leave it as it is…" until she did some research. Tr. 3/3/09, page 16.  She then proceeded with the opening statement, and, after describing defendant as "**the drooling viewer at his computer screen who watched child pornography**" Tr. 3/3/09, page 18, said:

> How did we find out about Carl Courtright and his pictures? **The defendant, Carl Courtright, is a registered sex offender. He has a prior conviction from 1998 for aggravated criminal sexual abuse, which requires him to register as a sex offender.**

Tr. 3/3/09, page 18.

**II. The court failed to properly correct the elements instruction errors, and left the jury with the impression that Courtright had a prior child pornography offense and that it was somehow relevant to his guilt in relation to the present charges.**

After the government's first witness had offered evidence that Courtright was a

---

3  There is some indication that the Judge's clerk made revisions to the instructions. See, Tr. 3/3/09, page 15-16.

convicted sex offender -- the preliminary instructions were discussed again. The government referred to *United States v. Johnson* 495 F.3d 536 (7th Cir. 2007), holding that the underlying fact of a prior conviction does not have to be charged or proven beyond a reasonable doubt to a jury. Judge Herndon, agreed, and noted "…past criminal history is a matter for the Court, not for the jury." Tr. 3/3/09, page 15.

Not until the second day of trial, however, after the opening, and after evidence of Courtright's prior sex offense conviction had been offered by the government, did the court endeavor to correct the elements instructions. Tr. 3/4/09, pages 8-10. The court said that,

> " I started this case out by making a couple of mistakes. When I read to you the elements of what the government would be required to prove, I suggested something that would require them to prove more than they actually are required to prove, so I'm going to read you the elements of the offense that are actually less of a requirement than what I read to you yesterday morning."

Tr. 3/4/09, pages 8-9.

However, the court failed to explain specifically what was different about the new instructions, and failed to admonish the jury in any way that the variously described prior offenses were not an element of Counts One through Three, and did not make clear that there was to be no evidence of a prior child pornography conviction, because as the government well knew, there was none. These are obvious errors. The harm done was aggravated by the intervening opening statement, and even the court's effort at correction failed to clearly explain that proof of prior offenses was not only not an element of Counts One, Two or Three, but was irrelevant.

From here, things got worse. Other errors focused the jury on the worst sort of preju-

16

dicial propensity evidence.  – virtually compelling the jury to infer guilt  on the basis of Courtright's prior offenses.

### III.    It was clear and prejudicial error for the court, over defendant's objection, to admit Lisa Miller's testimony under Federal Rules of Evidence 413 and  414.

The standard of review concerning a district court's interpretation of the rules of evidence is de novo; and the decision to admit evidence is reviewed for an abuse of discretion.  *United States v. Rogers*,  587 F. 3d 816, 819 (7th Cir. 2009)(a case involving Rules 413 and 414).  This is a "highly deferential" standard. *United States v. Julian,* 427 F. 3d 471 (7th Cir. 2005). Evidence is considered material only if there is a reasonable probability that the disclosure of that evidence would have changed the result of the trial. *United States v. Ortiz, 474 F.3d 976, 982 (7th Cir. 2007).*  An "evidentiary error does not justify reversing a jury's verdict unless a reviewing court determines that the error had a substantial and injurious effect or influence on the jury's verdict." *United States v. Hunter*, 145 F.3d 946, 951 (7th Cir. 1998).

In the Government's <u>Notice of Intent to Introduce Other Acts Evidence</u> (R. 65) it argued that Rules 413 and 414, and also Rule 404(b), supported its motion to offer evidence of certain alleged prior acts of the defendant, and alternatively that the prior acts were "inextricably intertwined" with the charged conduct.  R. 65, page 1.

In its motion, the government trotted out a catalogue of purported bad acts to support its argument that Courtright's past was relevant and admissible, but at trial the claimed factual basis for its position failed to materialize.  First, it was alleged that Courtright's prior bad act involved molestation of a 14-year-old and a 16 or 17-year-old

stepchild, R.65, but <u>no evidence</u> of this was offered at trial.   In support of its motion the government claimed that child pornography had been found on Courtright's computer long ago, when he was married to Ella Courtright, but <u>no evidence</u> was presented to substantiate this. In the end only the Lisa Miller evidence and conviction was presented.

The government's motion mentions Rule 404(b), but in arguing the motion the prosecution never developed any reason that the prior acts were probative of intent and that they were therefore admissible under Rule 404(b). R. 65. Instead, the government led the court into error by asserting that this evidence, of a sex offense a decade earlier, where Lisa Miller was the victim, was admissible under Rules 413 and Rule 414, and that therefore no exception needed to be found to the long-standing common law prohibition against propensity evidence established under Rule 404(b).   The government argued that the earlier offense was "strikingly similar" to the present charge, and that it strongly showed Courtright's propensity to commit such crimes, and that it was admissible under Rules of Evidence 413 and 414.

However, by their plain language, neither Rule 413 nor Rule 414 apply. *United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009). Judge Herndon noted early on that both were inapplicable, asking the prosecutor -- "Is this really a child assault or a child molestation case such that it would trigger either one of those rules?"  But, by the end of the argument [4], the court had somehow been persuaded, over defendant's objections, that Rule 413 applied.

The prosecutor asserted, without reference to any authority, that Courtright was

---

4       The transcript of the argument is included in the Appendix.

"accused" but not "charged" with an offense of sexual assault because the evidence included proof that Courtright touched SJ. The prosecutor stated that, "There's also going to be testimony that the defendant used his hands to touch the victim's hands" Tr. 3/2/09, page 9, and that this was thus a case where defendant was, in the words of Rule 414, "accused of an offense of sexual assault".  But, SJ never testified that Courtright did this -- no such evidence was offered at trial.

Nevertheless, in the rebuttal closing, the government improperly stated "What was he thinking when he took her [SJ's] hands in his and placed them on her vagina and took a picture of it?" Tr. 3/5/09, page 31. This is a most blatant distortion of the record, launched when the government had the last word.  See, *United States v. Farinella*, 588 F.2d 695, 700-702 (7th Cir. 2009).

Even if he had touched her, Rule 413 still could not apply because the special exception admitting propensity evidence is narrow, and only applies "In a criminal case in which the defendant is accused of an offense of sexual assault." Federal Rule of Evidence 413(a).

The government's argument that child pornography inherently involves abuse of children so that every child pornography charge is also a sexual assault charge is inventive, but wrong. This logic would rewrite the rule allowing propensity evidence of " another offense or offenses of sexual assault" to be admitted in *all* child pornography prosecutions. That is not the law, and the government offered no authority to support that position. This whole argument that this is a basis for the application of Rule 413 makes no sense. It is a house of cards, unsupported by any facts or law. It was improper, and the district court should have rejected it.

Further, the language and history of these Rules confirms that they have limited application.  Congress' decision to expressly allow propensity evidence in prosecutions for "sexual assault" and "child molestation" caused uproar enough in the criminal justice community, becoming effective in 1996 over the opposition of the overwhelming majority of judges lawyers and law professors who believed " that the rules would permit the admission of unfairly prejudicial evidence…" Historical Notes to Rule 413.

> These two rules create an exception to the general prohibition against "propensity evidence" found in Federal Rule of Evidence 404(b) (evidence of other crimes may not be used to "prove the character of a person in order to show action in conformity therewith," Fed. R. Evid. 404(b)). Rule 413 expressly allows evidence of past sexual assault offenses when a defendant is accused of another offense of sexual assault to the extent such evidence is relevant.  Similarly, Rule 414 states that, in a criminal case in which the defendant is accused of child molestation, evidence of past offenses of child molestation is admissible to the extent these offenses are relevant. For the purposes of the rule, "child" refers to anyone under the age of fourteen. Fed. R. Evid. 414.  Neither rule places any time limit on the other offenses that may be offered into evidence.

*United States v. Hawpetoss*, 478 F.3d 820, 823-4 (7th Cir. 2007).

Courtright's trial counsel tried to explain to the court that the government's argument didn't make sense, and that neither Rule 413 nor 414 could apply:

> *THE COURT:*
> … Mr. Rosanswank, so I was a little worried at the start, as you heard, about the fact that your client wasn't charged with this, but I missed the nuance of the language of the rule. So the rule says "accused"; it doesn't say "charged". You think that makes a difference?
>
> *MR. ROSANSWANK:*
> I don't, Your Honor, because I can't think of in what other context in the criminal court system we would use the word "accused", other than "charged with". I mean if you were merely accused of these acts today, we wouldn't have a jury waiting to hear the case, obviously. … **Mr. Courtright clearly isn't charged with any type of molestation or sexual assault in this case.** What these rules -- my concern is 413 and 414 basically say it doesn't matter if

20

it's anything relevant. If this is a molestation case or sexual assault case, all that other stuff comes in. I don't know what they meant when they wrote the rules. That scares me to think that might be the case. I still think there has to be a very narrow reading of these rules, and certainly in conjunction with Rule 403, which I raised in my response, there are circumstances where the admission of the evidence would be prejudicial or where the prejudice would outweigh the --

THE COURT: Before we get to that, let me ask you this: What about the *Le-May* factors, the five factors…

Tr. 3/2/09, pages 11-12 (emphasis added).

Also, Rule 414 clearly can't apply for another reason. Neither Lisa Miller nor SJ were within the rules definition of "child", which is a person *under* the age of 14.  Rule 414(d). The district court failed to analyze the requirements of Rules 413 and 414 to see if either could apply.  SJ was not under 14, thus not a "child."

Judge Herndon's findings and ruling on this critical evidentiary issue cpmfirms the error:

THE COURT:

Well, with respect to the aspect of this that goes to the sexual offender registry, that's inextricably intertwined. There really isn't the same analysis with respect to that. That's just part of this case. It's relevant evidence. It goes to the -- it goes to part of the investigation in the case, and so it's probative. It's not any more prejudicial than any other aspect of the government's case, so it's just a relevant piece of evidence. It's very probative. Probative nature certainly outweighs the prejudice to the defendant.

With respect to the evidence of the prior conviction, sexual misconduct of the prior victim, while the *Le May* test is not a bright line test and not the end-all be-all, it's certainly of some help, as the *Hawpetoss*, H-A-W-P-E-T-O-S-S, case suggests. But looking at the totality of the circumstance in this case, the evidence is strikingly similar, as Ms. Gorovsky [AUSA] pointed out. The closeness in time. There's some -- it's hard to judge on the record that the Court has before it. Neither party could give me a precise record on when the defendant was in jail and out of jail. There's speculation about his activity. But

21

certainly we know there's at least some jail time intervening that would have been an obstruction, but the closeness in time is not so remote as to make it irrelevant.

It sounds as though there will be a fair amount of evidence against Mr. Courtright, though this evidence does not sound cumulative, and will assist the jury. The Court will give a limiting instruction. I will certainly give the defense counsel an opportunity to submit what he believes is an appropriate limiting instruction, though the 413, 414 instruction submitted by the government appears to be an adequate one, but I'll certainly consider anything else that's offered. **The authority for this, of course, as I forgot to point out, is both 413 and 414 on the grounds stated by Ms. Gorovsky and Mr. Silver. There's no age limit in 413 and 414. It goes to the victims in the prior films, 414 -- 413 rather, it goes to the victim in this case, so there's evidentiary rule authority for this which makes the evidence relevant.**

Tr. 3/2/09, pages 27-29; App. 27 to 29.(Emphasis added)

How the "victims in the prior films" bear on the court's analysis is a mystery. In any event, over defendant's objection, this untenably broad and fanciful interpretation of Rule 413, detached as it is from the text and meaning and purpose of the rules, was adopted by the court, and became the basis for the court's decision to allow prior bad acts into evidence.

**IV. Rule 404(b) does not provide an alternate basis for admitting this evidence.**

Because the court admitted Miller's testimony under two rules that *expressly allow* propensity evidence, no consideration of any applicable Rule 404(b) exception was undertaken.  Nevertheless, as noted in *United States v. Conner* 583 F.3d 1011 (7th Cir. 2009), where evidence of prior bad acts is admitted under an incorrect theory, as it was here, it is appropriate to "…determine whether the evidence could have been properly admitted under another rule of evidence, even though the government and the court never engaged in a proper analysis of the prior bad acts evidence in terms of Rule 404(b), or Rule 403.

22

Of course, Rule 404(b) prohibits the use of other acts evidence which tend to prove the defective character of a defendant to show that he is "…. likely therefore to have committed the crime of which he is accused in the present case, or perhaps some other, undetected crime for which he should be punished." *United States v. Paladino*, 401 F.3d 471, 474-5 (7th Cir. 2005). However, Rule 404(b) does not exclude such evidence if it is relevant to certain other issues, specifically the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); *United States v. Hale*, 448 F.3d 971, 985 (7th Cir. 2006) (per curium). Even if relevant, however, this evidence may be excluded as unduly prejudicial if it would cause the jury to ground its verdict on a ground other than the evidence. Fed. R. Evid. 403; *United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004).

Although Rule 404(b) was mentioned in the government's motion (R. 65) as being an alternate basis for admission of the prior bad acts evidence to show intent, that was *not* the focus of the argument, nor the basis for the court's ruling and findings.  In fact not once in the 29-page transcript of the argument on this issue is the word "intent" even mentioned, nor is any argument offered for how the rule might apply.

The correct approach under 404(b) , which the court never got to, is to consider:

> whether the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) whether the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue; (3) whether the evidence is sufficient to support a jury finding that defendant committed a similar act; and (4) whether the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Lloyd*, 71 F.3d 1256, 1264 (7th Cir. 1995).

23

But as the transcript of the hearing reveals, there was no consideration of how or in what way Courtright's intent would be established by the Lisa Miller testimony or by proving his prior conviction.  Even if it did have some bearing on whether Courtright took the SJ photographs, the court failed to weigh the prejudicial effect of the Lisa Miller testimony against its probative value under Rule 404(b) or Rule 403.  The government never discussed how or why Lisa Miller's testimony was, or was not, relevant to defendant's "intent", that is, its probative value.  Defendant's counsel did note that if any such evidence were allowed, it should be brought out by official records, not by testimony which he though was unnecessary …"then we're really talking about inflaming the prejudices of the jury…the court really needs to be really careful in how far you let the government go with this."  Tr. 3/2/09, pages 16-17.

The court was not careful at all. In granting the government's motion to admit other acts evidence under Rules 413 and 414 the court stated:

> In looking to see whether or not 403 trumps this, whether or not this evidence is so prejudicial to Mr. Courtright as to overwhelm its probative value, the Court deems the evidence to be so probative as to overwhelm its prejudice against Mr. Courtright, and so the Court finds that its relevance is established and will allow the evidence.

Tr. 3/2/09, page 29.

This bare conclusion is neither sufficient nor correct. First, the evidence that Courtright, in 1998 molested a 14-year-old girl and photographed her with an older boyfriend (even if with their consent) is the quintessential example of prejudicial propensity evidence. What could be more damning for a defendant facing child pornography charges than for a jury to hear this, and to hear it more than once?

24

Even if the court had found that the Lisa Miller evidence, as opposed to the fact of the earlier conviction, fell within the 404(b) exception to show "intent", and even if the court had weighed its probative versus prejudicial value, it still would have needed to limit the government with respect to how this evidence could be used. Rule 404(b) expressly prohibits propensity evidence to prove defendant committed the crime charged. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984). Even if properly admitted under 404(b), the prejudicial effect of such evidence can be serious if the evidence is misused by the prosecution:

> The implication of the prosecutor's argument was that Conner was more likely to have distributed drugs on December 20 because he had done so on other occasions. Put differently, the prosecutor was showing that Conner had a *propensity* to distribute drugs, which made it more likely that he was guilty of the charged crime. Although this may be true, it is nonetheless prohibited by Rule 404(b). *See United States v. Wright*, 901 F.2d 68, 70 (7th Cir. 1990) ("The implication was that a drug dealer is more likely than someone who is not a drug dealer to sell drugs . . . . No doubt this is true."). As we have previously noted, "[t]he inquiry into previous criminal acts is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.* (quoting *Michelson v. United States*, 335 U.S. 469, 475-76, 69 S. Ct. 213, 93 L. Ed. 168 (1948)). Despite the fact that the evidence may be relevant, this is precisely the type of propensity argument that we have rejected in the context of Rule 404(b). *See id.*
>
> Thus, although the evidence of Conner's "other bad acts" was properly admissible under Rule 404(b), the district court erred in allowing the government to use the evidence to show propensity. We must therefore determine whether the risk of unfair prejudice resulting from this broad use of the "other acts" evidence outweighed its probative value.

*United States v. Connor*, 583 F.3d at 1024-1025.

In the opening statement, after describing Courtright as "drooling" over his computer while looking at child pornography, the prosecutor said that Courtright was a registered sex offender, [5] and that he was convicted of aggravated sexual abuse. Tr. 3/3/09, page 18. Defendant objected to the "drooling" comments; and had objected to and previously lost the battle to keep this prior offense out under Rules 413 and 414. But the point is that if the Lisa Miller molestation and Courtright's prior conviction (which for all the jury was told were two separate crimes) had been allowed under Rule 404(b), then it would have been error to allow the use of the evidence, except to show intent, and then, only after a proper limiting instruction.

## V.     The limiting instruction given right before Lisa Miller's testimony, and the final instructions based on Rules 413 and 414 were erroneous; they misled, confused and prejudiced the jury.

Before Lisa Miller testified with respect to Courtright's offense in 1998, the court gave the following instruction:

> Ladies and gentlemen, **you're going to hear some evidence here that concerns Defendant's commission of another offense or offenses of sexual assault where (sic) a child molestation that may be considered by you as evidence of Defendant's intent. However, evidence of a prior offense on its own is not sufficient to prove the Defendant guilty of the crimes charged in the Second Superseding Indictment.** Bear in mind as you consider this evidence at all times that the government has the burden of proving the Defendant committed each of the elements of the offense charged in the Second Superseding Indictment. I remind you the defendant is not on trial for any act, conduct, or offense not charged in the Second Superseding Indictment.

Tr. 3/4/09, pages 154-5. (emphasis added).

---

5  Defense counsel took no issue with this fact being stated because it was, the court said, " inextricably intertwined."

26

After this instruction was given, Defendant objected to Lisa Miller testifying, based on the previous motions, but the objection was simply noted and overruled. Tr. 3/4/09, page 155. Beyond the fact that this propensity evidence should not have been admitted under Rules 413 and 414, it had other serious flaws.

The suggestion in the instruction that the present charges involved "another offense or offenses" of sexual assault or child molestation was erroneous. In the present case Courtright was not charged with sexual assault or child molestation. Stating that his offense against Lisa Miller 10 years earlier, was another act of "sexual assault child molestation" told the jury that the charge in the Second Superseding Indictment was a charge of "sexual assault or child molestation." It clearly wasn't, the indictment charged child pornography offenses and bank fraud.  So saying that the Lisa Miller offense was "**another**" offense of sexual assault or child molestation was  grossly inflammatory and confusing, particularly coming from the court, and particularly in light of the initial elements instructions that referred to the government's need to prove a prior conviction as an element of certain charged offenses.

Also, under Rule 414, as a matter of law, Courtright's offense against Lisa Miller could not have been "child molestation", because the term "child" in Rule 414 means a person *under* 14 years of age. Rule 414(d). The undisputed evidence was clear that *neither* Miller nor SJ was a child since neither was under 14 years of age. Lisa Miller testified she was 14 or 15 in 1998.  Tr. 3/4/09, page 155.

Accordingly the phrase "child molestation" should never have been mentioned in this case and certainly not by the court in it's "limiting instruction". The classic and im-

27

proper inference is that every viewer of child pornography is a child molester, and vice versa. The prosecution exploited and played to the jury's passions by presenting prejudicial propensity evidence, and the court's limiting instruction, far from containing the prejudicial impact amplified it by suggesting that the present charge involved another child molestation or sexual assault of a minor.

## VI. The final Rule 413 / 414 Instruction was likewise erroneous and misleading.

At the end of the trial, the jury again heard from the court, over defendant's continuing objection, essentially the same thing they were told in the limiting instruction:

> Evidence of the defendant's commission of **another offense or offenses of sexual assault or child molestation** may be considered by you as evidence of the defendant's intent. However, **evidence of a prior offense on its own is not sufficient to prove the Defendant guilty of the crimes charged in the Second Superseding Indictment**. Bear in mind as you consider this evidence at all times that the government has the burden of proving the Defendant committed each of the elements of the offense charged in the Second Superseding Indictment. I remind you the defendant is not on trial for any act, conduct, or offense not charged in the Second Superseding Indictment.

R. 102, Instruction 12; App. 36 (emphasis added).

This instruction was copied from *United States v. Benally*, 500 F. 3d 1085 (10th Cir. 2007), involving the sexual molestation of defendant's 12 year old granddaughter "NW" in a one room Hogan on a Navajo reservation. See, the government's Instruction Number 12, citing *Benally*, at App. 36.  Mr. Benally had molested several children and a 20-year-old woman. He had raped his 13 or 14-year-old sister, and he had raped NW's mother when she was 10 or 12 years old.  Before admitting the testimony on these prior bad acts, which fell squarely within Rule 414, the district court in *Benally* twice gave cautionary jury instructions to mitigate the prejudicial impact of the evidence, and before

28

allowing the testimony regarding the prior incidents, instructed the jury that:

> Members of the jury, I want to give you a cautionary instruction now because we are about to hear some evidence with this witness and two witnesses that will follow after her, some evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation.
>
> **In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation**, **evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.** However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the indictment. Bear in mind as you consider this evidence, at all times the government has the burden of proving that the defendant committed each of the elements of the offense charged in the indictment. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the indictment.

*Benally,* 500 F. 3d at 1088-89.

The instruction tendered by the government (App. 36) though based on *Benally*, limited consideration of the propensity evidence to defendant's "intent," but this appears to be an afterthought. The result is a strange hybrid, like a children's book that allows different heads and torsos and legs of animals to be folded together, the instruction tendered by the government patched a Rule 414 head onto a Rule 413 body with a Rule 404(b) tail. The result is a bizarre and purely imaginary creature. No jury could make head or tail of this, particularly in light of the court's contradictory elements instructions and the statement that this prior offense was "another" offense of child molestation.

Courtright case plainly does not meet Rule 414's three specific conditions:

> ….evidence of a prior sexual assault must meet three threshold requirements before it may be considered for admission. **The district court must determine (1) the defendant is accused of a crime involving sexual assault or child molestation,** (2) the evidence proffered is evidence of the defendant's commission of an-

other offense or offenses involving sexual assault or child molestation, and (3) the evidence is relevant.

*Benally,* at 1090.

This instruction had other flaws, discussed below.

## VII.    Instruction 12 also erred by telling the jury that evidence of a prior offense was *generally relevant* to the issue of defendant's guilt.

As discussed above in relation to the nearlt verbatim limiting instruction, Instruction 12 also suggested, erroneously, that the prior offense evidence could be the basis  for the jury's verdict. The jury was told that "… **evidence of a prior offense on its own is not sufficient to prove the Defendant guilty of the crimes charged** in the Second Superseding Indictment. Saying this evidence is not sufficient "on its own" inflates the value of the evidence, rather than serving to limit its impact. This is a far cry from admitting the evidence and admonishing the jury that it may only be considered to prove intent with respect to specific counts. To the contrary, this instruction told the jury that evidence of a prior offense is relevant to defendant's guilt under the indictment, which, of course, includes Count Five -- charging bank fraud. Telling the jury a prior sex offense somehow related to intent to commit bank fraud, and can't be the sole basis for finding him guilty, make no sense, even under Rule 404(b). This is a further error, and it must have befuddled the jury.

Accordingly, the district court committed four elated errors -  1) Rules  413 and 414 on their face do not apply; 2) the present charge was not "another" offense of child molestation;  3) saying the Lisa Miller offense was not "on its own sufficient" severely

overemphasized the importance of her testimony which, at best, would have had a limited purpose if the government could show it was admissible under 404(b) with respect to proof of intent; and 4) it told the jury prior sex offense convictions were relevant to the bank fraud charge. These plain and fundamental errors denied Courtright due process and a fair trial.

**VIII.   Each error alone is sufficient basis for setting aside this verdict, and because they all relate to prior bad acts and prior convictions, each interacted with and amplified the prejudicial effects of the others. The cumulative effect of these denied Courtright a fair trial.**

It was error to allow the Lisa Miller testimony, and this was aggravated by the court's admitted mistake in relation to the initial elements instructions, where the court instructed the jury that the government was required to prove beyond a reasonable doubt that the defendant was a convicted sex offender or had a prior conviction for sexual abuse of a minor or production or possession of child pornography. Even though the court later restated the elements without these requirement, undue focus was placed on Courtright's prior conduct as the jury was told first that a prior offense was an element of the child pornography charges; then told it was relevant to intent, and then told it was not alone sufficient to find defendant guilty, and that it was not an element at all.

The instructions meant to avoid or limit the prejudicial effect of propensity evidence, instead amplified it, and at the same time distorted and misstated the actual charges against Courtright. For all the jury was told, there were *two or more* prior sex "offenses", one, mentioned in the opening statement, that led to Courtright's registration as a sex offender and another that resulted from the Lisa Miller offense or offenses

which might well have been viewed as child pornography or child molestation. Thus the prejudicial effect was multiplied. Courtright, the jury was told, was a registered sex offender, he was guilty of aggravated criminal sexual assault and he was a child molester – and they were instructed that the present charge was *another* offense involving either "sexual assault" or "child molestation".

The errors discussed above were each materially prejudicial, and, taken together, their cumulative effect prejudiced the defendant and violated his right to due process of law. *United States v. Conner*, 583 F.3d 1011 (7th Cir. 2009).

**Conclusion**

There is no more serious denial of due process than to be convicted because of who you are, what you once did, or what you might do in the future, rather than on proof beyond a reasonable doubt of the charged offense. The right to a fair trial is not a variable standard tied to the seriousness of the charge or the minimum penalty, but when the consequence of a finding of guilt is a *minimum mandatory sentence of life in prison*, it is important to avoid obvious and repeated errors, particularly ones that tend to aggravate and compound the errors that came before.

There can be little doubt that the substantial evidentiary and instructional errors that occurred in this trial had a harmful impact, prejudicing the jury against the defendant. The court erred in adding elements to the instructions, in interpreting and applying the Rules of Evidence, 413 and 414 and in giving the instructions on prior bad acts, which were clearly erroneous in numerous respects.

32

Reversal and remand for a new trial is necessary in the interests of justice -- This was not a fair trial.

Respectfully submitted,

_____

Gareth G. Morris
1704 N. Dayton St., Suite 100.
Chicago, Illinois 60614
312 943-6178

COUNSEL FOR DEFENDANT-APPELLANT

No. 09-2880

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) | | On appeal from the United |
| ) | | States District Court for the |
| Plaintiff-Appellee, ) | | Southern  District of Illinois |
| ) | | (East St. Louis) |
| ) | | |
| vs. ) | | No.  07 CR 30179 |
| ) | | |
| CARL A. COURTRIGHT, III, ) | | Honorable David R. Herndon |
| ) | | United States District Judge, |
| Defendant-Appellant. ) | | Presiding. |

---

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

The undersigned certifies that this brief complies with the volume limitations of

Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32, in that it con-

tains **11,350** words as counted by the Microsoft Word software used to prepare this

brief).

Gareth G. Morris
1704 N. Dayton St., Suite 100.
Chicago, Illinois 60614
Phone: (312) 943-6178

34

**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | On appeal from the United |
| | ) | States District Court for the |
| Plaintiff-Appellee, | ) | Southern  District of Illinois |
| | ) | (East St. Louis) |
| | ) | |
| vs. | ) | No.  07 CR 30179 |
| | ) | |
| CARL A. COURTRIGHT, III, | ) | Honorable David R. Herndon |
| | ) | United States District Judge, |
| Defendant-Appellant. | ) | Presiding. |

---

# APPELLANT'S SHORT APPENDIX

No. 09-2880

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | On appeal from the United |
| | ) | States District Court for the |
| Plaintiff-Appellee, | ) | Southern  District of Illinois |
| | ) | (East St. Louis) |
| | ) | |
| vs. | ) | No.  07 CR 30179 |
| | ) | |
| CARL A. COURTRIGHT, III, | ) | Honorable David R. Herndon |
| | ) | United States District Judge, |
| Defendant-Appellant. | ) | Presiding. |

---

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned, counsel for Defendant-Appellant, hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief; and certifies that he has complied with Circuit Rule 31(e) requiring electronic filing of this brief (and any non-scanned PDF items).

_____
Gareth G. Morris
1704 N. Dayton St., Suite 100.
Chicago, Illinois 60614
Phone: (312) 943-6178

App. 44

**APPENDIX**

**TABLE OF CONTENTS**

**PAGE**

Transcript of March 2, 2009 "other acts" argument ............................. App. 1 - 29

The erroneous elements instruction (Tr. 3/3/09, pages 7 - 9) ............ App. 30 - 32

The revised elements instruction (Tr. 3/4/09, pages 8 - 10) ............... App. 33 - 35

Jury Instruction 12 ................................................................. App. 36

Judgment in a Criminal Case (R. 115) .................................... App. 37 - 43

Rule 30 Certification..……………………… ....................................... App. 44

4

**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | On appeal from the United |
| | ) | States District Court for the |
| Plaintiff-Appellee, | ) | Southern  District of Illinois |
| | ) | (East St. Louis) |
| | ) | |
| vs. | ) | No.  07 CR 30179 |
| | ) | |
| CARL A. COURTRIGHT, III, | ) | Honorable David R. Herndon |
| | ) | United States District Judge, |
| Defendant-Appellant. | ) | Presiding. |

---

### NOTICE OF FILING AND PROOF OF SERVICE

TO:    Clerk,
         United States Court of Appeals for the Seventh Circuit,
         219 S. Dearborn St.,
         Chicago, IL  60604

         Elizabeth Altman,
         Assistant United States Attorney
         City Station, Suite 200
         660 West Washington Avenue
         Madison, Wisconsin 53703

         PLEASE TAKE NOTICE that on July 2, 2010, I filed fifteen (15) copies of Appellant's Brief and one copy of said Brief in digital media, formatted in PDF, with the Clerk of the United States Court of Appeals for the Seventh Circuit; served two copies of said Brief and one copy in digital media (pdf) upon all counsel of record, by enclosing said copies in mailing packages addressed as indicated above with postage prepaid, and by depositing said packages in the United States Mail in Chicago, Illinois, on July 2, 2009.

                                        BY:_____
                                              Gareth G. Morris
                                              1704 N. Dayton Street, Suite 100
                                              Chicago, Illinois 60647