**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE SEVENTH CIRCUIT**

NO. 09-2880

*UNITED STATES OF AMERICA,*

**Plaintiff-Appellee,**

vs.

*CARL A. COURTRIGHT, III,*

**Defendant-Appellant.**

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

HONORABLE DAVID R. HERNDON, JUDGE PRESIDING

DISTRICT COURT NO. 07-30179-DRH-DGW

**BRIEF OF PLAINTIFF-APPELLEE**

**UNITED STATES OF AMERICA**

**A. COURTNEY COX**
**United States Attorney**

**NICOLE E. GOROVSKY**
**Assistant United States Attorney**
**Southern District of Illinois**
**Nine Executive Drive**
**Fairview Heights, IL 62208**
**(618) 628-3700**

**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE SEVENTH CIRCUIT**

**NO. 09-2880**

*UNITED STATES OF AMERICA,*

**Plaintiff-Appellee,**

vs.

*CARL A. COURTRIGHT, III,*

**Defendant-Appellant.**

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

HONORABLE DAVID R. HERNDON, JUDGE PRESIDING

DISTRICT COURT NO. 07-30179-DRH-DGW

**BRIEF OF PLAINTIFF-APPELLEE**

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Jurisdictional Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issue(s). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of Argument(s). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument(s)

  I.  The Court's Preliminary Elements Instructions Were Affirmatively Supported by Defense Counsel and Thus Objection to Them is Now Waived; They Were Also Harmless Error, and Were Quickly Corrected by the Court. . . . . . . . 19

  II.  The Trial Court Properly Corrected the Jury Instruction. . . . . . . . . . . . . . . . . . 23

  III.  L. Miller's Testimony was Properly Admitted Under Federal Rule of Evidence 413 and 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

  IV.  Even assuming *Arguendo*, that the L. Miller Evidence Was Not Admissible Under Federal Rule of Evidence 413, it was Alternatively Admissible Under Federal Rule of Evidence 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

  V.  The Limiting Instruction Given Before L. Miller's Testimony in the Case was Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

  VI.  The Limiting Instruction Given With Regard to the L. Miller Evidence at the End of the Case was Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

  VII.  The 413 Jury Instruction did not Inflate the Impact of the Prior Bad Acts Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

  VIII.  There was no Cumulative Error in this Case that Denied Courtright a Fair Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Appendix Certification.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Circuit Rule 31(e) Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

Appendix TOC

Appendix

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Almedarez Torres v. United States*, 523 U.S. 224 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Apprendi v. New Jersey*, 530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). . . . . . . . 29

*Doe v. Smith*, 470 F.3d 331 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Angle*, 234 F.3d 326 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Asher*, 178 F. 3d 486 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 36-38

*United States v. Breland*, 356 F.3d 787 (7th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Chemetco, Inc.*, 274 F.3d 1154 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Cunningham,* 103 F.3d 553 (7th Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. DiSantis*, 565 F.3d 354 (7th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Griffin*, 84 F.3d 912 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Hawpetoss*, 478 F.3d 820 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 26, 27, 30

*United States v. Hollow Horn*, 523 F. 3d 882 (8th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Johnson*, 495 F.3d 536 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*United States v. Jones*, 224 F.3d 621 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Jones*, 248 F.3d 671 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Julian*, 427 F.3d 471 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*United States v. Kieffer*, 68 Fed. Appx. 726, 2003 WL 21461656 (7th Cir. 2003) . . . . . . . . . . 27

*United States v. Linwood*, 142 F.3d 418 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Olano*, 507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Pree*, 408 F.3d 855 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Rosenbohm*, 564 F.3d 820 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Roth*, 860 F.2d 1382 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 31

*United States v. Strong*, 485 F.3d 985 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) . . . . . . . . . . 29

*United States v. Wynn*, 845 F.2d 1439 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Statutes**

Title 18, United States Code, Section 1344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Title 18, United States Code, Section 2251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 18, United States Code, Section 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Title 18, United States Code, Section 2252(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Title 18, United States Code, Section 2252(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Title 18, United States Code, Section 2260A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 18, United States Code, Section 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Title 18, United States Code, Section 3559(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 28, United States Code, Section 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Title 28, United States Code, Section 3742(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Other**

Fed.R.App.P4(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 32(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Fed. R. App. P. 32(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Fed R. Crim P. 30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Fed R. Crim. P. 52. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 33

Federal Rule of Evidence 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 32

Federal Rule of Evidence 404(b). . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 16, 17, 24, 25, 32, 37

Federal Rules of Evidence 413. . . . . . . . . . . . . . . 2, 9, 11, 12, 16, 17, 24-27, 29, 30, 34, 37, 38

Federal Rule of Evidence 414. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 25, 26, 30, 37

# JURISDICTIONAL STATEMENT

Defendant-Appellant's Jurisdictional Statement is not complete and correct; nevertheless, this Court has jurisdiction over this timely appeal.

On February 18, 2009, defendant-appellant was charged by a Second Superseding Indictment in the Southern District of Illinois with one count of Title 18, United States Code, Section 2251(a), two counts of Title 18, United States Code, Section 2252(a)(4)(B), one count of Title 18, United States Code, Section 2252(a)(2) and with one count of Title 18, United States Code, Section 1344. R. 67.[1]

Following a jury trial, Defendant was sentenced on July 17, 2009. R. 112. The district court entered its Judgment and Commitment Order on the same day. R 115. It is from this final order of the district court that Defendant appeals.

Defendant filed a timely Notice of Appeal on July 23, 2009. R. 117.

The district court had jurisdiction over these offenses against the laws of the United States pursuant to Title 18, United States Code, Section 3231.

Because this appeal is from a final decision of the United States District Court for the Southern District of Illinois, this Court has appellate jurisdiction pursuant to Title 28, United States Code, Section 1291, 3742(a), and Fed.R.App.P 4(b).

---

[1] Citation abbreviations contained herein include the following: "R." refers to the district court's Record Document Number; "[Date] Tr." refers to the Trial Transcript; ""App.Br." refers to Appellant's Brief, and "Gvt. Ex." refers to government's exhibit.

## STATEMENT OF THE ISSUE(S)

1.      Whether the District Court plainly erred in giving preliminary jury instructions as to Counts 1, 2, and 3, which included elements requiring that the Government must prove the Defendant's prior conviction.

2.      Whether the District Court plainly erred, after giving erroneous preliminary jury instructions in Counts 1, 2, and 3, in informing the jury that the previous instructions had been in error and in then giving the proper instructions.

3.      Whether the District Court abused its discretion in admitting evidence of the defendant's prior sex offense under Federal Rule of Evidence 413 and alternatively, 404(b).

4.      Whether a limiting instruction given to the jury with regard to the prior conviction evidence that used the words "evidence of the defendant's commission of another offense or offenses..." prejudiced the defendant by implying that he had more than one prior conviction such that the District Court plainly erred in giving it.

5.      Whether the District Court plainly erred in giving a limiting and final instruction based on Federal Rules of Evidence 413 and 414.

6.      Whether giving a limiting and final instruction regarding the evidence of the defendant's prior conviction highlighted the issue such that the District Court plainly erred.

7.      Whether giving a limiting and final instruction regarding the evidence of the defendant's prior conviction inflated the impact of the prior bad acts evidence.

8.      Whether the defendant was denied a fair trial because of the evidence of his prior conviction.

## STATEMENT OF THE CASE

On February 18, 2009, defendant-appellant was charged by Superseding Indictment in the Southern District of Illinois with one count of Production of Child Pornography pursuant to Title 18, United States Code, Section 2251(a), two counts of Possession of Child Pornography pursuant to Title 18, United States Code, Section 2252(a)(4)(B), one count of Receipt of Child Pornography pursuant to Title 18, United States Code, Section 2252(a)(2) and with one count of Bank Fraud pursuant to Title 18, United States Code, Sections 1344. R. 67.

On March 9, 2009, Courtright was convicted of each of the charges following a jury trial. R. 101.

On July 17, 2009, Courtright was sentenced to life plus 120 months imprisonment consecutive for Count 1, 240 months imprisonment for Counts 2 and 3, 480 months imprisonment for Court 4, and 360 months imprisonment on Count 5. R. 112, 114. All of the sentences for the particular counts were set to run concurrently. The Court imposed a lifetime term of supervised release. R. 112, 114.  He was further ordered to pay a fine of $1,500, restitution of $3,100, and a special assessment of $500.  R. 112, 114.  The Judgment and Commitment Order was entered on July 17, 2009.  R.114.

Courtright filed a timely Notice of Appeal on July 23, 2009. R.117.

## STATEMENT OF FACTS

### A.    The Investigation

On May 18, 2007, the Illinois Attorney General's Office served a subpoena on Myspace.com[2] to learn if any Illinois registered sex offenders were users of the website. March 3 Tr. 7-8.   The defendant, Carl Courtright ("Courtright") was a registered sex offender and agents learned from the subpoena response that he maintained a Myspace account. March 3 Tr. 7-9.  From the Myspace company, agents learned the internet protocol address that Courtright had used when he registered his account. March 3 Tr. 12.  Agents then entered that internet protocol address into a database that maintained records on internet protocol addresses which had offered child pornography for download on the internet in the past. March 3 Tr. 12-13.  They found that on December 15, 2006, the internet protocol address that was registered to Courtright's computer had offered child pornography for distribution on the internet through a file sharing program called Limewire. March 3 Tr. 12-13.  After learning this, officers applied for and received a warrant to search Courtright's house where he lived with his parents. March 3 Tr. 14-17.

Upon searching the house, officers found multiple computers and computer equipment scattered throughout the home. March 3 Tr. 14-18.  A forensic preview of the laptop found in Courtright's bedroom showed that there was child pornography that had been downloaded through Limewire. March 3 Tr. 14-17.  The preview also revealed that Courtright had evidence of a bank fraud scheme on his computer. March 3 Tr. 14-17.

During a brief interview at his home, Courtright stated that he was the sole user of Limewire in the house, and of the laptop in his bedroom. March 3 Tr. 42.

---

[2]Myspace.com is a social networking website that is often used by minors.

Courtright was interviewed more extensively at the Granite City Police station, and after receiving *Miranda* warnings, he told agents that he watched "To Catch a Predator" on television and became curious, so he may have searched key words related to child pornography on Limewire. Gvt. Ex. 38. He admitted doing this several times. Gvt. Ex. 38. Later in the same interview, he admitted downloading the files, but said that he deleted them instantly. Gvt. Ex. 38. He confessed to doing this at least 20 times. Gvt. Ex. 38.

Further forensic analysis of the computers revealed that Courtright possessed a significant amount of child pornography that had not been deleted. March 5 Tr. 33-144. Within his child pornography collection, he had one series of approximately eleven child pornography photos on his computer that looked like they were not downloaded from the internet. March 3 Tr. 97-115. The EXIF data (metadata from the image) from the photographs showed that they were taken directly from a Hewlett Packard (HP) camera. March 3 Tr. 97-115. The child depicted in these photos was not immediately identifiable because her face was not included in the shots. March 3 Tr. 97-115. However, agents noticed that the child in the photographs had a bandage on her neck. March 3 Tr. 97-115.

Courtright had false identification photographs stored on his computer as well; an agent noticed that one of the manufactured identification photos showed a young teen-age girl from the mid torso up. She had a mole on her neck that was in the same location as the bandage in the pornographic photos. March 3 Tr. 97-115.

Agents eventually identified the girl in the pornographic HP photos. March 3 Tr. 117. She was a child with the initials S.J. who was living with her father in the garage of a home that Courtright's parents owned. March 4 Tr. 74. She was 14 years old at the time the photographs were

5

taken. Gvt. Ex. 60. When agents went to her high school to talk with her, she broke down in tears at the mention of Courtright's name. March 3 Tr. 117, March 4 Tr. 93.

S.J. said that Courtright told her that he knew a guy in California who would pay $500 for naked photos. March 4 Tr. 84. She initially did not want to pose for the photographs, but she thought she needed the money. March 4 Tr. 84-85. She told Courtright that she would have her girlfriend take the pictures and send them to the guy in California, but Courtright told her that he had to be the photographer. March 4 Tr. 84.

Eventually the child agreed to pose for the photographs in a loft behind Courtright's house. March 4 Tr. 87-91. As directed by Courtright, she sat on a green director's chair and posed in varying stages of nudity. March 4 Tr. 87-91. Courtright told her that he wanted the photographs to look like a strip tease in sequence. March 4 Tr. 87-91. For the last photo, he told her to get aroused, and to spit on her hand and to use her hands to masturbate. March 4 Tr. 88-91. Courtright put a bandage over her mole she had on her neck to conceal her identity in the photographs. March 4 Tr. 89.

S.J. further explained that Courtright had been grooming her prior to taking the photographs as he regularly carried her from the cold garage to his bedroom when she was asleep, and allowed her to use the house shower. March 4 Tr. 76-79. He occasionally bought her gifts and spent time with her regularly. March 4 Tr. 76-79. He had progressed in his sexual aggression toward her by offering to rub lotion on her body and give her massages. March 4 Tr. 81-83. In one particular instance, Courtright rubbed lotion on S.J.'s buttocks and told her to "think of him like a doctor." March 4 Tr. 81-83.

When police confronted Courtright with the information they learned from S.J., he admitted to owning a Hewlett Packard camera. Gvt. Ex. 38. However, he denied taking any naked photos of

6

her. Gvt. Ex 38. He had no explanation for how the photos would be on his computer. Gvt. Ex. 38.

In addition to the Hewlett Packard photographs, the forensic investigators found that Courtright had a significant collection of child pornography that he had downloaded from the internet and stored on his computer. March 5 Tr. 33-144.   The computer information showed that at the same time he downloaded or viewed much of the child pornography, he did other things on the computer that led agents to believe that he was the user. March 5 Tr. 33-144. For example, he often checked his online banking records, or his social networking site profile within minutes of looking at child pornography. March 5 Tr. 33-144.

Lastly, agents learned that Courtright was ordained as a minister by an online company that sells ordinations and Doctorates of Divinity. Gvt. Ex. 38. He created a false online ministry and created fake donation checks. He would then deposit the fake checks and use the money that he received to make large purchases thus committing bank fraud. March 4 Tr. 226 -End, March 5 Tr. 1-33.

Computer forensic examiner Matthew Goward found all of the child pornography and fraud images were stored in Courtright's password protected computer or in a computer that Courtright admitted no one else used. March 5 Tr. 33-144.  From some of the child pornography images, agents were able to determine the date that Courtright downloaded them and those images were the subject of the receipt count. March 5 Tr. 33-144.  Goward further found that Courtright's personal items were commingled with the evidence of the child pornography, production images, and bank fraud images on the computer. March 5 Tr. 33-144.

**B.     Pretrial Issues**

Carl Courtright had a prior conviction in St. Clair County, Illinois in case number 99 CF

1544 for Aggravated Criminal Sexual Abuse pursuant to 720 ILCS 5/12-16(a)(2), for the act of sexual conduct on L. Miller[3] who was a minor. R.9. He was also convicted of Battery pursuant to 720 ILCS 5/12-3(a)(2) in the same case in that he touched another child's breast with his hand, and she was under 17 years old. R. 9. Courtright was required to register as a sex offender as a result of these convictions.[4] Gvt. Ex. 1.

Prior to trial in this matter, the Government filed a Notice of Prior Sex Offense with the trial court. R. 9. In the notice, the Government stated that pursuant to Title 18, United States Code, Section 3559(e), the statutory penalty for count one of the Second Superseding Indictment against Courtright, Production of Child Pornography, carried a mandatory sentence of life in prison because of the prior conviction described above. R. 9. The Government also argued that the fact that Courtright was required to register as a sex offender for his prior conviction also affected his statutory penalty pursuant to Title 18, United States Code, Section 2260A. This section states that if he is convicted of an offense under Title 18, United States Code, Section 2251 as a registered sex offender, he shall be sentenced to an additional ten year sentence to run consecutively to any other sentence imposed. R. 9. The Government filed this notice for the purpose of informing Courtright and the court of the enhanced penalties.

Also prior to trial, the Government filed a Notice of Intent to Introduce Other Acts Evidence. R. 65. In it, the Government informed the trial court and Courtright that it intended to

---

[3]Pursuant to Title 18, United States Code, Section 3509 ("Child victims' and child witnesses' rights"), the Government has used only the witness's first initial and last name in order to protect her privacy.

[4]He also had three prior forgery convictions and a theft conviction. These prior convictions are not relevant here, but factually dispute Courtright's claim that "he only had one" prior conviction. App.Br. 11.

introduce evidence of his prior bad acts. R. 65.

The Government sought pretrial permission to introduce evidence that Courtright had molested his prior step-children and argued that this evidence was admissible under Federal Rule of Evidence 413 as an "offense of sexual assault." R. 65. The defendant filed an objection to this evidence. R. 83. The Government never actually sought to introduce this evidence during trial. Courtright's mention of it in his brief is superfluous. App.Br. 18. The jury never heard about it.

The Government further sought in the pretrial motion to introduce evidence that Courtright's ex-wife had seen child pornography on his computer in the past and argued that the basis for the admission of this evidence was Federal Rule of Evidence 414. R. 65. March 2 Tr. 7. This is the only time the Government used Federal Rule of Evidence 414 as a basis for the admission of evidence, and then the Government chose not to present this evidence to the jury. Accordingly, Courtright's focus on Federal Rule of Evidence 414 in his brief is misplaced. App.Br. 17-22. The evidence is irrelevant to this appeal as it was not introduced at trial.

As a result of his sex offense convictions, Courtright was required to register with the State of Illinois as a sex offender. The Government argued in the pretrial motion that his status as a registered sex offender, and the restrictions he had to follow as a result, played an important part in the factual background of the trial and was therefore inextricably intertwined. R. 65.

The evidence was inextricably intertwined because the case at bar began when the Illinois Attorney General looked into the internet social-networking site MySpace.com in order to determine whether any registered sex offenders in Illinois maintained pages on this site. March 3 Tr. 7-8. Law-enforcement learned that Courtright had a page on MySpace, and began to investigate him. March 3 Tr. 7-8. Also, while interviewing Courtright and his parents, law-enforcement agents learned of

9

a second house that Courtright had on Madison Avenue in Granite City. March 3 Tr. 79. He

pretended not to be living there because the Madison Avenue address was too close to a school, and

sex offenders are not allowed to live near schools. March 3 Tr. 79. The victim of the child

pornography production charges lived as a tenant of the garage at the Madison Avenue house. March

3 Tr. 72-74.

The Government argued that the fact that the defendant was a registered sex offender was

inextricably intertwined with the evidence in this case. March 2 Tr. 4. Defense counsel conceded

the issue:

| | |
|---|---|
| THE COURT: | Now, not the registration as a sex offender. That's ongoing, that's immediate, so we don't have a closeness in time there. And I would dare say that's inextricably intertwined. Would you concede that one? |
| MR. ROSANSWANK: | I would think so, Your Honor. |
| THE COURT: | Just because that's really part of the issue in the case, isn't it? |
| MR. ROSANSWANK: | Exactly. |

March 2 Tr. 13. The trial court allowed the evidence to be admitted. March 3 Tr. 8. Courtright does

not appear to challenge this evidence in his brief. However, he fails to inform this Court that the

concession allowed for evidence of Courtright's sex offender registration to be admitted such that

jurors were automatically aware that Courtright had a prior sex conviction even without other

evidence. This is relevant to any analysis of prejudicial error relating to prior bad acts evidence in

this case.

The Government sought to introduce evidence of Courtright's prior bad acts with regard to

victim L. Miller. R. 65. This evidence is at issue in this appeal. The evidence that the government

sought to admit and the testimony of the witness is described below:

In 1998, Courtright lived with a roommate who had a 15-year-old girlfriend, L. Miller. March 4 Tr. 157.  Courtright and his roommate lived in a house owned by Courtright's parents on Madison Avenue in Granite City, Illinois. March 4 Tr. 157.  L. Miller assisted Courtright and the roommate with the newspaper route for which he was responsible at that time. March 4 Tr. 157. Courtright persuaded L. Miller to allow him to take nude photographs. March 4 Tr. 157-158.  These photographs displayed L. Miller's exposed breasts and genitalia. March 4 Tr. 157-158.  Courtright told her how to pose for the photographs.  March 4 Tr. 159. He stored these photographs on his computer, but at one point told Miller that he had deleted the images. March 4 Tr. 162-163.  Miller later learned that he had not deleted her nude images. March 4 Tr. 162-163. On one occasion, he inserted his fingers into Miller's vagina. March 4 Tr. 159.  He told her that he knew medical stuff and that he would "examine" her.  March 4 Tr. 159.

After this episode, Courtright pled guilty to aggravated sexual abuse in violation of ILCS 5/12-16(a)(2), in Madison County, Illinois, on September 27, 2000.  He was required to register as a sex offender as explained above.  Gvt. Ex. 1.

In support of the admission of this evidence, the Government argued that Federal Rule of Evidence 413 applied. R. 65.  Alternatively, the Government argued that Federal Rule of Evidence 404(b) also allowed for the admission of the evidence.

The Government argued that in this case, Courtright was accused of producing child pornography when he took sexually explicit photographs of S.J. who was the daughter of a tenant in his parents' house. R. 65.  The Government reported that S.J. would testify that, while taking these photographs, Courtright placed his hands upon her hands and caused her to open her vagina so that

11

it could be photographed. R. 65.  Thus, Courtright used the girl's own hands as an object to make

contact with her genitals, and stood accused of an offense of sexual assault as defined by Rule 413.

R. 65.  Thus, the Government argued, the prior sexual assault against Miller was admissible under

Rule 413. The Government also argued that if the evidence was inadmissible under Rule 413, it was

alternatively admissible under Federal Rule of Evidence 404(b) to show motive, intent and identity.

R. 65.

During a hearing held on this issue, the trial court questioned the Government about these

arguments. March 2 Tr. 3-29, Appendix C.  Defense counsel objected to the admission of any

testimony by L. Miller and maintained a continuing objection to the evidence throughout the trial.

March 2 Tr. 3-29, Appendix C. He argued that 413 did not apply because Courtright had to be

*charged* with an offense of sexual assault before Rule 413 applied. March 2 Tr. 11, Appendix C.

Moreover, defense counsel argued that it was propensity evidence, and that it was too remote in time

to be relevant under Rule 404(b).  March 2 Tr. 14-20, Appendix C.  Lastly, he argued that the

evidence was overly prejudicial. March 2 Tr. 14-17, Appendix C.

The trial court ruled that the evidence was admissible because it was relevant and not overly

prejudicial.  March 2 Tr. 27, Appendix C.  The court noted that L. Miller's testimony was strikingly

similar to the present case, that it was not so remote in time, and that it would assist the jury.

March 2 Tr. 28, Appendix C.  It noted:

> In making the final determination the trial court stated:

> In looking to see whether or not 403 trumps this, whether or
> not this evidence is so prejudicial to Mr. Courtright as to overwhelm
> its probative value, the Court deems the evidence to be so probative
> as to overwhelm its prejudice against Mr. Courtright, and so the Court
> finds that its relevance is established and will allow the evidence.

March 2 Tr. 28-29, Appendix C. The court further ruled that there would be a limiting instruction before the evidence was presented. March 2 Tr. 28-29, Appendix C.

## C.    Trial

The trial began on March 2, 2009, and on the first day, following jury selection, the trial court informed the jury of the pending charges against Courtright. The Judge told the jurors that they would be given "detailed instructions on the law at the end of the case ...but in order to help [them] follow the evidence, [the court would] give [them] a brief description of the elements of the offense[s]". March 3 Tr. 6-8, 9.

The elements instructions that the court initially gave that are at issue in this appeal were as follows:

> As to the production of child pornography charged in Count 1, the government must prove the following propositions beyond a reasonable doubt as to Courtright:
> First, the defendant employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct;
> Second, the defendant knew or had reason to know that such visual depiction would be transported in interstate or foreign commerce or was produced using materials that had been mailed, shipped, or transported in interstates commerce, including but not limited to a computer;
> Third, the defendant was at the time required by federal and other law to register as a sex offender; and
> **Fourth, the defendant had been previously convicted of a sex offense in which a minor was the victim . . .**

*Id* at 7 (emphasis added), Appendix A.

The Court further instructed as to the possession of child pornography charges in Counts 2 and 3:

> First, the defendant knowingly possessed an item or items of child pornography;

13

Second, that such items of child pornography had been mailed, shipped, or transported in interstate or foreign commerce, including by computer, as charged, or were produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce;

Third, that at the time of such possession the defendant believed that such items constituted or contained child pornography as hereinafter defined;

**Fourth, the defendant had a prior conviction under the laws of any state relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography.**

*Id* at 8-9 (emphasis added), Appendix A.

When the trial court finished instructing the jury, the prosecutor immediately asked the judge for a bench conference and objected to the jury instructions. The prosecutor argued that the instructions contained erroneous elements requiring that the Government prove Courtright's prior conviction. March 3 Tr. 14-16, Appendix A. Defense counsel protested the prosecutor's objection and argued in support of the erroneous instructions. He cited *Apprendi* in arguing that the Government was required to prove the fact of the prior conviction.[5] *Id* at 15. The prosecutor asked for the opportunity to have a colleague research the issue while she gave her opening statement, and the court agreed. *Id* at 16.

The following day, the court convened without the jury in order to discuss the issue of the preliminary jury instructions. March 4 Tr. 4, Appendix B. Defense counsel argued that he wanted to keep the instructions as the court had originally read them, including the additional elements. *Id*. In other words, he argued in support of the erroneous instructions. *Id.* The Government argued that the added elements should be taken out pursuant to *United States v. Johnson*, 495 F.3d 536 (7th Cir.

---

[5] In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

14

2007). The court agreed with the government and ultimately decided to re-instruct the jury properly. *Id* at 6.

> When the jury entered, the court explained the prior day's mistakes:

> Ladies and gentlemen, I started this trial out by making a couple of mistakes. When I read to you the elements of what the Government would be required to prove, I suggested something that would require them to prove more than they actually are required to prove, so I'm going to read to you elements of the offense that are actually less of a requirement.

Then he read the proper elements of counts one, two and three to the jury. March 4 Tr. 9, Appendix B. The court then proceeded with the trial.

Despite Courtright's arguments in his brief, L. Miller was never mentioned in the Government's opening statement in the trial, or in any of the evidence presented before she took the stand. Prior to her testimony, the court gave a limiting instruction as promised. March 4 Tr. 154. Defense counsel objected to the testimony on the same basis that he had argued in his earlier motion and motion hearing, but did not object on any new ground. Then Miller testified. March 4 Tr. 154-159.

The Government called fourteen witnesses to testify in its case-in-chief. Courtright did not present any witnesses in the trial. Closing arguments were made on March 6, 2009. Following the conclusion of the evidence and arguments, the jury found Courtright guilty on all counts in the Superseding Indictment. R. 101.

## SUMMARY OF ARGUMENTS

Courtright's first argument that the trial court's preliminary verdict directing jury instructions read before the trial began were erroneous and that they misled the jury is waived. The defendant did not object to the incorrect preliminary instructions, and in fact supported them against the

15

prosecutor's objection because they required the *Government* to meet a higher burden of proof than necessary. Although the instructions were erroneous in that they required proof of the defendant's prior sex offense conviction as an element, the court acknowledged it quickly, informed the jury of the mistake, and corrected them. The jury is assumed to have followed the corrected instructions.

Accordingly, Courtright's rights were in no way affected by the erroneous preliminary instructions, and if this Court were to overlook counsel's waiver of this argument, it should find the trial court did not plainly err. Moreover, any error was harmless because evidence of Courtright's prior conviction was properly before the jury later in the case so the jury knew that he had a prior sex conviction regardless.

Next, despite claiming harm from the improper instructions, Courtright argues that it was improper to correct the preliminary instructions because they somehow left the jury with an impression that he had a prior child pornography offense. As stated above, the trial court amended the instructions properly. The jury is presumed to have done as instructed and ignored the improper instructions in favor of the correct ones. Nevertheless, Courtright claims that the court should have, *sua sponte*, informed the jury that he did not have a prior child pornography conviction. However, defense counsel did not ask for this, and the trial court chose not to improperly highlight the issue. Courtright overreaches by assuming the jury remembered the improper elements that were read aloud, inferred a false prior offense, and found him guilty for it. This argument is without merit.

Third, Courtright argues that L. Miller's testimony was improperly admitted. However, Federal Rules of Evidence 413 and 404(b) allow for the admission of this evidence. Rule 413 allows for evidence of a prior sexual assault if a defendant is accused of sexual assault in the present case. In the case at bar, the victim accused Courtright of sexual assault. Courtright directed her to put her

16

hands in her vagina, masturbate, and to spit in it to feign arousal. He also rubbed lotion on her buttocks approaching her anus and genitals until he was shocked by someone else entering the room - this was an attempted sexual assault. Therefore, by its plain language, Rule 413 applied and allowed the L. Miller sexual assault testimony.

Even if L. Miller's testimony was not admissible under Rule 413, it was admissible under Rule 404(b). The evidence was probative of Courtright's motive, intent, and identity. The prior conviction was not remote in time and involved strikingly similar conduct to that involved in the case at bar. Defense counsel conceded this at trial. Finally, contrary to Courtright's argument that it did not, the trial court weighed the evidence under Rule 403, and decided that the evidence was highly probative and that a limiting jury instruction could allay any possibility of prejudice. For these reasons, the evidence was admissible under Rule 404(b), and there was no abuse of discretion.

Fifth, Courtright fruitlessly argues that the limiting instruction on the 413/404(b) issue was improper. Defense counsel did not object to the limiting instruction at trial and failed to offer his own version when invited to do so making this claim reviewable only for plain error. Courtright argues that the limiting instruction improperly implied a prior offense of child molestation. However, the instruction clearly stated that the jury was going to hear evidence of a prior offense involving "sexual assault **or** child molestation." "Or" is the operative word. The prior offense technically involved "sexual assault" and not "child molestation," under Rule 414's definition of "child molestation " because the victim was fourteen and not under fourteen. However, the "or" implies one or the other. Moreover, because the evidence presented showed a sexual assault against a minor, and the jury was informed of the prior victim's age, there was no confusion. Courtright's further contention that the instruction implied that "every viewer of child pornography is a child

17

molester and vice versa" is not reasonable. This claim fails.

Next, Courtright argues that the Rule 413 final jury instruction was improper because it was crafted by altering existing case law.  However, because there is no pattern jury instruction for Rule 413, it was necessary to create an instruction suited to the case at bar.  The final instruction was taken from a factually similar case in the Eighth Circuit and altered *in defendant's favor*. Therefore it was in no way improper or prejudicial to the defendant.  The altered instruction narrowed the consideration of the prior offense to evidence of the defendant's intent, when the original instructions would have allowed it for consideration on any matter to which it was relevant.

Seventh, Courtright claims the Rule 413 jury instruction inflated the importance of the prior offense by highlighting it.  However, it was drawn from case law, and ended with a reminder to the jury that the government has the burden of proof as to every element of the counts alleged in the case.  This was not erroneous, and certainly not plain error.

Finally, Courtright argues that there was cumulative error from the above alleged errors. However, his trial was fair and the evidence against him was overwhelming.

**ARGUMENTS**

I.    **The Court's Preliminary Elements Instructions Were Affirmatively Supported by Defense Counsel and Thus Objection to Them is Now Waived; They Were Also Harmless Error, and Were Quickly Corrected by the Court.**

INTRODUCTION

Courtright argues that the trial court's preliminary jury instructions (given prior to any evidence being presented) were erroneous and that they misled the jury.  App.Br. 14.  More specifically, Courtright argues that the preliminary instructions on counts one, two and three were erroneous because they required the Government to prove that Courtright had previously been convicted of a sex offense involving a minor.  App.Br. 14.    Despite the fact that Courtright supported the erroneous instructions, that the instructions were later corrected by the trial court, and that the fact of his prior sex conviction involving a minor was admitted in the trial on other grounds, Courtright asserts that this error denied him a fair trial.  This claim is without merit.

STANDARD OF REVIEW

"A defendant waives an objection to jury instructions if 'the record illustrates that the defendant approved of the instructions at issue.'" *United States v. DiSantis*, 565 F.3d 354, 361(7th Cir. 2009) (*quoting United States v. Pree,* 408 F.3d 855, 872 (7th Cir. 2005). "The 'touchstone' of the waiver inquiry is 'whether and to what extent the defendant ha[s] actually approved of the jury instructions assigned as error on appeal.'" *Id. (quoting United States v. Griffin,* 84 F.3d 912, 924 (7th Cir. 1996). "Waiver 'extinguishes any error' and 'precludes appellate review.'" *Id.*

The Government concedes that the preliminary jury instructions were erroneous as will be explained below.  However, after the trial court gave the preliminary jury instructions which

19

Courtright now contests, defense counsel did not object; the prosecutor did. March 3 Tr. 14. Furthermore, defense counsel fought to keep the original instructions. March 3 Tr. 15, Appendix A, March 4 Tr. 4, Appendix B. By failing to object to the instructions prior to jury deliberations, and by actually fighting to keep the original instructions, Courtright waived any objection to them. *Id.* This claim is not reviewable. However, out of an abundance of caution, the merits of the argument will be addressed below.

ANALYSIS

Courtright argues that the preliminary instructions were erroneous and misleading to the jury because the inclusion of the extra elements implied the existence of Courtright's prior sex offenses. He advances this argument despite the facts that the trial court corrected the error, and that evidence of Courtright's prior conviction was nonetheless presented in evidence on other grounds.

A.     **The United States concedes that the preliminary instructions were erroneous**

The United States concedes that the additional elements of the preliminary instructions of Counts one, two and three were erroneously given. In *United States v. Johnson*, this Court addressed this issue. 495 F.3d 536, 543-544 (7th Cir. 2007). Johnson argued, much like defense counsel argued during trial in the case at bar, that the underlying fact of a prior conviction must be charged in the indictment and proven beyond a reasonable doubt to a jury. *Id.* This Court determined that "The governing law of the Supreme Court unequivocally states that the fact of a prior conviction *need not* be found by a jury beyond a reasonable doubt, nor must it be alleged in the indictment." *Id. (Citing Almedarez Torres v. United States*, 523 U.S. 224, 246-47 (1998), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).)* Accordingly, the element that the jury must find the fact that Courtright committed a prior sex offense was given in error. However, the error was harmless.

20

**B.     The erroneous preliminary jury instructions were corrected prior to jury deliberations, and this Court assumes juries follow jury instructions**

The Court assumes that the jury followed the corrected instructions unless there is a reason to think otherwise. *United States v. Strong*, 485 F.3d 985, 991 (7th Cir. 2007), citing *United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001). In this case, prior to giving the erroneous elements instructions, the court specifically stated– before each count– that the instructions which were about to be given were not final, and that final instructions were to come at the end of the trial. March 3 Tr. 6-8, 9, Appendix A. Moreover, the court corrected the error quickly by explicitly notifying the jury the next day that the previous day's preliminary jury instructions were incorrect.

The court then proceeded to give the correct jury instructions. March 4 Tr. 8, Appendix B. Because there is no indication otherwise, this Court should now assume that the jury followed the corrected jury instructions.

**C.     While the preliminary jury instructions were erroneous, the error was harmless and did not affect Courtright's substantial rights.**

Even assuming *arguendo* that the jury failed to follow the corrected instructions, Courtright's argument fails in that the additional elements were harmless. Harmless error in jury instructions does not reverse a conviction. *United States v. Roth*, 860 F.2d 1382, 1390 (7th Cir. 1988). Harmless error is defined as "[a]ny error, defect, irregularity, or variance that does not affect substantial rights," and therefore "must be disregarded." Fed R. Crim. P. 52. This is because the evidence of Courtright's prior conviction would have been presented to the jury regardless of whether it was an element to be proven. Consequently, Courtright's substantial rights were not affected.

Courtright's concern that the elements improperly implied the fact of his prior conviction to the jury is unwarranted as Courtright's status as a registered sex offender was admitted as evidence

21

on other proper grounds. It was inextricably intertwined with the facts of the investigation and Courtright's trial counsel conceded its admission. March 2 Tr. 13. Clearly, status as a registered sex offender implies a prior sex conviction. Therefore, it was something the jury would have known regardless of the erroneous jury instructions.

**D.     Despite Courtright's argument to the contrary, the prosecution did not highlight the prior conviction in its Opening Statement.**

Courtright supplements his argument by discussing portions of the prosecution's Opening Statement in which the prosecution mentions that Courtright was a registered sex offender. App. Br. 15. He unfairly represents the Opening Statement to make it seem as though the prosecution focused primarily on the prior offenses. *Id*. That is not the case. In fact, the prosecution explained the fact of the sex offender registration merely to complete the story of how Courtright came to be prosecuted in this case and then did not mention it again:

> . . . How did we get here? How did we find out about S.J.? How did we find out about Carl Courtright and his pictures? The defendant, Carl Courtright, is a registered sex offender. He has a prior conviction from 1998 for aggravated criminal sexual abuse, which requires him to register as a sex offender.
> Back in 2000 – It was early 2007, ladies and gentleman. The Attorney General's Office of Illinois decided to issue a subpoena to a website called MySpace. Many of you probably heard about Myspace. It's been in the news a lot lately. It's a social networking site where children often socialize. Because of this, the Attorney General's Office was interested in finding out what registered sex offenders had MySpace accounts because children are often on that site, so they issued the subpoena to MySpace, and when it was returned, the defendant's name was on that list. He had a MySpace account.
> What they did was that they learned what the IP address was from that account . . . [Explanation of internet protocol address excluded] They ran it through a database of IP addresses that were known to offer child pornography for trade on the internet, and what they found was that the defendant's IP address had offered child pornography for trade on the internet and what they found was that the defendant's IP address had offered child pornography for trade earlier that year.

March 3 Tr. 18-19.

As the inclusion of the context of the prosecutor's Opening Statement indicates, the language Courtright focused on in his brief is not representative of the Opening Statement as a whole, which did not in any way attempt to highlight the prior sexual offense. Additionally, as discussed above, the information about Courtright's registration as a sex offender was uncontested as inextricably intertwined with this case, and would have been known to the jury regardless. For all of the reasons above, Courtright's first claim must fail.

## II.     The Trial Court Properly Corrected the Jury Instruction.

Although it is not entirely clear, Courtright seems to argue that the erroneous preliminary jury instructions described above somehow implied to the jury that Courtright had a prior *child pornography* conviction that he did not in fact have. App.Br. 15-16. Courtright refers to the additional element in counts two and three which stated, "the Defendant had a prior conviction under the laws of any state relating to aggravated sexual abuse, sexual abuse, or abusive sexual contact involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." App.Br. 14-15. He then argues that correcting the instruction was improper because the court should have instead, *sua sponte,* explained to the jury that there was no prior child pornography conviction. App.Br. 15-16.

It is difficult to see how the jury would infer from the language above that Courtright had a prior *child pornography* conviction. As stated in Argument I, the trial court corrected the erroneous instruction quickly by removing the element and reading the proper instructions to the jury. Courtright did not ask for the trial court to explain to the jury that there was no prior child pornography conviction, and in fact, fought to keep the element as it was. March 3 Tr. 15, Appendix A, March 4 Tr. 4-5, Appendix B. The claim is therefore waived, and the trial court did not plainly

23

err in not doing so *sua sponte*.    Moreover, the jury is presumed to have followed the corrected instructions which implied nothing of a prior conviction.

It would not make sense for the trial court to highlight the child pornography language from the laundry list of offenses in the erroneous element just to tell the jury that there was no such prior conviction. Instead, the trial court properly corrected the instruction and moved on.

Any claim that jurors were somehow left with a lasting impression that Courtright had a prior child pornography conviction is overreaching.  The instructions were elements that the jury was told to find; they were not evidence.  No evidence was presented that there was such a prior child pornography conviction.

Courtright's argument that "From here, things got worse. Other errors focused the jury on the worst sort of prejudicial propensity evidence– virtually compelling the jury to infer guilt on the basis of Courtright's prior offenses" is hyperbole and is not based in fact.  App.Br. 16-17. This claim is without merit.

### III.    L. Miller's Testimony was Properly Admitted Under Federal Rule of Evidence 413 and 404(b).

**INTRODUCTION**

In his third claim on appeal, Courtright argues that L. Miller should not have been allowed to testify about the prior offenses of sexual assault that Courtright had committed upon her.  App.Br. 17-21. However, L. Miller's testimony was admissible under two rules of evidence, Federal Rule of Evidence 413, and Federal Rule of Evidence 404(b).

Courtright contends that after the Government "trotted out a catalogue of purported bad acts," it did not introduce any evidence of those purported bad acts at trial.  App.Br. 17.  The "catalogue"

to which Courtright refers– his alleged molestation of his stepchildren and his ex-wife's discovery of his collection of child pornography– was indeed not introduced at trial. These issues were merely listed in a Notice of Intent to Introduce Evidence motion filed prior to trial.  R. 65.  Therefore, they had no effect on the jury whatsoever and are irrelevant here. Solely at issue in this appeal is L. Miller's testimony.

**STANDARD OF REVIEW**

The proper standard when reviewing the trial court's admission of evidence is abuse of discretion.  *United States v. Sebolt*, 460 F.3d 910, 916 (7th Cir. 2006).  "Owing special deference to the district court's decision, [the Court of Appeals] will not overturn [a trial court's decision] unless no reasonable person could agree with it." *Id.*  In specifically addressing prior acts of sexual misconduct under Federal Rules of Evidence 413 or 414, this Court has stated that  "[c]oncerning the admission of evidence of other acts of sexual misconduct, the district court has wide discretion, and, consequently, this court's review is 'highly deferential.'" *Id*., citing *United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005).

**ANALYSIS**

L. Miller's testimony was admissible under 413 and 404(b).  It was not overly prejudicial in that it was extremely probative, and was relevant under the purpose of the rules of evidence. The trial court gave a limiting instruction to the jury which directed jurors to consider the evidence only for certain limited purposes.  While Courtright is correct that Rule 414 is inapplicable to L. Miller's testimony, it was not argued as a basis for its admission and the court did not use it as such.

**A.    L. Miller's testimony was admissible under Federal Rule of Evidence 413**

Federal Rule of Evidence 413 provides in pertinent part:

25

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

An "Offense of sexual assault" is defined as including a crime under Federal or State law that involved contact without consent between any part of the defendant's body or an object and the genitals of another person. *Id*. Conspiracies and attempts are also included. *Id*.

Here, Courtright was accused of producing child pornography when he took sexually explicit photographs of then-fourteen-year-old S.J. Prior to trial, the Government proffered that S.J. would testify that, while taking these photographs, Courtright placed his hands upon her hands and caused her to open her vagina so that it could be photographed. March 2 Tr. 9, Appendix C. Thus, Courtright used S.J.'s own hands as an object to make contact with her genitals, and stood accused of an offense of sexual assault as defined by Rule 413.

In *United States v. Hawpetoss*, 478 F.3d 820 (7th Cir. 2007) this Court gave guidance on Rule 413. The *Hawpetoss* defendant was charged with engaging in sex acts, and attempting to do so, with three minor children. *Id*. at 821. Before trial, the United States moved to admit evidence of uncharged conduct by defendant, including other instances of molestation and assault of the victims, as well as molestation of two minors not mentioned in the indictment. *Id*. at 822.

On appeal, Hawpetoss argued that the district court erred in admitting the Rule 413 and 414 evidence. *Id*. This Court responded that Rules 413 and 414 create an exception to the general rule against propensity evidence found in Rule 404(b), *id.*, and explained the purpose behind the rules:

> Congress enacted these new rules to 'protect[] the public from rapists and child molesters . . . . In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant . . . that simply does not exist in ordinary people.

26

*Id.* at 824, citing 2 Jack B. Weinstein & Margaret A. Burger, *Weinstein's Federal Evidence* § 414 App.01(2)(d), at 18-20 (Joseph M. McLaughlin ed., 2d ed. 2005) (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (statement of Senator Dole))

In approving the district court's handling of the issue in *Hawpetoss*, this Court noted the district court's determination that the disputed evidence was similar to the charged conduct. *Id.* at 826. Next, the district court concluded that the amount of elapsed time between the prior uncharged offenses and the charged offenses was not so long as to preclude admissibility. *Id.* The district court found no evidence of any intervening acts that might have decreased the relevance of the disputed evidence. *Id.* Finally, there was no likelihood of violating Rule 403's admonition against undue delay because the necessary witnesses were already scheduled to testify at trial. *Id.* Accordingly, this Court found the evidence to be properly admitted. *Id.*

Seventh Circuit cases relating to Rule 413 generally hold that the district court did not err in admitting Rule 413 evidence. *See, e.g., Hawpetoss*, 478 F.3d 820 (7th Cir. 2007); *Doe v. Smith*, 470 F.3d 331, 342-46 (7th Cir. 2006); *United States v. Julian*, 427 F.3d 471, 485-488 (7th Cir. 2005); *United States v. Angle*, 234 F.3d 326, 341-342 (7th Cir. 2000). *See also United States v. Kieffer*, 68 Fed. Appx. 726, 2003 WL 21461656 (7th Cir. 2003) (upholding admission of similar evidence under Rule 404(b)). (But see *United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009), which remanded the case to consider the evidence under Federal Rule of Evidence 403).

In the case at bar, the Government proffered that prior to trial, S.J. had informed the Government that Courtright used his hands to place her hands in her vagina for the photograph. R 65. This would have been the sexual assault that the defendant was accused of for the purposes of Rule 413. At trial she did not spell it out so vividly. Instead, she stated that Courtright directed

27

her poses and that he wanted the pictures to look like she was aroused and was "playing with herself." March 4 Tr. 90-91. He directed her to put her fingers in her vagina.  March 4 Tr. 88-92.

Courtright now argues that because the testimony did not come out exactly as the Government had predicted, it no longer fit into Rule 413.[6]  App.Br. 19.  However, this objection was never made at trial on these grounds and therefore, this aspect of the claim is to be reviewed under a plain error standard. "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objection." *United States v. Wynn,* 845 F.2d 1439, 1442-1443 (7th Cir. 1988). "Thus, not just any objection will save an issue for review, neither a general objection to the evidence nor a specific objection on a ground other than the one advanced on appeal is enough." *United States v. Linwood*, 142 F.3d 418 (7th Cir. 1998).

The admission of the L. Miller evidence did not violate Courtright's substantial rights. It is reasonable to infer from the evidence that Courtright used  S.J.'s hands to touch her vagina.  She explained that he directed the poses, and that he wanted her to touch her vagina for one of the images: "He's the one who said we needed to go through the stages because I didn't know what I was doing. I didn't know how to do that." March 4 Tr. 90-91.   Even if the jury did not hear that he touched her hands to do it, which can be inferred, he directed her actions and that meets the definition of contact between an object and the victim's genitals as is required in Rule 413.   He also directed her to spit in her vagina, and to masturbate. March 4 Tr. 91.

---

[6]Courtright is correct in noting that the Government argued in its rebuttal closing that Courtright used his hands to place S.J.'s hands in her vagina.  App.Br. 19.  However, there is no claim of error with regard to the closing argument, and if there was, it was a reasonable inference from the evidence.

If that is not enough, S.J. testified about an incident when Courtright rubbed lotion on her back and continued moving closer to her genitals with his hands.  March 4 Tr. 81-83.  He told her to think of him as a doctor as he rubbed the lotion on her buttocks. March 4 Tr. 81-82.  She was too scared to ask him to stop. March 4 Tr. 81.  He only stopped when her friend walked in the room and saw what was happening. March 4 Tr. 83. This constitutes an attempted sexual assault, and attempts count for the admission of a prior offense under Rule 413. FRE 413(d)(5). Consequently, Rule 413 was properly used here.

Courtright's claim that the Government argued that "child pornography inherently involves abuse of children so that every child pornography charge is also a sexual assault charge..." is fictitious.  App.Br. 19.  No such words were ever uttered as an argument in this case.  As shown above, the Government clearly argued that the defendant committed a sexual assault on S.J. and that her testimony would accuse him of that assault.  Sexual assault was not *charged* in this case because there is no federal jurisdiction on such a count here, but Rule 413 merely says that he has to be *accused* of it.  Her testimony clearly accused him of it.

Courtright argues that the Government's interpretation of the word *accused* was incorrect. However, Congress knew how to draft language stating that he had to be *charged* with assault, but instead chose the word *accused*:

> A cardinal canon of statutory construction is that we "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). If the language of a statute is clear and unambiguous, "in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."*United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (quotations omitted); see also *United States v. Chemetco, Inc*., 274 F.3d 1154,

1159 (7th Cir. 2001).

*United States v. Rosenbohm*, 564 F.3d 820 (7th Cir. 2009).

Accordingly, the defendant was accused by S.J. of sexual assault and attempted sexual assault, and Federal Rule of Evidence 413 allowed for the admission of the prior offense of sexual assault.

**B.    Contrary to Courtright's apparent misunderstanding, the prosecution did not argue that L. Miller's testimony was admissible pursuant to Rule 414.**

Courtright attempts to mislead this Court into believing that the Government used Federal Rule of Evidence 414 as the basis for the admission of L. Miller's testimony.  App.Br. 21. The Government only used Rule 414 as a basis to seek admission of prior child pornography images the defendant possessed, but never introduced the evidence at trial . Rule 414 was never mentioned in reference to the L. Miller evidence because the victim was over fourteen years old.

The trial court in this case properly applied the *Lemay* factors even though the *Hawpetoss* Court said that it did not have to. March 2 Tr. 13. The trial court also gave an appropriate limiting instruction before L. Miller testified, and at the end of the case.  March 4 Tr. 154.  The evidence was throughly scrutinized under Rule 413 and appropriately handled.   There was no error in the admission of this evidence.

**IV.    Even assuming *Arguendo*, that the L. Miller Evidence Was Not Admissible under Federal Rule of Evidence 413, it was Alternatively Admissible under Federal Rule of Evidence 404(b).**

The Seventh Circuit uses a four-part test to determine whether prior conduct is admissible under Rule 404(b) and will find no error if:

(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the

30

other act is similar enough and close enough in time to be relevant to the matter in
issue; (3) the evidence is sufficient to support a jury finding that the defendant
committed the similar act; and (4) the probative value of the evidence is not
substantially outweighed by the danger of unfair prejudice.

*United States v. Sebolt*, 460 F.3d 910, 916 (7th Cir. 2006), quoting *United States v. Asher*, 178 F.3d

486, 492 (7th Cir. 1999).  In *Sebolt*, defendant was charged with possession, transportation, and

advertising of child pornography.  460 F.3d at 914.  At trial the United States presented evidence that

defendant (1) molested a young male relative; (2) drove to Wisconsin intending to have sex with a

minor female; (3) kept a pair of boys' Pokemon underwear under his bed; and (4) discussed other

thoughts and attempts to molest children.  *Id*. at 915.

In generally approving the district court's admission of this evidence, the Seventh Circuit

noted that "[p]rior instances of sexual misconduct with a child victim may establish a defendant's

sexual interest in children and thereby serve as evidence of defendant's motive to commit a charged

offense involving the sexual exploitation of children."  *Id*. at 917, citing *United States v.*

*Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996).  Furthermore, they can identify the defendant to the

crime.  *Sebolt*, 460 F.3d at 917.

For these same reasons authorized by the Seventh Circuit, the United States was permitted

to introduce evidence of Courtright's prior sexual assault on L. Miller.  It was not propensity

evidence but was instead evidence of his motive, intent and identity.  The prior convictions and their

related facts are close enough in time and similar enough to the charged conduct to be relevant to the

instant prosecution.  They were strikingly similar offenses in that both victims stated that Courtright

took naked photographs of them.  March 4 Tr. 85-92, March 4 Tr. 157-158; he told both victims to

think of him as a doctor who was examining them.  March 4 Tr. 81, March 4 Tr. 159; he manipulated

troubled children of similar age in each instance. March 4 Tr. 72, March 4 Tr. 155; he groomed each

child by allowing them to help him roll newspapers. March 4 Tr. 76-79, March 4 Tr. 157; he lied to

both girls in telling them that he had deleted their images. March 4 Tr. 96, March 4 Tr. 163. Defense

counsel even conceded that the evidence in both cases was strikingly similar. March 2 Tr. 27-28.

Finally, the evidence is sufficient to support a jury finding that defendant committed the similar act,

especially since the defendant plead guilty to it.

Federal Rule of Evidence 404(b) was raised as an alternative basis for the admission of this

evidence in the Government's notice. R. 65. Also, contrary to Courtright's assertion, the trial court

did analyze this evidence under Federal Rule of Evidence 403. March 2 Tr. 17-18. The judge found

that the evidence was highly probative and that a limiting instruction to the jury would lessen any

prejudice. March 2 Tr. 17-18, Appendix C.

Accordingly, the trial court did a thorough analysis of this evidence under Rules 413 and

404(b). The Court weighed the evidence under Rule 403. The Court made painstaking efforts to

ensure that this evidence was appropriate. There was no error in admitting it.

### V.     The Limiting Instruction given Before L. Miller's Testimony in the Case was Proper.

**INTRODUCTION**

In his fifth claim on appeal, Courtright argues that the limiting instruction given at trial with

regard to L. Miller's testimony was improper. Specifically, he argues that it implied that the current

case was one of sexual assault, and that he had more than one prior offense of sexual assault.

App.Br. 26- 30.

Before L. Miller testified, the Court read the following limiting instruction to the jury:

> Ladies and Gentlemen, you're going to hear some evidence here that concerns Defendant's commission of another offense or offenses of sexual assault where a child molestation that may be considered by you as evidence of Defendant's intent. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the second superseding indictment. Bear in mind as you consider this evidence at all times that the Government has the burden of proving the Defendant committed each of the elements of the offense charged in the Second Superseding Indictment. I remind you the defendant is not on trial for any act, conduct, or offense not charged in the Second Superseding Indictment.

March 4 Tr. 155.

### STANDARD OF REVIEW

Courtright's trial attorney did not object to the aforementioned limiting instruction. Moreover, the trial court invited defense counsel to submit his own limiting instruction. March 2 Tr. 28, Appendix C. His failure to do so is significant here. Rule 30 of the Federal Rules of Criminal Procedure requires that a party "must inform the court of the specific objection [to jury instructions] and the grounds for the objection before the jury retires to deliberate. . . . Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)." Fed R. Crim P. 30. Rule 52(b) allows "[a] plain error that affects substantial rights" to be considered on appeal. Fed R. Crim. P. 52. Where no objection is stated in the trial court, the issue is waived and the alleged error is reviewed under a plain error standard. *United States v. Jones*, 224 F.3d 621, 626 n.3 (7th Cir. 2000), citing *United States v. Olano*, 507 U.S. 725, 732 (1993).

### ANALYSIS

**A.    Courtright is *accused* of an offense of sexual assault in the case at bar, and thus the language of the limiting jury instructions was not erroneous.**

Courtright first argues that the instruction given above improperly informed the jury that this

33

case was one of sexual assault.  App.Br. 27. As explained in Argument's III and IV above, it was.

Federal Rule of Evidence 413 uses the word "accused."  It requires that the defendant be accused of

sexual assault and he was. Again, the fact that it was uncharged is irrelevant under a plain reading

of the statute.

A similar limiting instruction was given in *United States v. Hollow Horn*, 523 F. 3d 882, 889

(8th Cir. 2008), and the Eighth Circuit found that it was successful in limiting any prejudice that may

have come from the prior bad acts evidence.  Any limiting instruction given based on Rule 413 will

necessarily reference an act of sexual assault because that is what Rule 413 is about.

Courtright next argues that the jury instructions improperly stated that the prior "offense or

offenses" involved "sexual assault **or child molestation"** when it could not possibly have involved

child molestation according to the definition of "child" under Rule 414.  Rule 414 defines a child

as someone "under fourteen" years old.  App.Br. 26.  Because L. Miller was at least fourteen at the

time of the prior offense, he argues, the prior offense was not child molestation.  App.Br. 27-28.

The Government concedes that the prior offense was not child molestation under Rule 414,

but the limiting instructions the court gave did not say or even imply that the prior offense was child

molestation.  The instructions were general, and stated that the prior offense involved "sexual assault

**or** child molestation."  While the words "child molestation" were part of the limiting instructions,

the limiting instructions explicitly stated that the prior offense involved *either* sexual assault *or* child

molestation, not both, and not just child molestation.  In this case, the prior offense involved sexual

assault.  The jury then heard L. Miller's testimony, in which she says outright that she was fourteen

or fifteen at the time.  March 4 Tr. 157.  Therefore, L. Miller's age was no mystery to the jury.

34

Courtright believes that the wording of the instruction implied that "every viewer of child pornography is a child molester and vice versa." This is not at all what the Court said, and it is not reasonable to assume that this is what the jury took away from those words.

The limiting instruction given in this case was properly based on Federal Rule of Evidence 413. Accordingly, the limiting instruction was proper, it was uncontested, and it did not negatively affect the case.

**VI. The Limiting Instruction given with Regard to the L. Miller Evidence at the End of the Case was Proper.**

**INTRODUCTION**

Courtright alleges that the final limiting instruction regarding the 413 evidence was improper. App.Br. 28-30. Merely because the instruction was crafted by altering a version found in case law, Courtright argues that it could not possibly be proper. App.Br. 29.

The following instruction was given to the jury at the end of the evidence in this case:

> Evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation may be considered by you as evidence of the defendant's intent.
> However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the Second Superseding Indictment. Bear in mind as you consider this evidence at all times, the government has the burden of proving that the defendant committed each of the elements of the offenses charged in the Second Superseding Indictment. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the Second Superseding Indictment.

R. 102.

**STANDARD OF REVIEW**

Contrary to Courtright's assertion on page 28 of his brief that defense counsel objected to the

limiting jury instruction, he did not.  App.Br. 28. He also did not offer an alternative instruction as the trial court had invited.  Accordingly, this claim must be reviewed under a plain error standard. *United States v. Breland*, 356 F.3d 787 (7th Cir. 2004).

**ANALYSIS**

The instruction given in this case was based on Federal Rule of Evidence 413, 414, and *United States v. Benally,* 500 F.3d 1085, 1088 (10th Cir. 2007).  The instruction given in *Benally* was as follows:

> In a criminal case in which the defendant is accused of an offense of sexual assault or child molestation, evidence of the defendant's commission of another offense or offenses of sexual assault or child molestation is admissible and may be considered for its bearing on any matter to which it is relevant. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime charged in the indictment. Bear in mind as you consider this evidence, at all times the government has the burden of proving that the defendant committed each of the elements of the offense charged in the indictment. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the indictment.

*Id.*

**A.    Contrary to Courtright's argument, the final jury instructions were developed from case law and were in fact modified in his favor, so as to eliminate any possibility of prejudicial effect.**

Courtright concedes that the instructions in the case at bar were taken from a similar– albeit not perfectly parallel– case, and were subsequently amended for use in the case at bar.  However, he argues that the change from the *Benally* instructions to those used in this case– which Appellant would presumably agree was a change in his favor– was "an afterthought." App.Br. 29.  It is unclear from his brief what he means by this comment. The prosecution deliberately changed the *Benally*

36

instructions, which would have allowed the jury to consider the prior offense evidence "for its bearing on any matter to which it is relevant," to only allow the jury to consider such prior offense evidence "as evidence of defendant's intent," a much narrower consideration. In doing so, the prosecution sought to avoid any accusations of overly broad instructions and to ensure that the jury considered the prior offenses on a narrow basis.

**B.      The final jury instructions necessarily had to involve an amalgam of case law involving Rules 413 and 414, as no pattern jury instructions exist.**

Courtright argues that the final instructions given the jury were a "strange hybrid" of proper instructions for Rules 413, 414, and 404(b). Presumably, he would have preferred pattern jury instructions or instructions drawn directly from a factually identical case. Unfortunately, neither of those options were available. There are no pattern jury instructions for instructing the jury on Federal Rules of Evidence 413, 414, and there is no case law that directly addressed the needs of the case at bar. Consequently, the prosecutor carefully crafted the jury instruction from the case law that did exist (namely *Benally*) and the 404(b) pattern instruction, and tailored it to the specific needs of the case at bar, limiting it in favor of the defendant to ensure that the jury's consideration would not be overly broad or prejudicial.

Furthermore, the instruction was adamant in reiterating that the government had "the burden of proving the [d]efendant committed each of the elements of the offense charged in the Second Superseding Indictment." R. 102 (emphasis added). Thus, the instruction was clear about the capacity in which the prior offense could be considered by the jury (limited to "evidence of defendant's intent") and also about the importance of remembering that the government must prove all elements of the current offense, regardless of the prior offense evidence considered. Again, if the

37

instruction is in error, it is only because it limits the jury's potential consideration of the evidence too much. Rule 413 would allow the jury to consider the evidence for any purpose for which it was relevant. It was limited in this case to be considered for evidence of the defendant's intent. The defendant benefitted from this, and can hardly show that it caused him prejudice in the case. Accordingly, this claim must fail.

### VII. The 413 Jury Instruction did not Inflate the Impact of the Prior Bad Acts Evidence.

As stated above, the jury instruction quoted above limited the consideration of the evidence. Courtright's interpretation of the line: "however, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the Second Superseding Indictment" as "inflat[ing] the value of the evidence" is incorrect. This line is taken directly from the case law. *United States v. Benally,* 500 F.3d 1085, 1088 (10th Cir. 2007). It was followed by, "Bear in mind as you consider this evidence, at all times the government has the burden of proving that the defendant committed each of the elements of the offense charged in the indictment. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the indictment." As stated above, it was not error at all, and certainly does not rise to the level of plain error.

### VIII. There was no Cumulative Error in this Case that Denied Courtright a Fair Trial.

Because Courtright failed to show that any of the issues addressed above caused harm in the trial, there was no cumulative prejudicial effect from them. Courtright's eight claims in this brief boil down to alleged instructional error and error in admitting L. Miller's testimony.

Although the court did commit one small error in the initial instructions, it was corrected and was harmless. There was no other error in the trial. The rest of the jury instructions were properly

given. L. Miller's testimony was properly admitted under Federal Rule of Evidence 413 and 404(b). Moreover, regardless of whether or not she testified in the case, the jury was going to know that the defendant had a prior sex offense because the fact that he was a registered sex offender was found to be irrefutably relevant.

There is no evidence of any prejudicial error in this case. The evidence against Courtright at trial was overwhelming. S.J.'s testimony was compelling, credible, profound and corroborated by the evidence. The forensic evidence found on the computers was incontrovertible. Courtright confessed in his admitted videotaped interview that he was interested in child pornography. Even if Courtright had gotten everything the way he now says he wanted, his trial would have had the same result. Courtright had a fair trial and this case should be affirmed on appeal.

## CONCLUSION

For the foregoing reasons, the United States prays that the sentence be affirmed.

Respectfully submitted,

A. COURTNEY COX
United States Attorney


NICOLE E. GOROVSKY
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,

## TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,133 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect X3, Program Release 13.0.0.565, in 12-point Times New Roman font.

Respectfully Submitted,

A. COURTNEY COX
United States Attorney


NICOLE E. GOROVSKY
Assistant United States Attorney
Nine Executive Drive
Fairview Heights IL 62208
(618) 628-3700

## APPENDIX CERTIFICATION

I certify that all of the materials required by Circuit Rules 30(a) and 30(b) are included in the following appendix.

Respectfully submitted,

A. COURTNEY COX
United States Attorney

NICOLE E. GOROVSKY
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700

## CIRCUIT RULE 31(e) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 31(e), versions of the brief and all of the appendix items that are available in non-scanned PDF format.

Respectfully submitted,

A. COURTNEY COX
United States Attorney


NICOLE E. GOROVSKY
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700

42

IN THE

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

NO. 09-2880

*UNITED STATES OF AMERICA,*

**Plaintiff-Appellee,**

vs.

*CARL A. COURTRIGHT, III,*

**Defendant-Appellant.**

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

HONORABLE DAVID R. HERNDON, JUDGE PRESIDING

DISTRICT COURT NO. 07-30179-DRH-DGW

**APPENDIX OF PLAINTIFF-APPELLEE**

**UNITED STATES OF AMERICA**

**A. COURTNEY COX**
**United States Attorney**

**NICOLE E. GOROVSKY**
**Assistant United States Attorney**
**Southern District of Illinois**
**Nine Executive Drive**
**Fairview Heights, IL 62208**
**(618) 628-3700**

**APPENDIX**
**TABLE OF CONTENTS**

**Description**                                                    **Appendix Numbers**

March 3 Transcript, pages 6 through 16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1-A11

March 4 Transcript, pages 4 through 10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B1-B7

March 2 Transcript, pages 2 through 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1-C28

1          You will note that we do have an official court

2     reporter making a record of the trial; however, we will not

3     have typewritten transcripts of this record available for

4     your use in reaching a decision in this case.

5          It will be up to you to decide which witnesses to

6     believe, which witnesses not to believe, and how much of any

7     witness's testimony to accept or reject.  In deciding what

8     testimony to believe, consider the witness's intelligence,

9     their opportunity to have seen or heard the things they

10    testify about, their memories, any motives they may have for

11    testifying a certain way, their manner while testifying,

12    whether they said something different at an earlier time,

13    the general reasonableness of their testimony, and the

14    extent to which their testimony is consistent with other

15    evidence that you believe.

16         The defendant is charged with five separate counts.

17         In Count 1 of the indictment, the defendant,

18    Carl A. Courtright III, is charged with production of child

19    pornography, in violation of Title 18, United States Code,

20    Section 2251(a), occurring on or between January 1, 2007 and

21    August 9, 2007, after a prior qualifying conviction, all in

22    further violation of Title 18, United States Code, Sections

23    2260(A) and 3559(e)(1).

24         I will give you detailed instructions on the law at

25    the end of the case and those instructions will control your

**Appendix A**
**1**

1   deliberations and decision, but in order to help you follow

2   the evidence I will now give you a brief summary of the

3   elements of the offense which the Government must prove to

4   make its case regarding the charge in Count 1.

5         As to the production of child pornography charged

6   in Count 1, the Government must prove the following

7   propositions beyond a reasonable doubt as to the defendant:

8         First, the defendant employed, used, persuaded,

9         induced, enticed or coerced a minor to engage in

10        sexually explicit conduct for the purpose of

11        producing a visual depiction of such conduct;

12        Second, the defendant knew or had reason to know

13        that such visual depiction would be transported in

14        interstate or foreign commerce or was produced using

15        materials that had been mailed, shipped, or

16        transported in interstate commerce, including but not

17        limited to a computer;

18        Third, the defendant was at the time required by

19        federal or other law to register as a sex offender;

20        and

21        Fourth, the defendant had been previously

22        convicted of a sex offense in which a minor was the

23        victim.

24        In Count 2 of the indictment, the defendant,

25   Carl A. Courtright III, is charged with possession of child

**Appendix A**

**2**

1   pornography, in violation of Title 18, United States Code,

2   Section 2252(a)(4)(b), occurring on or between January 7,

3   2007 and August 9, 2007, after a prior qualifying

4   conviction, all in further violation of Title 18, United

5   States Code, Section 2252(b)(2).

6          In Count 3 of the indictment, the defendant,

7   Carl A. Courtright III, is charged with the possession of

8   child pornography, in violation of Title 18, United States

9   Code, Section 2252(a)(4)(b), occurring on or between

10  January 7, 2007 and August 9, 2007, after a prior qualifying

11  conviction, all in further violation of Title 18, United

12  States Code, Section 2252(b)(2).

13         I will give you detailed instructions on the law at

14  the end of the case and those instructions will control your

15  deliberations and decision, but in order to help you follow

16  the evidence I will now give you a brief description of the

17  elements of the offense which the Government must prove to

18  make its case regarding the charges in Counts 2 and 3.

19         As to the possession of child pornography charge in

20  Counts 2 and 3, the Government must prove the following

21  propositions beyond a reasonable doubt as to the defendant:

22         First, the defendant knowingly possessed an item

23     or items of child pornography;

24         Second, that such items of child pornography had

25     been mailed, shipped, or transported in interstate or

1  foreign commerce, including by computer, as charged,

2  or were produced using materials that had been

3  mailed, shipped, or transported in interstate or

4  foreign commerce;

5  Third, that at the time of such possession the

6  defendant believed that such items constituted or

7  contained child pornography as hereafter defined;

8  Fourth, the defendant had a prior conviction

9  under the laws of any state relating to aggravated

10  sexual abuse, sexual abuse, or abusive sexual conduct

11  involving a minor or ward, or the production,

12  possession, receipt, mailing, sale, distribution,

13  shipment, or transportation of child pornography.

14  In Count 4 of the indictment, the defendant,

15  Carl A. Courtright III, is charged with the receipt of child

16  pornography from on or about March 15, 2007, in violation of

17  Title 18, United States Code, Section 2252(a)(2).

18  I will give you detailed instructions on the law at

19  the end of the case and those instructions will control your

20  deliberations and decision, but in order to help you follow

21  the evidence, I will now give you a brief description of the

22  elements of the offense which the Government must prove to

23  make its case regarding the charge in Count 4.

24  As to the receipt of child pornography charge in

25  Count 4, the Government must prove the following

1    propositions beyond a reasonable doubt as to the defendant:

2        First, the defendant knowingly received visual

3    depictions of a minor engaging in sexually explicit

4    conduct, the visual depictions including, but not

5    limited to, the computer files and file paths as

6    charged in the indictment;

7        Second, the visual depictions had been mailed,

8    shipped or transported in interstate or foreign

9    commerce by means including by computer or were

10   produced using materials that had been mailed,

11   shipped or transported in interstate or foreign

12   commerce.

13       In Count 5 of the indictment, the defendant,

14   Carl A. Courtright III, is charged with bank fraud, from on

15   or about February 21, 2007, and ending on or about March 30,

16   2007, in violation of Title 18, United States Code,

17   Section 1344.

18       I will give you detailed instructions on the law at

19   the end of the case and those instructions will control your

20   deliberations and decision, but in order to help you follow

21   the evidence, I will now give you a brief description of the

22   elements of the offense which the Government must prove to

23   make its case regarding the charge in Count 5.

24       As to the bank fraud charge in Count 5, the

25   Government must prove the following propositions beyond a

**Appendix A**

**5**

1  reasonable doubt as to the defendant:

2          First, there was a scheme to defraud a bank by

3      means of false or fraudulent pretenses,

4      representations, or promises as charged in the

5      indictment;

6          Second, that the defendant executed the scheme;

7          Third, that the defendant did so knowingly and

8      with the intent to defraud; and

9          Fourth, that at the time of the charged offense

10     the deposits of the bank were insured by the Federal

11     Deposit Insurance Corporation ("FDIC").

12         During the course of the trial do not talk with any

13  witness or with the defendant or with any of the lawyers in

14  the case.  Please do not talk with them about any subject at

15  all.  You may be unaware of the identity of everyone

16  connected with the case; therefore, to avoid even the

17  appearance of impropriety, do not engage in any conversation

18  with anyone in or about the courtroom or courthouse.

19         In addition, during the course of the trial do not

20  talk about the trial with anyone else, not your family, not

21  your friends, not the people with whom you work.  Also, do

22  not discuss this case among yourselves until I have

23  instructed you on the law and you have gone to the jury room

24  to make your decision at the end of the trial.  Otherwise,

25  without realizing it, you may start forming opinions before

1   the trial is over.  It is important that you wait until all

2   the evidence is received and you have heard my instructions

3   on rules of law before you deliberate among yourselves.

4         Let me add that during the course of the trial you

5   will receive all the evidence you properly may consider to

6   decide the case.  Because of this, do not attempt to gather

7   any information on your own which you think might be

8   helpful.  Do not engage in any outside reading on this case,

9   do not attempt to visit any places mentioned in the case,

10  and do not in any other way try to learn about the case

11  outside the courtroom.

12        Now that the trial has begun you must not read

13  about it in the newspapers or watch or listen to television

14  or radio reports of what is happening here.  The reasons for

15  these rules, as I'm certain you will understand, is that

16  your decision in this case must be made solely on the

17  evidence presented at the trial.  At times during the trial

18  a lawyer may make an objection to a question asked by

19  another lawyer or to an answer by a witness.  This simply

20  means that the lawyer is requesting that I make a decision

21  on a particular rule of law.  Do not draw any conclusions

22  from such objection or from my rulings on the objections.

23  These relate only to the legal questions that I must

24  determine and should not influence your thinking.  If I

25  sustain an objection to a question, the witness may not

1    answer it.  Do not attempt to guess what answer might have

2    been given had I allowed the question to be answered.

3    Similarly, if I tell you not to consider a particular

4    statement, you should put that statement out of your mind,

5    and you may not refer to that statement in your later

6    deliberations.  If an objection is overruled, treat the

7    answer like any other.

8           During the course of the trial I may ask a question

9    of a witness.  If I do, that does not indicate I have any

10   opinion about the facts in the case.  Nothing I say or do

11   should lead you to believe that I have any opinion about the

12   facts nor be taken as indicating what your verdict should

13   be.

14          During the trial I may have to interrupt the

15   proceedings to confer with the attorneys about the rules of

16   law which should apply here.  Sometimes we will talk here at

17   the bench.  On occasion I may feel it necessary to excuse

18   you from the courtroom.  I will try to avoid such

19   interruptions as much as possible and will try to keep them

20   short, but please be patient even if the trial seems to be

21   moving slowly.  Conferences outside your presence are

22   sometimes unavoidable.

23          Finally, there are three basic rules about a

24   criminal case which you should keep in mind:

25              First, the defendant is presumed innocent until

1    proven guilty.  The indictment against the defendant

2    brought by the Government is only an accusation,

3    nothing more.  It is not proof of guilt or anything

4    else.  The defendant, therefore, starts out with a

5    clean slate.

6        Second, the burden of proof is on the Government

7    until the very end of the case.  The defendant has no

8    burden to prove his innocence or to present any

9    evidence or to testify.  Since the defendant has the

10   right to remain silent, the law prohibits you in

11   arriving at your verdict from considering that the

12   defendant may not have testified.

13       Third, the Government must prove the defendant's

14   guilt beyond a reasonable doubt.  Bear in mind that

15   in this respect a criminal case is different from a

16   civil says.

17       Ladies and gentlemen, thank you for your attention.

18   We will now turn to the prosecution for its opening

19   statement.

20       *MS. GOROVSKY:*  And Your Honor, I sincerely

21   apologize, but I'm already going to ask for a quick bench

22   conference.

23                    *    *    *    *

24   *(Discussion held at sidebar:)*

25       *MS. GOROVSKY:*  I apologize for not noticing this

1  earlier, but I thought I had read case law -- and I'm

2  speaking from the top of my head -- that we don't prove

3  these things up to the jury, the prior and the sex offender

4  registry.  I'm prepared to, but actually, his criminal prior

5  wasn't -- it actually makes him look worse if you see what

6  the charges were before they were amended.  I can and I was

7  going to do that with my first witness, so --

8          MR. ROSANSWANK:  Do what with your first witness?

9          THE COURT:  Mr. Rosanswank asked what she was going

10  to do with the first witness.  I don't know.  I was, quite

11  frankly, depending on -- makes sense to me.  I've never seen

12  a case where you have to prove up the prior by prior

13  criminal history to the jury.  I thought that was a matter

14  for the Court.  So --

15          MS. GOROVSKY:  When Susan talked to me yesterday

16  she told me she pulled the elements out of mine so I

17  didn't -- I apologize.  I didn't read this this morning

18  because I assumed it was directly out of mine, but it's not.

19          MR. ROSANSWANK:  Judge, in this particular case

20  wouldn't that be an Apprende issue or really no different

21  than felon in possession?

22          THE COURT:  Even on Apprende, past criminal history

23  is a matter for the Court, not for the jury.

24          LAW CLERK:  You said that was okay except --

25          MS. GOROVSKY:  Except Counts 2 and 3 also have it

**Appendix A**
**10**

1 | in there.

2 |       *MR. SILVER:* I didn't think it was in Count 4.

3 |       *THE COURT:* We can go back -- tell the jury those

4 | are not elements right now if you'd like.

5 |       *LAW CLERK:* I apologize.

6 |       *MS. GOROVSKY:* I'm not a hundred percent sure,

7 | Your Honor. I'd have to go do the research. I'm pretty

8 | sure I read a case that said you don't. I would prefer

9 | leaving it as it is, and we'll have to -- I mean this is a

10 | business record. I could put it in at any time, I suppose.

11 |       *THE COURT:* Why don't you have somebody research it

12 | at your office real quick so you can figure out if you've

13 | got to prove it. We can always tell the jury that, you

14 | know, that was in error and you're not required to prove it.

15 |       *MS. GOROVSKY:* Do you want me to do that before my

16 | opening or do you want me to send somebody while I'm doing

17 | my opening?

18 |       *THE COURT:* Send somebody while you're doing your

19 | opening.

20 |     **(End of discussion at sidebar)**

21 |           *  *  *  *

22 |       *MS. GOROVSKY:* Good morning, everyone. May it

23 | please the Court, Mr. Rosanswank, ladies and gentlemen of

24 | the jury.

25 |       Please picture this: A 14-year-old girl sits naked

**Appendix A**
**11**

1    *(Court convened)*

2    *(Jury out)*

3        *THE COURT:* Let's go on the record and talk about

4    that issue, the preliminary instruction.  Mr. Rosanswank,

5    have you had a chance to look at that case?

6        *MR. ROSANSWANK:* Yes, I did, Judge.  It certainly

7    seems to be on point.  I'm not aware of any other case law

8    and I'm not sure there is any other case law to offer.  I

9    would I guess formally object, although I understand the

10   ruling in Apprende and its progeny regarding the fact of the

11   prior conviction.  Nevertheless, I'll object to the -- I

12   would like to have the jury find that fact.  I understand

13   what the Court's ruling would be, but I would object

14   formally, but I do believe it is correct that the issue of

15   whether the prior conviction is a sex offense is a matter

16   that the jury must consider.

17       *THE COURT:* Is a matter the jury would not consider

18   you mean?

19       *MR. ROSANSWANK:* I'm sorry?

20       *THE COURT:* Whether or not he has a prior

21   conviction is a matter that the jury would not be required

22   to find?

23       *MR. ROSANSWANK:* I understand that that would be

24   the Court's ruling based on this case, yes, Judge.

25       *THE COURT:* Okay.  So the proper -- we're talking

**Appendix B**
**1**

1    about the preliminary instruction that the Court gave with

2    respect to Count 1, as I recall.  That's the only place

3    where we instructed, so really the --

4           LAW CLERK:  It might be two and three if we're

5    talking about the 3559.

6           MS. GOROVSKY:  3559 should only relate to Count 1.

7           LAW CLERK:  As far as Counts 2 and 3, I'm not sure.

8           MS. GOROVSKY:  That would be 2260(a).  Actually, I

9    think -- I don't think there's -- the prior conviction part

10   and the possession and receipt counts are only part of the

11   statute just like a normal -- you know, if you have a prior,

12   your sentenced is raised to this.  It's also not an element.

13          LAW CLERK:  So that should be corrected as well.

14          MS. GOROVSKY:  Sure.

15          THE COURT:  All right.  Well, what I would suggest

16   is that the Government tender a proposed new elements

17   instruction, that we then correct that with the jury before

18   we --

19          MS. GOROVSKY:  Your Honor, the --

20          THE COURT:  -- finish the Government's case in

21   chief.

22          MS. GOROVSKY:  I apologize, Your Honor.  That would

23   be in the jury instructions that we already submitted to the

24   Court.

25          THE COURT:  Well, for two and three, for example, I

1   think we -- I think I used your instruction, and it includes

2   prior conviction.

3           MS. GOROVSKY:  Couldn't have, Your Honor.

4           LAW CLERK:  It didn't include it, but we used those

5   for the second and third elements, but I left the fourth one

6   in that had the prior conviction, Judge.

7           THE COURT:  Okay.  So -- all right.  So we'll --

8           LAW CLERK:  Other than the fourth element, it was

9   the same.

10          THE COURT:  So you used theirs, except you included

11  a fourth?

12          LAW CLERK:  I'll explain later.

13          THE COURT:  All right.  So we'll -- let me take a

14  look at those and then we'll reinstruct the jury.  Glenn, is

15  the jury here?

16          COURT SECURITY OFFICER:  Yes, Judge.

17          THE COURT:  Let me see the Government's

18  instructions.

19      *(Off the record)*

20                      *   *   *   *

21          THE COURT:  With respect to the -- on Count 1, the

22  issue with respect to his registry as a sex offender, I

23  believe at the end of the day you conceded that should be an

24  element of the offense.

25          MS. GOROVSKY:  No, Your Honor.  I think what we

1  said was, under 3559, that *Johnson* case explicitly says that

2  we don't have to prove it as an element.  The issue was

3  Mr. Silver said that 2260(A), which is the Adam Walsh Act,

4  part which adds on the consecutive 10 years, which is sort

5  of academic because if we prove -- if he gets convicted of

6  production, he's getting mandatory life, so the consecutive

7  10 years is academic.  But he said that the Solicitor

8  General recommended that we prove that he's required to

9  register as a sex offender, Your Honor.  So for 3559, we're

10  not, but even this is academic because we already have put

11  in a sex offender registry, but it's not an element.  Is

12  that making any sense, Your Honor?

13       *THE COURT:*  Except for part where you said that the

14  *Johnson* case holds specifically you don't have to prove

15  that.  *Johnson* case doesn't --

16       *MR. SILVER:*  The *Johnson* case concerns 3559(a), and

17  the last page of that case essentially states that the fact

18  of a prior conviction need not be found by a jury beyond a

19  reasonable doubt.

20       *THE COURT:*  Right.  Has nothing to do with sex

21  offender registration.

22       *MR. SILVER:*  I'm sorry, Your Honor?

23       *THE COURT:*  That has nothing to do with sex

24  offender registration.

25       *MR. SILVER:*  Correct.  It does not speak to the

**Appendix B**
**4**

1    enhancement that we -- which is not part of the offense as

2    much as it is an enhancement that depends on certain factual

3    issues which we do believe we should present to the jury.

4         *MS. GOROVSKY:*  Maybe I'm not being that clear.  The

5    3559(a) would be the part where I would have to put in his

6    prior conviction in order to get the enhancement.  But this

7    case says that we don't have to do that because that's for

8    the Court.  The 2260(A), which is the Adam Walsh Act, which

9    adds on the 10 years, that part says I have to show he's a

10   registered sex offender.  That's never been addressed in the

11   Seventh Circuit, Your Honor, and so Mr. Silver was just

12   saying the Solicitor General recommended that we do it.

13        *THE COURT:*  Which you've already done.

14        *MS. GOROVSKY:*  Which we've already done, correct.

15   I don't see that it's an element though of the offense.

16        *THE COURT:*  Okay.

17        *MS. GOROVSKY:*  And so Your Honor, we intend to not

18   put in his prior conviction.

19        *THE COURT:*  Right.  Okay, Glenn.  Go ahead and

20   bring the jury in.

21        **(Jury in)**

22        *THE COURT:*  Ladies and gentlemen, I started this

23   trial out by making a couple of mistakes.  When I read to

24   you the elements of what the Government would be required to

25   prove, I suggested something that would require them to

**Appendix B**

**5**

1    prove more than they actually are required to prove, so I'm

2    going to read to you elements of the offense that are

3    actually less of a requirement than what I read to you

4    yesterday morning.

5          So with respect to Count 1 of the Second

6    Superseding Indictment, this is what the Government will be

7    required to prove beyond a reasonable doubt:

8              First, that in or about the time period alleged

9          in the Second Superseding Indictment, SJ was under

10         the age of 18;

11             Second, the Defendant used, persuaded, induced,

12         enticed, or coerced SJ to engage in sexually explicit

13         conduct;

14             Third, the Defendant voluntarily and

15         intentionally did this for the purpose of causing the

16         production of a visual depiction of such conduct;

17             Fourth, the Defendant knew or had reason to know

18         that such visual depiction would be transported in

19         interstate or foreign commerce, or the materials used

20         to produce the visual depictions were mailed,

21         shipped, or transported in interstate and/or foreign

22         commerce.

23             Then with respect to Counts 2 and 3, the elements

24    are, first -- the Government would be required to prove

25    these beyond a reasonable doubt:

 1            First, on or about January 7, 2007, and

 2       August 9, 2007, the Defendant knowingly possessed an

 3       item or items of child pornography.  The images

 4       included but are not limited to files and file paths

 5       named in the Second Superseding Indictment;

 6            Second, that such items of child pornography had

 7       been transported, shipped, or mailed in interstate or

 8       foreign commerce, including by computer, as charged,

 9       or were produced using materials that had been

10       mailed, shipped, or transported in interstate

11       commerce; and

12            Third, that at the time of such possession the

13       Defendant believed that such items constituted or

14       contained child pornography as hereinafter defined.

15       And that definition will be contained in the final

16   instructions you'll receive at the end of the case.  So

17   apologize for that mix-up.

18            Call your next witness, please.

19       *MS. GOROVSKY:*  Your Honor, the United States calls

20   James Hathaway.

21       **JAMES HATHAWAY, GOVERNMENT'S WITNESS, SWORN**

22                  **DIRECT EXAMINATION**

23            **QUESTIONS BY MS. GOROVSKY:**

24   *Q.*  Good morning, Mr. Hathaway.

25   *A.*  Good morning.


                Direct Exam. of James Hathaway

1    *(Court convened)*

2         *THE COURT:*  This is case of *United States of*

3    *America vs. Carl A. Courtright III*, 07-30179.  The

4    Government is represented in this matter by two counsel,

5    Assistant United States Attorney Nicole Gorovsky and trial

6    attorney from the Department of Justice, James Silver.  Good

7    morning, Counsel.

8         *MS. GOROVSKY:*  Good morning, Your Honor.

9         *MR. SILVER:*  Good morning, Your Honor.

10         *THE COURT:*  The defendant is present in court this

11    morning.  He is represented in this case by

12    Jeffrey Rosanswank.  Good morning, gentlemen.

13         *MR. ROSANSWANK:*  Good morning, Your Honor.

14         *THE COURT:*  Together with Mr. Rosanswank at counsel

15    table is a member of his office staff.  If I recall, he

16    introduced his wife, who serves a dual role as his able

17    paralegal, Tina Rosanswank.  So she'll be assisting him

18    throughout the trial and may certainly sit at counsel table

19    with him for that purpose.

20         There are a number of pretrial matters that we have

21    to take up before we can bring our sizeable venir panel up.

22    We have 53 venirmen waiting in the wings for inquiry in this

23    case.

24         I believe it's Doc. 65 is a motion by the

25    government for the introduction of prior evidence of sex

**Appendix C**
**1**

1    offenses.  Get the official title:  Government's Notice of

2    Intent to Introduce Other Acts Evidence.  The defendant, of

3    course, has filed an objection to that.  Government's

4    authority for this evidence is in the alternative Federal

5    Rules of Evidence 414, 413, 404(b), and for extra measure

6    they throw in inextricably intertwined, which would, if the

7    Court found on that basis, simply trump all of those in my

8    estimation.

9        Who's going to argue this on behalf of the

10   government?  Mr. Silver, you're going to argue it?

11       *MR. SILVER:*  Yes, Your Honor.

12       *THE COURT:*  If you would come to the podium, I'd

13   appreciate it, sir.

14       The initial question I've got:  If you look at 413

15   and 414, these specifically talk about sexual molestation

16   cases, sexual assault cases, and give a special evidentiary

17   rule in those cases which simply I guess kind of overrule

18   the rules of evidence, simply say that the prior evidence is

19   simply relevant unless the Court -- I think the case law

20   says unless the Court finds it just so prejudicial that 403

21   kicks in and trumps it in that regard.

22       I guess before I do that, let me go back to my

23   earlier comment, which is, if it's inextricably intertwined,

24   then all of this is academic and it's just part of the case.

25   And so is it -- given the range of time, four to nine years

**Appendix C**

**2**

1  prior to the alleged conduct, can it really be inextricably

2  intertwined?

3      MR. SILVER:  Your Honor, I will not press that

4  argument too hard.  I think that the other arguments are

5  more spot on.

6      THE COURT:  So then going back to 413 and 414 --

7  Ms. Gorovsky wants you to press that one a little harder.

8      MR. SILVER:  The sex offender registry is closer in

9  date and I think more inextricably intertwined with the

10 facts of this case than the other items of evidence that

11 have been discussed in this particular pleading.

12     MS. GOROVSKY:  Your Honor, the fact that he is a

13 registered sex offender is inextricably intertwined in this

14 case.

15     THE COURT:  Okay.  My mind is racing back to your

16 motion trying to recall how exactly that plays in the case.

17 Tell me more about that issue.

18     MR. SILVER:  There's an Item D, defendant's status

19 as a registered sex offender at the time of the charged

20 offense.  And when we discuss the origin of this case we

21 necessarily get into a discussion of the defendant's status

22 as a registered sex offender and the Illinois Attorney

23 General's investigation of the social networking site called

24 MySpace in order to determine whether there were registered

25 sex offenders maintaining profiles on that website, and that

**Appendix C**

**3**

1   investigation gives rise to this case.  The jury will likely

2   be confused if that information -- and I'm talking about the

3   status as a registered sex offender -- is excluded.  It will

4   take away from the narrative of the case.

5           *MS. GOROVSKY:*  If I can go into that a little bit

6   further, Your Honor.  It's also a huge part of his

7   interview, which we do intend to play in this case, the part

8   of -- the fact that he was a registered sex offender, and it

9   also relates to this second house that he had.  He lived

10  with his parents at the Century Drive home in Granite City,

11  but he had a second house at Madison Avenue where the victim

12  and her father were living in the garage.  And the fact of

13  the matter was he technically wasn't allowed to live at the

14  Madison Avenue house because he was a registered sex

15  offender, so his name was not on it, Your Honor, and that's

16  why he was technically living with his parents.  However, he

17  was often at that home and I think it's a strong

18  possibility, and also throughout the defendant's interview,

19  that he may claim that he wasn't even allowed to be at that

20  house and so he wasn't even there.  Your Honor, the fact of

21  the matter is, he says he wasn't allowed to be at that house

22  because he was a registered sex offender but he was often at

23  that home.

24          *THE COURT:*  You're going to present evidence that

25  he was there?

**Appendix C**

**4**

1          MS. GOROVSKY:  Yes, Your Honor.

2          THE COURT:  Okay.  So as to that -- you're

3    considering this registration as a sex offender as a prior

4    act?

5          MS. GOROVSKY:  It's just something we felt needed

6    to be listed, Your Honor, because it's something that it's

7    worthy of.  It's not necessarily a prior bad act, but it

8    is -- I think it does sort of fit under the purview of these

9    issues.

10         THE COURT:  Okay.  And then as to the balance -- so

11   my concern is with respect to 414 and 413.  You list them in

12   that order specifically.  The statute does talk in terms of

13   sexually explicit conduct.  You do allege that in Count 1,

14   but this case is about production of child pornography and

15   possession of child pornography.  Is this really a child

16   assault or a child molestation case such that it would

17   trigger either one of those rules?

18         MR. SILVER:  Well, Your Honor, the facts that the

19   government intends to introduce with regard to Count 1

20   involve both the defendant's posing of this girl in a

21   particular posture which we believe would comprise

22   lascivious exhibition of genetalia, which is covered under

23   the federal definition of child pornography, as well as the

24   production of child pornography, the ensuing capturing of

25   that image, that moment in time with the girl in that

**Appendix C**
**5**

1  position.

2       So with regard to Rule 414, the rule invokes

3  certain chapters in Title 18, and those chapters are those

4  that include the child pornography offenses, including

5  production.  So with regard to Count 1, production of child

6  pornography, I think that four -- I think that four --

7  pardon me, Your Honor.  And then let me refer to my

8  memorandum here.

9       THE COURT:  So show me -- so any conduct proscribed

10  in -- so it says a crime under federal law or law of the

11  state, any conduct proscribed by Chapter 109(a) of Title 18

12  that was committed in relation to a child.

13       MR. SILVER:  Rule 414 is the rule that we would

14  offer the introduction of child pornography evidence.

15       With regard to his contact with this girl, SJ, I

16  refer Your Honor to Section C of the government's motion,

17  which I think is the best discussion of this particular item

18  of evidence that Your Honor was asking about.  This is

19  discussing Rule 413, which states:

20       *In a criminal case in which the defendant is*

21       *accused of an offense of sexual assault, evidence of*

22       *the defendant's commission of another offense or*

23       *offenses of sexual assault are admissible and may be*

24       *considered for its bearing on any matter to which it*

25       *is relevant.  The offense of sexual assault is*

**Appendix C**
**6**

1              *defined as including a crime that involved contact*

2              *without consent between a part of a defendant's body*

3              *or an object and the genitals of another person.*

4        And then I get into the details of this situation

5   where the defendant was posing this girl.  There is other

6   conduct that is similar to what we were discussing, but I

7   think that Rule 413 is the rule I wanted to discuss in

8   connection with Count 1.

9        *THE COURT:*  So you're saying that because you have

10  evidence that he had contact without consent between any

11  part of the defendant's body or an object and the genitals

12  of another person -- that person being your alleged victim

13  in this matter -- that that rule is invoked as a result of

14  that?

15       *MR. SILVER:*  Yes, Your Honor.

16       *THE COURT:*  In this case, because of the age of the

17  alleged victim, she didn't have the -- she couldn't have

18  given legal consent.

19       *MR. SILVER:*  That's correct, Your Honor.  And

20  there's also -- there are also facts in evidence having to

21  do with her situation at the time, which was one in which

22  she was living in a garage with no utilities and in fairly

23  dire situation and was essentially coaxed or given small

24  gifts in order to come into the house and take these

25  pictures and that sort of thing, so there's --

**Appendix C**

**7**

1          THE COURT:  Does that go to consent, or what is

2   that?

3          MR. SILVER:  Lack of consent, Your Honor.

4          THE COURT:  Wouldn't her age alone be enough to

5   deprive her of consent?

6          MR. SILVER:  Yes, Your Honor.

7          THE COURT:  At the time she was, what, 13 or --

8          MS. GOROVSKY:  Fourteen, Your Honor.  I can jump in

9   on the facts, Your Honor.  And I apologize if Mr. Silver

10  already mentioned that.  There's also going to be testimony

11  that the defendant used his hands to touch the victim's

12  hands.

13         THE COURT:  I think it was in your motion.

14         MS. GOROVSKY:  He used his hands to touch the

15  victim's hands in order to have her place her hands in her

16  vagina for the photograph -- well, to hold it open for the

17  photograph.

18         THE COURT:  So your point is that it doesn't

19  have -- that the charged conduct doesn't have to be assault;

20  that within the charged offense at bar there simply needs to

21  be, under subsection (d) of -- under subsection (d), rather,

22  of this rule there need only be contact without consent of a

23  part of his -- the defendant's body and the genitalia of the

24  victim alleged victim?

25         MR. SILVER:  Correct.

 1          *MS. GOROVSKY:*  I don't know if Your Honor --

 2          *THE COURT:*  That doesn't -- you haven't cited a

 3     case to that effect.  I mean that's not the main case you

 4     rely on, but for the five-prong test --

 5          *MS. GOROVSKY:*  Your Honor, I'm not sure if I

 6     understand what you're asking, but under the rule,

 7     specifically 414, it says *any defendant who stands accused*.

 8     Doesn't necessarily have to be the charged conduct.  I mean

 9     this will be an accusation that the child will make on the

10     stand, and so I'm not sure if that's --

11          *THE COURT:*  Well, my point is, he's not charged

12     with sexual assault; he's charged with production and

13     possession of child pornography.  So my question is:  Does

14     he have to be charged with sexual assault?

15          *MS. GOROVSKY:*  That's what I'm trying to address,

16     Your Honor.  It says "accused" specifically.

17          *THE COURT:*  So you're going to produce evidence of

18     sexual assault that he's not charged with?

19          *MS. GOROVSKY:*  Correct.  But other --

20          *THE COURT:*  That doesn't matter under this rule.

21          *MS. GOROVSKY:*  Other rules of evidence specifically

22     say "charged"; whereas, this one says "accused", and so I

23     believe that's the difference, Your Honor.

24          *THE COURT:*  I see what you're talking about.

25     Accused.  Okay.  I see the difference.  Okay.  I missed that

**Appendix C**

**9**

1    nuance.  Okay.  I'm feeling better about your motion all the
2    time.
3             MR. SILVER:  Very good, Your Honor.
4             THE COURT:  Okay.  Now, in 404(b) we typically
5    would give -- I typically -- I don't know that all judges
6    do.  I typically would give a limiting instruction at the
7    time it's brought in.  Is that --
8             MS. GOROVSKY:  We have prepared and provided that
9    to the Court, Your Honor.
10            THE COURT:  All right.  In that folder over there?
11            MS. GOROVSKY:  Correct.
12            MR. SILVER:  We've also crafted a limiting jury
13    instruction.
14            THE COURT:  For the end?
15            MR. SILVER:  For the end.
16            THE COURT:  So at the time and at the end?
17            MR. SILVER:  Yes, Your Honor.
18            THE COURT:  All right.  Very good.  So let me talk
19    to Mr. Rosanswank.
20            Mr. Rosanswank, so I was a little worried at the
21    start, as you heard, about the fact that your client wasn't
22    charged with this, but I missed the nuance of the language
23    of the rule.  So the rule says "accused"; it doesn't say
24    "charged".  You think that makes a difference?
25            MR. ROSANSWANK:  I don't, Your Honor, because I

1  can't think of in what other context in the criminal court

2  system we would use the word "accused", other than "charged

3  with".  I mean if you were merely accused of these acts

4  today, we wouldn't have a jury waiting to hear the case,

5  obviously.  He's formally charged with them.  I think 413

6  and 414 are worded very similarly and I don't know that -- I

7  don't know of any reason to think that they were worded

8  separately for purposefully.  The molestation has to be

9  relevant to the charge at hand.  You mentioned yourself, you

10  know, issues as far as the length of time between those

11  previous accusations and the accusations that are made here.

12  Mr. Courtright clearly isn't charged with any type of

13  molestation or sexual assault in this case.  What these

14  rules -- my concern is 413 and 414 basically say it doesn't

15  matter if it's anything relevant.  If this is a molestation

16  case or sexual assault case, all that other stuff comes in.

17  I don't know what they meant when they wrote the rules.

18  That scares me to think that might be the case.  I still

19  think there has to be a very narrow reading of these rules,

20  and certainly in conjunction with Rule 403, which I raised

21  in my response, there are circumstances where the admission

22  of the evidence would be prejudicial or where the prejudice

23  would outweigh the --

24           THE COURT:  Before we get to that, let me ask you

25  this:  What about the *LeMay* factors, the five factors,

**Appendix C**
**11**

1    similarity of the prior acts charged?  Are these acts, the

2    charged conduct in this case, so dissimilar as to disqualify

3    the evidence on that basis?

4         *MR. ROSANSWANK:*  That's probably a closer call,

5    Judge.  I think it's fair to say that the circumstances of

6    the previous case are similar to the accusations that are

7    made.

8         *THE COURT:*  All right.  You challenge the closeness

9    in time, however?

10        *MR. ROSANSWANK:*  Yes.

11        *THE COURT:*  Now, not the registration as a sex

12   offender.  That's ongoing, that's immediate, so we don't

13   have a closeness in time there.  And I would dare say that's

14   inextricably intertwined.  Would you concede that one?

15        *MR. ROSANSWANK:*  I would think so, Your Honor.

16        *THE COURT:*  Just because that's really part of the

17   issue in the case, isn't it?

18        *MR. ROSANSWANK:*  Exactly.

19        *THE COURT:*  I mean I just think there's no way to

20   get around that.

21        *MR. ROSANSWANK:*  Well, I think, while I might

22   not -- I might want to argue against it, the fact of the

23   matter is that these are factors which, if the jury finds to

24   be present, are going to raise the mandatory minimum

25   substantially, so I mean clearly these are jury issues, one,

**Appendix C**

**12**

1  whether he was a --

2      THE COURT:  Whether he was there or not?

3      MR. ROSANSWANK:  Whether he was a sexual offender

4  or whether he has a previous sexual conviction.  These

5  are -- certain amount of leeway in proving.  But you know,

6  we're really concerned about the prejudice here more than

7  anything because, you know, what we're trying to avoid here,

8  obviously, is introducing propensity evidence, and the

9  closer we get to similar facts, the closer we are to

10  propensity evidence.

11      THE COURT:  I'm going to ask you about that

12  instruction in a minute.  But now, the closeness in time of

13  the others, somewhere in the vicinity of four to nine years,

14  do you believe that's too remote in time?

15      MR. ROSANSWANK:  I do.  I do.

16      THE COURT:  And why?

17      MR. ROSANSWANK:  Well, long time I guess would be

18  the vernacular, the easy answer.  The previous conduct was

19  charged in 1999.  I don't recall if the events occurred that

20  year or if they were in '98.  Then in this particular case

21  the events occurred in 2007.  So we're really talking, as a

22  practical matter, at least eight years and possibly nine

23  years between these incidents, which, you know, you

24  mentioned four or five.  It's considerably longer than that

25  actually.  Now, you know, I don't know.  There's no bright

1   line there that says eight years and three months; more than

2   that, you can't consider it.  It's a flexible rule.  But I'm

3   not sure how we could call that close in time.  We're

4   talking about nine years between them.

5           THE COURT:  And the frequency of prior acts, how is

6   that to be interpreted vis-a-vis the prior evidence and the

7   acts at bar?  What's the significance of that prong of the

8   test?

9           MR. ROSANSWANK:  My thought is that it creates a

10  way of measuring the relevance or the weight of the

11  evidence.  In other words, if this same conduct occurred --

12  again, you're getting dangerously close to propensity

13  evidence if this similar conduct occurred three, four, five,

14  ten times before, then the risk of prejudice or unfair

15  prejudice perhaps is lessened than when we're considering

16  one act nine years previously.  I think that they were

17  wanting -- were suggesting that if there's evidence of more

18  than one similar act in the past, that that is more -- has

19  more weight and then justifies you getting around the normal

20  rules of evidence admitting this information.

21          THE COURT:  In this instance how many acts are we

22  talking about in the prior?

23          MR. ROSANSWANK:  Well, I would have to ask the

24  government what their intentions are, but I would hope that

25  if the Court were to admit this evidence that it would limit

**Appendix C**
**14**

1   that evidence to the fact of his two convictions arising out

2   of the 1990 case.  One was sexual assault and the other

3   was -- I forget exactly how it was worded, but some

4   inappropriate touching.  It was only charged that that

5   occurred on one occasion that I'm aware of.

6           THE COURT:  Okay.  And intervening circumstances,

7   presence or lack of intervening circumstances, how does the

8   prior act evidence stack up against that prong?

9           MR. ROSANSWANK:  Well, I'm not sure how to weigh

10  that, Judge.

11          THE COURT:  All right.  Then the necessity of the

12  evidence beyond the testimonies offered at the trial prior

13  to their attempt to get this evidence in.

14          MR. ROSANSWANK:  Could you rephrase that or repeat

15  that?

16          THE COURT:  The necessity of the evidence, when

17  stacked up against the other evidence.  In other words, if

18  we've already got a bunch of evidence in, maybe this is just

19  cumulative.

20          MR. ROSANSWANK:  Oh, well, sure.  I mean the

21  government's intending to bring this evidence in through

22  documents, through live testimony.  I think those would be

23  the only two ways.  I think that clearly the fact of

24  Mr. Courtright's prior conviction ought to be brought out,

25  if at all, through the admission of official records

1    pertaining to that conviction and not through any previous

2    witness testimony.  I certainly don't think that's necessary

3    to hear witnesses.  Then we're really talking about

4    inflaming the prejudices of the jury, having a young witness

5    come in, testifying to conduct that occurred almost ten

6    years ago.  And I think the Court really needs to be really

7    careful in how far you let the government go with this.

8         *THE COURT:*  Did you have a chance to look at their

9    limiting instruction?

10        *MR. ROSANSWANK:*  No, I did not, Your Honor.  I was

11   going to certainly ask that there be a limiting instruction

12   if it is admitted.

13        *THE COURT:*  And then this issue of probative versus

14   prejudicial.  You know, the age-old cliche is:  Everything

15   the government does is prejudicial to the defendant.  But

16   why is it more prejudicial than probative insofar as the

17   jury getting the full story?

18        *MR. ROSANSWANK:*  Well, because I mean this case

19   began because of Mr. Courtright's status as a prior sex

20   offender.  Certain assumptions or certain avenues were

21   pursued merely because of the status as a prior sex

22   offender, and my concern in terms of prejudice is, you know,

23   these are not merely prior accusations, but Mr. Courtright

24   was actually convicted of conduct in that 1999 case, which

25   is, as we've described earlier, very similar to the conduct

1  that is described here.  And you know, I know that courts --

2  I guess the appellate courts have more faith in limiting

3  instructions than I do.  It's -- and in certain

4  circumstances I don't know what else the Court can do but to

5  give a limiting instruction.  But to ask a jury to

6  completely block out the fact of his prior conviction for,

7  you know, very similar conduct I think is problematic at

8  best.

9       THE COURT:  Maybe we judges have more faith in

10  juries.

11       MR. ROSANSWANK:  Perhaps, that could be.

12       THE COURT:  Thanks.  Mr. Silver or Ms. Gorovsky,

13  one of the other -- maybe both again -- let's go through the

14  prongs.  Similarity of the prior acts:  Is your intended

15  evidence similar, dissimilar?  What's the --

16       MS. GOROVSKY:  I'll speak to the facts.  It's

17  strikingly similar, Your Honor.  It's another -- it was in

18  the same home, the Madison Avenue house.  The defendant was

19  living there at the time and had a roommate, a younger

20  roommate, who was 21 years old who was dating a 15-year-old.

21  That 15-year-old would come over to the house regularly and

22  also bring I believe her 10-year-old sister sometimes.  And

23  Your Honor, the 15-year-old came from a very troubled home,

24  just like the 14-year-old in this case, and the defendant

25  basically took a liking to her, allowed her to work for his

**Appendix C**
**17**

1    family in rolling newspapers, very similar to the

2    14-year-old in this case.  And basically one day he asked if

3    he could take pictures of the 15-year-old; first of all,

4    some individual pictures of her, and then also some having

5    sexual relations with the 21-year-old roommate.  And he took

6    a number of these pictures and they were found on his

7    computer, very similar to this case, Your Honor.  He was

8    originally charged with child pornography.  I think in plea

9    negotiations it was changed to aggravated criminal sexual

10   abuse, and then also he was convicted of battery for

11   touching the breasts of the younger 10-year-old, which we

12   don't intend to bring in in this case.  It's merely the

13   15-year-old and the child pornography situation.

14            THE COURT:  Okay.  Now, the time issue?

15            MS. GOROVSKY:  It was ten years ago, or nine years

16   ago, Your Honor, but the defendant was in prison for some of

17   that time for forgery convictions, and it was basically

18   only, I want to say half a year, six months since he had

19   been released from prison that he went and did this.

20            THE COURT:  So the intervening circumstances are

21   that he was in prison, so that weighs in favor of the

22   introduction of the evidence?

23            MS. GOROVSKY:  That's correct, Your Honor.

24            THE COURT:  Because he couldn't have engaged in

25   other -- in the interim because he was in prison?

1          MS. GOROVSKY:  Yeah.  And I don't want to say all

2     of it was prison.  Some of it was also in jail awaiting

3     trial, and he may have been out at some point before --

4     right after the initial offense and before he got caught for

5     the forgery.  I honestly, Your Honor, hadn't prepared and

6     looked at exactly how much time that was, but there is

7     significant jail and prison time intervening.

8          THE COURT:  What is the significance of this prong,

9     the test of the lack of prior acts, and how does that weigh

10    in the Court's decision in this particular --

11         MR. SILVER:  Are you referring to the *LeMay*

12    factors, Your Honor?

13         THE COURT:  Yeah.

14         MR. SILVER:  And you're referring to the presence

15    or lack of intervening circumstances?

16         THE COURT:  No; the frequency of the prior acts.

17         MR. SILVER:  Frequency of the prior act.

18         MS. GOROVSKY:  That wouldn't weigh in our favor,

19    Your Honor, only because it happened once and he was caught,

20    but he only had -- it seems to me he only had the

21    opportunity to do it once before he was caught.  The other

22    thing Mr. Silver is going to argue, I think, Your Honor, is

23    that these aren't necessarily the controlling factors in the

24    Seventh Circuit.

25         MR. SILVER:  In the *Hawpetoss* case cited in the

1  government's paper, just below the recitation of the *LeMay*

2  factors, the Court writes as follows: *This circuit has not*

3  *expressly adopted the factors-based test of LeMay.  Instead,*

4  *in Julian, we stress that "the district court enjoys wide*

5  *discretion in admitting or excluding evidence, and our*

6  *review of its evidentiary ruling is highly deferential".  In*

7  *effect, then, Julian adopts a more flexible approach than*

8  *LeMay and one more in harmony with the outlined approach of*

9  *the Tenth Circuit in Guardia, when it foresaw that district*

10 *courts would consider "innumerable factors".*

11       In *Guardia*, the Court applied 413 to a case

12 involving a physician's inappropriate conduct toward

13 patients, and the Court took a step back and took more of

14 a -- perhaps a big picture view of the question of courts

15 applying Rule 403, but taking the issues of prejudice an

16 probativity outside of a more constrained factor-based

17 analysis and looking at the nature of these cases.

18       *THE COURT:*  Tell me a little bit about, first of

19 all, your plan as far as when you intend to introduce this

20 evidence, if allowed to introduce it.

21       *MS. GOROVSKY:*  Your Honor, it will be one witness.

22 It will be the child victim from the previous case, the

23 15-year-old, who is now 26 years old, and it will be, I can

24 tell you -- I can't tell you off the top of my head which

25 number witness she is.  I believe it would be tomorrow,

1  somewhere in the middle of the case, and it would be one

2  single witness and that's all.

3      THE COURT:  So after you've already introduced a

4  substantial amount of other of the evidence relating to the

5  child pornography?

6      MS. GOROVSKY:  That's correct.  The victim in this

7  case will have already testified and many of the law

8  enforcement will have already testified.

9      The other thing I wanted to mention, Your Honor:

10 It's also in the defendant's interview.  I don't know if you

11 remember from watching the interview, they asked him all

12 about this, so he also had the opportunity, even without

13 testifying, to give his explanation of that situation.

14     MR. SILVER:  Your Honor, just to clarify, I think

15 we offered an instruction for the end for the jury.  I don't

16 believe that there is an instruction right for before when

17 the evidence is introduced.  We can certainly provide that

18 to the Court.

19     THE COURT:  I thought you said it was in that

20 folder?

21     MR. SILVER:  The jury instruction is in that

22 folder.  We've given the Court an instruction for

23 immediately before the testimony.

24     MS. GOROVSKY:  Perfectly willing to, Your Honor --

25     THE COURT:  I thought you said you had.

**Appendix C**
**21**

1          *MS. GOROVSKY:*  I apologize.  I thought you meant

2     about one of the written jury instructions.

3          *THE COURT:*  I thought you said you provided a

4     proposed limiting instruction.

5          *MS. GOROVSKY:*  May I approach the Court,

6     Your Honor?

7          *THE COURT:*  Okay.  Thanks.  I'm sorry,

8     Mr. Rosanswank.  You have another --

9          *MR. ROSANSWANK:*  Yes.  Just two things, Your Honor.

10    I don't have Mr. Courtright's criminal records right before

11    me, but he tells me that he served less than two years in

12    custody during that nine-year period.  I believe this is

13    correct, from my previous review of the materials.  But one

14    thing I just noticed, Rule 414 talks about admitting

15    evidence of child molestation, and that rule also provides a

16    definition for child.  It states that:  *For purposes of this*

17    *rule, the child must be under 14 years old.*

18          In this particular case -- Ms. Gorovsky will

19    correct me if I'm mistaken -- but I'm certain that the girl

20    involved in  Count 1 was 14 years old at the time, so that

21    would take this out of Rule 414 by virtue of the fact that

22    she's not considered to be a minor child at the time these

23    pictures were allegedly taken, so I don't think 414 is even

24    applicable under the circumstances judge.

25          *MS. GOROVSKY:*  I can respond to that, Your Honor.

**Appendix C**

**22**

1             THE COURT:  Okay.

2             MS. GOROVSKY:  It's 413 that specifies that the

3     victim be under 14, and Your Honor.

4             THE COURT:  414 by my reading.

5             MS. GOROVSKY:  Your Honor, I apologize.  It's 413

6     that has no age limitation, Your Honor.  As for 414, about

7     the -- 414, Your Honor, calls an offense of child

8     molestation -- it includes an offense under Chapter 110,

9     which would include child pornography, Your Honor, and so

10    it's a little bit tricky how we're using 414 here, but I

11    think it will make sense.

12            The victims and the images that we are going to

13    show -- and they are victims in this case -- are under 14

14    years old, and therefore, if that child pornography counts,

15    then the prior -- any prior child pornography, we were using

16    that not for the previous child victim evidence, Your Honor,

17    but for the fact that his ex-wife found child pornography on

18    the computer of similarly aged children.  So 413 is the

19    basis for the defendant's prior conviction.  Does not have

20    an age limit.  And 414 has the age limit, but the victim

21    specified in that section are the victim in the images,

22    Your Honor.  Does that make sense?

23            THE COURT:  What about the assertion that defendant

24    makes that he wasn't in jail or prison that intervening

25    period of time until shortly before this offense?

**Appendix C**

**23**

1          MS. GOROVSKY:  I apologize, Your Honor.  I cannot

2     say specifically how long.  Like I said before, how long he

3     was in prison -- I know he was in prison.  I know he served

4     in prison for two years.  I know that there would have been

5     a period before that that he served waiting for trial as

6     well, and I don't know how long that was.  So he may be

7     correct.  I'm not sure, Your Honor.

8          THE COURT:  You don't know the date the judgment

9     was entered?

10         MS. GOROVSKY:  I probably know the date the

11    judgment was entered, your Honor, for the first offense,

12    which would have been after he committed the first offense.

13    Obviously he went -- it looks like he -- the judgment was on

14    September 27th, 2000, and then it looks like his probation

15    was revoked in 2001.  I'm not exactly sure how long.  So his

16    probation was revoked.  It looks like he got another term of

17    probation until 2003, Your Honor.  Looks like there's

18    another Petition to Revoke Probation, and that was filed on

19    March 1st, 2004, which looks like he didn't go back in on

20    that one, Your Honor.

21         In 2002, he was charged with forgery and received

22    another term of probation.  Petition to Revoke Probation.

23    There's a lot of time sitting in jail waiting for these

24    things as well, Your Honor, waiting for your Petition to

25    Revoke Probation and things like that, when you get arrested

**Appendix C**
**24**

1    on the probation warrant.  Let's see.  Then he went to DOC

2    in 2003 for a period of three years.  That may have

3    effectively turned out to be two years.  Looks like he got

4    four years on a theft, Your Honor, in 2004, and also the

5    four years on the forgery in 2004.  2003, he had three years

6    on a forgery, and I don't exactly know how all these run

7    together, Your Honor, in terms of when he was actually in,

8    and I don't know that these records are going to tell me

9    that.

10           But again, I think, Your Honor, in terms of taking

11   a step back, I would argue that it doesn't necessarily

12   matter.  As Mr. Silver explained, that's not necessarily --

13   first of all, even under *LeMay* it wouldn't be necessarily a

14   deciding factor.  And second of all, I think the

15   Seventh Circuit says that's not necessarily a rigid black

16   line test, that it's based on sort of the totality of the

17   circumstances kind of situation in determining a balancing

18   test between prejudice and probativeness.

19           *THE COURT:*  Okay.  Thanks.

20           *MS. GOROVSKY:*  Actually, Your Honor, I don't know

21   if the Court is allowed to consider this or not, but I'll

22   mention it just for the situation.  There are numerous

23   accusations of sexual misconduct during that period as well.

24           *THE COURT:*  I'm sorry if I didn't follow you on

25   that one.

**Appendix C**
**25**

1          *MS. GOROVSKY:* During that time period there were

2     numerous accusations with the Granite City Police

3     Department, and incompleted investigations, because he then

4     got sent to prison on forgery.  But there were other sexual

5     misconduct allegations during that time period, Your Honor,

6     on one of his step-daughters, and I think some of that

7     happened pretty regularly, Your Honor.

8          *THE COURT:* Not proven; just allegations?

9          *MS. GOROVSKY:* Correct.

10         *THE COURT:* Well, with respect to the aspect of

11    this that goes to the sexual offender registry, that's

12    inextricably intertwined.  There really isn't the same

13    analysis with respect to that.  That's just part of this

14    case.  It's relevant evidence.  It goes to the -- it goes to

15    part of the investigation in the case, and so it's

16    probative.  It's not any more prejudicial than any other

17    aspect of the government's case, so it's just a relevant

18    piece of evidence.  It's very probative.  Probative nature

19    certainly outweighs the prejudice to the defendant.

20         With respect to the evidence of the prior

21    conviction, sexual misconduct of the prior victim, while the

22    *LeMay* test is not a bright line test and not the end-all

23    be-all, it's certainly of some help, as the *Hawpetoss*,

24    H-A-W-P-E-T-O-S-S, case suggests.  But looking at the

25    totality of the circumstance in this case, the evidence is

1    strikingly similar, as Ms. Gorovsky pointed out.  The

2    closeness in time.  There's some -- it's hard to judge on

3    the record that the Court has before it.  Neither party

4    could give me a precise record on when the defendant was in

5    jail and out of jail.  There's speculation about his

6    activity.  But certainly we know there's at least some jail

7    time intervening that would have been an obstruction, but

8    the closeness in time is not so remote as to make it

9    irrelevant.

10             It sounds as though there will be a fair amount of

11    evidence against Mr. Courtright, though this evidence does

12    not sound cumulative, and will assist the jury.  The Court

13    will give a limiting instruction.  I will certainly give the

14    defense counsel an opportunity to submit what he believes is

15    an appropriate limiting instruction, though the 413, 414

16    instruction submitted by the government appears to be an

17    adequate one, but I'll certainly consider anything else

18    that's offered.  The authority for this, of course, as I

19    forgot to point out, is both 413 and 414 on the grounds

20    stated by Ms. Gorovsky and Mr. Silver.  There's no age limit

21    in 413 and 414.  It goes to the victims in the prior films,

22    414 -- 413 rather, it goes to the victim in this case, so

23    there's evidentiary rule authority for this which makes the

24    evidence relevant.

25             In looking to see whether or not 403 trumps this,

1    whether or not this evidence is so prejudicial to

2    Mr. Courtright as to overwhelm its probative value, the

3    Court deems the evidence to be so probative as to overwhelm

4    its prejudice against Mr. Courtright, and so the Court finds

5    that its relevance is established and will allow the

6    evidence.

7         Have another issue found at Doc. 79, which is

8    government's Motion to Protect the Privacy of the Witness by

9    referring to the alleged victim by -- I guess it's multiple

10   witnesses actually, child witnesses and victim witness, by

11   initials.  Defendant weighed in on that, thought that there

12   should be a better way; referring to the witnesses by

13   initials would be confusing.  I frankly think that's the

14   best way and I'll grant that motion.  The witnesses may be

15   referred to by initials.

16        *MS. GOROVSKY:*  Your Honor, if I can ask also --

17   there's no doubt in my mind that we're going to make

18   mistakes on that and that we're going to accidentally say

19   her name.  Is there any way that I can request that the

20   transcript be cleaned up if we make that mistake?

21        *THE COURT:*  If mistakes are made, names will be

22   redacted and the initials will be inserted in the place of

23   the names.  I just ask that everybody make every effort to

24   refer to the witnesses by their initials.

25        *MR. ROSANSWANK:*  Judge, how will we officially know

**Appendix C**
**28**

**PROOF OF SERVICE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | COURT OF APPEALS |
| | ) | NO. 09-2880 |
| Plaintiff-Appellee, | ) | |
| | ) | Southern District of Illinois |
| vs. | ) | District Court No. 07-30179 |
| | ) | |
| CARL A. COURTRIGHT, III, | ) | Honorable David R. Herndon |
| | ) | Judge Presiding |
| Defendant-Appellant. | ) | |

     The undersigned hereby certifies that on August 2, 2010, she served two (2) copies of the attached:

BRIEF OF PLAINTIFF-APPELLEE,

**and** pursuant to Circuit Rule 31(e), supplied a copy on digital media
in Adobe Acrobat (pdf)

by placing two (2) copies in a postpaid envelope addressed to the person(s) hereinafter named, at the

places(s) and address(es) stated below, which is/are the last known address(es), and by depositing

said envelope and contents in the United States Mail.

ADDRESS(ES):

Gareth G. Morris, Attorney
Suite 100
1704 N. Dayton Street
Chicago, IL 60614-0000

_____