**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | On appeal from the United |
| ) | States District Court for the |
| Plaintiff-Appellee, ) | Southern District of Illinois |
| ) | (East St. Louis) |
| ) | |
| vs. ) | No. 07 CR 30179 |
| ) | |
| CARL A. COURTRIGHT, III, ) | Honorable David R. Herndon |
| ) | United States District Judge, |
| Defendant-Appellant. ) | Presiding. |

---

# REPLY OF
# CARL A. COURTRIGHT, III

GARETH G. MORRIS,
1704 N. Dayton St., Ste 100.
Chicago, Illinois 60614
312 943-6178

COUNSEL FOR
DEFENDANT-APPELLANT,
CARL A. COURTRIGHT, III

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

<u>PAGE</u>

TABLE OF AUTHORITIES……………………………………………………….  iii

ARGUMENT…………………………………………………………………...  1

# TABLE OF AUTHORITIES

**Cases**

*Doe v. Smith*, 470 F.3d 331, 342-46 (7th Cir. 2006) ...................................................... 2

*United States v. Angle,* 234 F.3d 326, 341-342 (7th Cir. 2000) ....................................... 2

*United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007), ....................................... 10-11

*United States v. Farinella,* 558 F.3d 695 (7th Cir. 2009) ............................................. 6, 7

*United States v. Hawpetoss*, 478 F.3d 820 (7th Cir. 2007) ............................................. 2

*United States v. Hollow Horn*, 523 F.3d 882 (8th Cir. 2008) .......................................... 2

*United States v. Julian,* 427 F. 3d 471 (7th Cir. 2005) .................................................... 2

*United States v. Lee*, No. 09-2698 (7th Cir., August 20, 2010) ..................................... 13

*United States v. Olano*, 507 U.S. 725, 736-37 (1993) ................................................... 13

*United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009) ................................................... 2

*United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006) .................................................. 10

**Other Authorities**

Federal Rule of Evidence 403 .......................................................................................... 7

Federal Rule of Evidence 404(b) ................................................................................. 7 - 9

Federal Rule of Evidence 413 ............................................................................. 1, *passim*

Federal Rule of Evidence 414 ............................................................................. 1, *passim*

<u>Seventh Circuit Federal Jury Instructions</u>, West 1999 ............................................... 8

# ARGUMENT

**I.    The government's Rule 413 and 414 arguments are unsupported by any law or the evidence adduced at trial.**

The government persists in arguing that SJ's testimony constitutes an "accusation" of "sexual assault" within the meaning of Federal Rule of Evidence 413, and that therefore the L. Miller testimony and the evidence of Courtright's conviction for sexual assault were properly presented to the jury. The argument repeatedly made is that even though Courtright was not "charged" with " an offense of sexual assault", it can be "inferred" that he touched SJ and this inferred conduct invokes Federal Rule of Evidence 413. See, for example, G.Br. 28, fn. 6. This argument is legally unsupportable; and the government's continued efforts to prop it up based on exaggerated factual assertions, which are not in the record, is improper.

Nothing in the language of the statute, or the legislative history, or the Constitution,[1] supports the government's interpretation of the scope of Rules 413, titled "Evidence of Similar Crimes in Sexual Assault Cases." The rule provides that only "[i]n a criminal case in which the defendant is accused of an offense of sexual assault…" can the court admit prior similar conduct. But, as the government states -- slipping from its effort to distinguish "charged" from "accused" -- "Courtright was **accused** of producing child pornography when he took sexually explicit photographs of SJ," (G. Br. 11), not

---

[1] The Sixth Amendment to the Constitution uses "accused" to refer to people charged with crimes: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial….".

sexual assault.

Judge Herndon noted that the government had failed to cite a single case under Rule 413 or 414 where the defendant was not charged with sexual assault or child molestation (App. 10), and none has been offered in the government's brief. The Seventh Circuit cases cited – *United States v. Hawpetoss*, 478 F.3d 820 (7th Cir. 2007); *Doe v. Smith*, 470 F.3d 331, 342-46 (7th Cir. 2006); *United States v. Julian*, 427 F.3d 471, 485-488 (7th Cir. 2005); *United States v. Angle*, 234 F.3d 326, 341-342 (7th Cir. 2000) and *United States v. Rogers*, 587 F.3d 816 (7th Cir. 2009) – all involve defendants accused of either sexual assault or child molestation, as Rules 413 and 414 require. Rule 413 applied "in trials for sexual assault…" *Rogers*, at 818.

The government also cites *United States v. Hollow Horn*, 523 F.3d 882 (8th Cir. 2008) for the circular proposition that "any limiting instruction given based on rule 413 will necessarily reference an act of sexual assault because that is what Rule 413 is about." G. Br. 34. Just so, but *Hollow Horn* involved sexual assaults on two young girls, and the prior conduct admitted under Rule 413 was the rape of the 10-year old's mother some years earlier. It is a paradigmatic example of the kind of case where Congress intended for Rule 414 to apply. *Hollow Horn* offers no support for the argument that an accusation of sexual assault inferred by the prosecution from a witnesses' testimony is a basis for invoking Rule 413 in a child pornography or bank fraud prosecution.

The government's argument is particularly strained in relation to Rule 414. In the district court it argued that L. Miller's testimony was admissible because SJ was sexually assaulted, saying,

"…under the rule, specifically 414, it says any defendant who stands accused.

2

> Doesn't necessarily have to be the charged conduct. I mean this will be an accusation that the child [SJ] will make on the stand…"

March 2 Tr. 10; App. 10.

But now, in its brief it argues that Appellant has created a red herring by discussing Rule 414 because it ultimately had no application to the evidence admitted. This makes no sense, particularly in light of the argument quoted above and the government's insistence that the references in the instruction to "child molestation" are proper.

In a further effort to avoid the record below and the clear limits of Rule 413, the government next blames SJ for its failure to present any evidence of sexual assault, saying, "At trial she did not spell it out so vividly". G. Br. 27. However, a review of the transcript of SJ's testimony confirms that *the prosecutor never asked her* the question. SJ's testimony was that Courtright had not touched her improperly, much less sexually assaulted her. March 4 Tr. 122.

Even if an accusation, as opposed to a charge of sexual assault were sufficient to invoke Rule 413, the accusation would surely have to be explicit, not just based on the prosecutor's inferences. Although the record is clear that SJ never claimed that Courtright sexually assaulted her, the government persists in arguing to this court that this sexual assault of SJ is an established fact. See Statement of Facts, G. Br. pages 6 and 28, fn. 6. However, SJ did *not* testify, as the government represents, that Courtright touched her sexually in any way. This is a fact imagined by the prosecutor and then passed on to the jury, and now to this court.

In the closing argument the prosecutor said "What was he thinking when he took

3

her hands in his and placed them on her vagina and took pictures of it?" March 3 Tr. 31.
There are only two possible evidentiary bases for this in the entire record. The first consists
of two questions and answers, as follows:

> Q. [ Ms. Gorovsky, AUSA] Was there a point where he told you to spit?
> A. [SJ] Yeah.
> Q. What was that for? …
> A. To make it look like I was aroused. Make it look like I was playing with myself and I liked it."

March 4 Tr. 91.

The second possible basis for the prosecutors assertion that Courtright touched SJ's vagina is the lotion incident. Later in the Statement of Facts the government says, "He also rubbed lotion on her buttocks approaching her anus[2] and genitals…this was an attempted sexual assault." G. Br. 17. It was not. First, SJ was dressed. March 4 Tr. 120. Second, the lotion was apparently for acne on her back. March 4 Tr. 81. Third, he did not touch her genitals. March 4 Tr. 82. SJ's testimony was that he "came close" this one time, but that there never was inappropriate touching. Courtright did not ever, according to SJ, touch her genitals, "never really put his hand down my [SJ's] pants" or otherwise assault her. March 4 Tr. 122.

Nevertheless, the government persists in asserting that: "In the case at bar, the victim [SJ] accused Courtright of sexual assault." G. Br. 16. And later, "Her [SJ's] testimony clearly accused him of it [sexual assault]." G. Br. 29. This is a material distortion of the record below –at best.

There are other distortions of the record in the government's brief. It is asserted that

---

[2] Neither this term, nor any reference to it, appears anywhere in the transcript.

4

"He [Courtright] had progressed in his sexual aggression towards her **by offering to rub lotion on her body and give her massages.**" G. Br. 6 (emphasis added). There is no evidence of a pattern of "sexual aggression," and none that he offered to "give her massages". A search of the government's cited support for this -- SJ's testimony at pages 81-83 of the March 4 transcript -- reveals the lotion incident, but no reference to a massage or massages. The word "massage" never occurs. There simply is no evidence of Courtright "offering to … give her massages." G. Br. 6. And SJ testified that he never really touched her inappropriately. March 4 Tr. 122.

Even if the government were right that Rule 413 applied, the evidence that Courtright photographed L. Miller and Eric should not have been admitted because it was not "similar" as the rule requires, and it was prejudicial but largely irrelevant to the charges. It is not similar because Courtright took the photographs at Miller's and Eric's *explicit request.* He also took photos of her alone, but she could not remember how that came about. March 4 Tr. 157-8. Nevertheless, in an improper effort to make the L. Miller events similar to the facts related by SJ in her testimony, the government asserts in its Statement of Facts that, "**Courtright persuaded L. Miller to allow him to take nude photographs.**" G. Br. 11 (emphasis added). The transcript cited for this purported fact (March 4 Tr. 157 -168) says nothing of the sort. The record is quite different: First, at the time the photos were taken (a decade earlier in 1998) L. Miller and her boyfriend Eric had on occasion had sex in a van at Courtright's place -- "We would like have sex in the van and we would try to stack the papers up to where he couldn't see". Testimony of L. Miller, March 4 Tr. 161. Second, it was L. Miller's and her boyfriend's idea for them to be photographed

5

in sexual poses, *not* Courtright's:

> Q. "That was something that you guys wanted someone to do for you, isn't it, at the time?"
>
> A [L. Miller]: "Yes"
>
> Q. "….at the time that's something that you and Eric were both very cool with, is that fair to say?'
>
> A: "Yeah".

March 4 Tr. 161-2.

Accordingly, the representation to this court that L. Miller was "persuaded" by Courtright is not supported by any evidence.

Thus the government's argument that is was not error to admit the L. Miller testimony and the fact of Courtright's prior conviction rests on a house of cards. The record reveals no accusation of "sexual assault", no progression of "sexual aggression", no reference to "massages", and no evidence of Courtright's hands touching SJ's. All these are inferences of the prosecution, presented here on appeal to support an unprecedented interpretation of Rule 413 and 414, one erroneously adopted by the district court. App 1-29. The government persists in this court, as it has since before the trial, in seeking to justify the admission of this highly damaging propensity evidence on the basis of nonexistent facts, and testimony that was never elicited.

Last year this court reversed a conviction that was a product, in part, of prosecutorial misconduct. In *United States v. Farinella,* 558 F.3d 695 (7th Cir. 2009), cited in Courtright's initial brief, but ignored by the government in its response, the prosecutor made a series of mistakes, including improper assertions in her rebuttal closing argument that were unsupported in the record. In *Farinella,* the prosecutor failed to conform her arguments to the

evidence at trial, and persisted in doing so on appeal. Similar errors and misstatements, all tending to prejudice the jury against the defendant, occurred in Courtright's trial; and now, on appeal, the government persists in advancing a strained and unsupportable interpretation of the scope of Rules 413 and 414, propped up by distorted factual assertions.

## II.     The government fails to explain how Rule 404(b) and 403 would apply to justify admission of this evidence to prove "intent".

The government's brief fails to defend the admissibility of these items under Rule 404(b) and fails to explain how L. Miller's testimony has any bearing on intent, or why this classic propensity evidence's prejudicial effect doesn't greatly outweigh its probative value. Instead, it simply asserts it was probative as to "motive, intent and identity" and that its probative value outweighs its prejudicial effect. G. Br. 17. The district judge only weighed the probative vs. prejudicial issue under Rule 413, not Rule 404(b). The judge could not possibly have effectively done this prior to trial under Rule 403 when he admitted the evidence. He had not yet heard the testimony of SJ or L. Miller, and only had the government's proffers to go on. The correct time to decide whether Rule 413 or 404(b) evidence should be admitted is *after* hearing the evidence of the charged offense, and after hearing the proffered propensity evidence outside the presence of the jury. Otherwise, it's all just a guess. Of course here, on appeal, the question is whether it would have been proper to admit the convictions and other acts, regardless of the district court's errors or omissions.

The government cites *United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006) with respect to the admissibility of bad acts evidence under 404(b). However in *Sebolt* the prior acts were admitted as to motive and identity, not intent. Here the only basis on which the govern-

ment offered Courtright's prior sex offense conviction and the L. Miller testimony was to prove "intent". However, even if we assume the district court could properly have admitted the evidence under Rule 404(b), there was still plain error in how the jury was instructed. The hybrid and contradictory jury instructions given failed to conform to rule 404(b) or to limit the jury's consideration of the evidence.

### III.  The government's claim that the jury instructions were proper is unsupportable.

As discussed in our initial brief, there are all kinds of problems with the Rule 413/404(b) instruction. Instruction No. 12; App. 36. Nevertheless, in its responsive brief, the government raises another argument that is *flatly inconsistent* with the record, stating: "the prosecution deliberately changed the *Benally* instructions …**to only allow the jury to consider such prior offense evidence as evidence of defendant's intent.**" G. Br. 36-37 (emphasis added). That is not so. If the government intended such a limitation it could have proposed The Seventh Circuit Instruction, which is as follows:

> "You have heard evidence of other acts of the defendant other than those charged in the indictment. You may consider this evidence only on the question of _____]. You should consider this evidence only for this limited purpose."

Instruction 3.04, <u>Seventh  Circuit  Federal Jury Instructions</u>, West 1999.

The government's instruction, given to the jury by Judge Herndon, *does not* say that it may "only" be considered as to intent and for no other purpose. See, Instruction 12, App. 36. So the assertion that all this propensity evidence was properly limited by the instruction, as Rule 404(b) requires, is not correct. Furthermore, the comments to Seventh Circuit Instruction 3.04 advise that "care should be taken…not to characterize the evidence or to give it additional weight." Yet that is just what happened. Instruction 12 expressly states that evi-

8

dence of another offense could not be **"on its own sufficient to prove the defendant guilty",** thus giving it additional weight and expanding the jury's consideration of it beyond intent.

The government's brief claims that consideration of the L. Miller testimony and Courtright's conviction of a sex offense against a minor was confined to the issue of intent and that if there was error, it was that the jury was too constrained by the instruction. G. Br. 37-38. But this assertion is contradicted by the language of the instruction itself, and by the very next instruction given to the jury -- March 6 Tr. 11; "Instruction No. 13", which the government failed to even mention in its brief. It is as follows;

> You have heard evidence of acts of the defendant other than those charged in the Second Superseding indictment. You may consider this evidence only on the question of proof of motive, intent, plan, or absence of mistake or accident. You should consider this evidence only for these limited purposes.

March 6 Tr. 11.

What a mess. The first instruction (No. 12) refers to "offenses of sexual assault or child molestation", the second (No. 13) refers to "acts of the defendant other than those charged."  The two instructions obviously conflict and overlap and it was impossible for the jury to know whether the conduct L. Miller described falls under Instruction 12 or 13, or both. The jury was never told whether the sex offense conviction involving a minor victim, which the government mentioned in the opening statement, had anything to do with L. Miller or whether his registration as a sex offender had anything to do with L. Miller. The jury was left to speculate as to whether there were one, two or three offenses and whether to consider this evidence under Instruction 12 or 13 or both.

9

In light of the admittedly erroneous elements instructions, that listed prior sex offenses that were to be proved as element of the crime, followed by the government's opening statement that told the jury Courtright had a sex offense conviction against a minor and was a registered sex offender, the jury must, assuming they followed or at least listened,[3] have believed that the L. Miller testimony and the prior sexual assault conviction were both important to their decision and could be appropriately considered. After all, Rule 413 on which the Instruction 12 was based, allows the prior acts evidence to be considered "for its bearing on any matter to which it is relevant". The instruction the jury later heard twice, based on Rule 413, did nothing to limit their consideration of the evidence to intent. The instruction, based on the 10th Circuit's decision in *United States* v. *Benally,* 500 F.3d 1085 (10th Cir. 2007), is erroneous on its face. Adding Instruction 13 after that only confused the jury more and provided two directly conflicting rules under which prior acts evidence could be weighed. The government nevertheless claims that it "… deliberately changed the *Benally* instructions …to only allow the jury to consider such prior offense evidence as evidence of defendant's intent." G. Br. 36-37.

Somehow the government cannot or will not grasp appellant's arguments concerning Rule 413 and these instructions. It asserts that "Courtright concedes that the instructions in the case at bar were taken from a similar –albeit not perfectly parallel—case." G. Br. 36. Nothing could be farther from the truth! We called Instruction No. 12 based on

---

[3] The government states that defendant *"overreaches"* by assuming that the jury heard and remembered the list of prior convictions included in the initial elements instructions…G. Br. 16. But juries are presumed to listen and follow instructions given by the judge, and they were never specifically told that the list of prior sex offenses were *not* elements of the child pornography counts. The lists just weren't repeated.

*Benally,* "a bizarre and purely imaginary creature." App. Br. at 29. How could the government in good faith read our attack on the use of *Benally* (at pages 28-31 of Appellant's Brief) and not conclude that *Benally* is entirely and utterly inapposite?

It is, however, not disputed that Courtright's trial counsel did not object specifically to either instruction (March 6 Tr. 2), but he clearly did object to the government's efforts to admit evidence under Rules 413, 414 and 404(b), and he had a continuing objection, as the government concedes ( G. Br. 12), that surely was still in effect at the end of the trial when the jury was instructed.

The government argues that it did no harm to instruct the jury concerning **"child molestation"** convictions because the instruction did not "…even imply that the prior offense was child molestation." G. Br. 34.   This makes no sense.  Also, what is the point of noting that the jury knew that neither L. Miller nor SJ was under age 14 ("…Miller's age was no mystery to the jury" G. Br. 34) and arguing that this somehow solves the prejudicial effect of two references to "child molestation"? In her opening, the prosecutor referred to SJ as a "child" and in her closing said, falsely and without any evidentiary basis, that Courtright placed "…SJ's hands in her vagina" -- the jury could not possibly know the technicalities of Rule 414, but they surely understood and were prejudiced by this false assertions and by the label of "child molester".  The jury also had been told that Courtright was a registered sex offender, *and* that he had been convicted of a sex crime involving a minor. The inclusion of the word "or" between sexual assault and child molestation does not begin to undo the prejudicial effect of these instructions, particularly in the context of all the other errors.

11

The government's brief also never explains why it was not an error to refer to **"another offense"** of sexual assault or child molestation. None of the charged offenses involved sexual assault, so there was no other such offense. Neither the prior offense or offenses involved "child molestation", as the government now concedes, so not only was there no *other* offense of child molestation, there wasn't *any* offense of child molestation.

As discussed below, even under a plain error standard, the admission of this evidence of prior sex crimes against minors and the botched instructions that were given, based on a rule of evidence that has no application, and which overlapped and contradict other instructions, is the sort of fundamental, structural error that cannot be ignored.

### IV.     Harmful Errors: The cumulative impact of all these errors was highly prejudicial.

The government's brief fails to address the cumulative impact of the identified errors upon the fairness of the trial, except to say that each was either not an error or was harmless, and that the evidence against Courtright was overwhelming. But the government fails to meet its burden of showing that these errors, which impacted Courtright's due process rights under the Constitution, were harmless. As this court very recently said,

> When cases present errors that infringe on constitutional rights, we will not uphold the district court unless the constitutional error is harmless beyond a reasonable doubt. *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1016 (7th Cir. 1987). An error is harmless if the prosecution can prove beyond a reasonable doubt that the constitutional error did not contribute to the verdict.

*United States v. Jermaine L. Lee*, No. 09-2698, page 11 (7th Cir., August 20, 2010).

All these errors -- from erroneous elements instructions that recited a list of prior sex offenses, to references to his sex offender registration, to his prior conviction or convictions, to his non-existent efforts to "persuade" Miller to be photographed, to non-existent touching of SJ, to instructions that refer to non-existent "child molestation" and allowed consid-

12

eration of prior bad acts under Rule 413's broad standard of relevancy, to a closing argument that falsely claimed Courtright's hands touched SJ's – had a devastatingly prejudicial impact, and their cumulative effect was to deny Courtright his constitutional right to a fair trial. A verdict that might well have been based on the defendant's past deeds and convictions involves the most fundamental kind of due process violation. Thus, it seriously affected the fairness, integrity and public reputation of the proceedings. *United States v. Olano*, 507 U.S. 725, 736-37 (1993).

The evidence as to production of child pornography (Count One) – which carries a mandatory life sentence -- was not overwhelming, and without the government's false claim that Courtright touched SJ, and without all the other errors discussed above, there might well have been an acquittal on this count. Taking pictures of a 14 year old is not *per se* the production of child pornography, and whether or not SJ was involved in "sexually explicit conduct" was a matter that the jury considered through a dark cloud of prejudicial propensity evidence, a series of flawed instructions and an improper closing argument.

**V. Conclusion**

Reversal and remand for a new trial is required in the interests of justice. This was not a fair trial.

                                          Respectfully submitted,

                                          _____
                                          Gareth G. Morris
                                          1704 N. Dayton St., Suite 100.
                                          Chicago, Illinois 60614
                                          312 943-6178

                                          COUNSEL FOR DEFENDANT-APPELLANT

**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | On appeal from the United |
| ) | States District Court for the |
| Plaintiff-Appellee, ) | Southern District of Illinois |
| ) | (East St. Louis) |
| ) | |
| vs. ) | No. 07 CR 30179 |
| ) | |
| CARL A. COURTRIGHT, III, ) | Honorable David R. Herndon |
| ) | United States District Judge, |
| Defendant-Appellant. ) | Presiding. |

---

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

The undersigned certifies that this reply brief complies with the volume limitations of Federal Rule of Appellate Procedure 32 and Circuit Rule 32, in that it contains 13 pages.

_____
Gareth G. Morris
1704 N. Dayton St., Suite 100.
Chicago, Illinois 60614
Phone: (312) 943-6178

14

**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | On appeal from the United |
| ) | States District Court for the |
| Plaintiff-Appellee, ) | Southern District of Illinois |
| ) | (East St. Louis) |
| ) | |
| vs. ) | No. 07 CR 30179 |
| ) | |
| CARL A. COURTRIGHT, III, ) | Honorable David R. Herndon |
| ) | United States District Judge, |
| Defendant-Appellant. ) | Presiding. |

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned, counsel for Defendant-Appellant, hereby certifies that he has complied with Circuit Rule 31(e) requiring electronic filing of this brief (and any non-scanned PDF items).

_____
Gareth G. Morris
1704 N. Dayton St., Suite 100.
Chicago, Illinois 60614
Phone: (312) 943-6178

3

**No. 09-2880**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | On appeal from the United |
| | ) | States District Court for the |
| Plaintiff-Appellee, | ) | Southern District of Illinois |
| | ) | (East St. Louis) |
| | ) | |
| vs. | ) | No. 07 CR 30179 |
| | ) | |
| CARL A. COURTRIGHT, III, | ) | Honorable David R. Herndon |
| | ) | United States District Judge, |
| Defendant-Appellant. | ) | Presiding. |

---

**NOTICE OF FILING AND PROOF OF SERVICE**

TO:    Clerk,
       United States Court of Appeals for the Seventh Circuit,
       219 S. Dearborn St.,
       Chicago, IL  60604

       Nicole Gorovsky, AUSA,
       9 Executive Drive, Suite. 300,
       Fairview Heights, IL 62208

PLEASE TAKE NOTICE that on August 30, 2010, I filed fifteen (15) copies of Appellant's Reply Brief and one copy of said Brief in digital media, formatted in PDF, with the Clerk of the United States Court of Appeals for the Seventh Circuit; served two copies of said Brief and one copy in digital media (pdf) upon all counsel of record, by enclosing said copies in mailing packages addressed as indicated above with postage prepaid, and by depositing said packages in the United States Mail in Chicago, Illinois, on August 30, 2010.

                                    BY:_____
                                        Gareth G. Morris