No. 09-2880

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) On appeal from the United |
| | ) States District Court for the |
| Plaintiff-Appellee, | ) Southern District of Illinois |
| | ) (East St. Louis) |
| v. | ) |
| | ) No. 07 CR 30179 |
| | ) |
| **CARL A. COURTRIGHT, III,** | ) Honorable David R. Herndon |
| | ) United States District Judge, |
| Defendant-Appellant. | ) Presiding |

**MOTION TO RECALL MANDATE**

CARL A. COURTRIGHT, III,
Fed. Reg. # 07860-025
P.O. Box 24550
Tucson, Arizona  85734

DEFENDANT-APPELLANT,
Pro Se

U.S.C.A.~7th Circuit
FILED
MAR 17 2011 EF
GINO J. AGNELLO
CLERK

MAR 17 2011 EF
GINO J. AGNELLO
CLERK

1

COMES NOW the Appellant in this action, Carl A. Courtright (hereinafter "Courtright" or "Appellant" or "Defendant" as the context may, from time to time, require) proceeding before this Honorable Court in propia persona and seeking a Motion to Recall the Mandate of February 4, 2011 closing the appeal and returning the case to the District Court.

On January 13, 2011, this Court issued its opinion on this case. The Appellant was not notified of the opinion until January 19, 2011 (see date stamp on envelope, copy enclosed). On January 25, 2011, Appellant e-mailed his attorney, Gareth Morris, requesting that a motion be filed for En Banc Rehearing and including a copy of the proposed motion (see enclosed copy of e-mail). On January 26, 2011, Appellant placed in the mail at USP Tucson a formal copy of Motion to Rehear with Recommended En Banc along with a Certificate of Service for same motion being sent to the U.S. Attorney Suzanne Garrison. The Motion was returned to Appellant with a notice (see enclosed copy) from this Court that a Motion to Close and Transfer to District Court had been filed on February 4, 2011, along with instructions to file a Motion to Recall the Mandate. Accordingly, the Appellant is filing this Motion to Recall the Mandate of February 4, 2011 and to have his case returned to the Appeals Court for further review.

In support of his Motion to Recall the Mandate, the Appellant would affirmatively state:

## VIOLATION OF DUE PROCESS

The Triumvirate of this Court, in its statement, said:

> Finally, Courtright called no witnesses and
> offered no evidence of his innocence...
> -II ANALYSIS, p. 13-14

This violated the Appellant's rights by placing the burden on the defense
to prove innocence when jurisprudence dictates that the burden is upon the
government to prove guilt beyond a reasonable doubt.  In effect, the
Appellant was "affirmed" guilty by this Court for exercising his Constitu-
tioally-bound rights to be presumed innocent -- rights in which the Framers
of the Constitution believed an innocent person(s) would not be presumed
guilty by failure to prove his/her innocence.

## MISAPPLICATION OF FACT

As an initial point of concern, it should be pointed out that the
Panel of this Circuit relied on information in some circumstances not in
the record of the transcript of the court below, and in other circumstances
erroneously considered.

One such example of this misapplication of facts is shown when the
Panel of the Court of Appeals stated:

> Courtright fashions himself as something of an
> amateur photographer.  Unfortunately, the
> subjects of his photographs are underage girls
> engaged in various sexual activities.  Courtright
> first took up his hobby in 1998, when he met
> a fifteen-year-old girl, L. Miller, through
> his roommate.
> -BACKGROUND, p. 2

Though this sounds damning, the incident in which the Panel derived
its BACKGROUND from was dismissed by the Madison County, Illinois Criminal
Court in approximately September 2000, making such foundation without any
basis in law or fact.

To base this Court's decision on some material in which it clearly
considers having been erroneously admitted by the court below (SEE page 1
of the Court's OPINION) is to commit the very same error which this Court
found was committed by the district court.  There was never any finding of

guilt "beyond a reasonable doubt" to substantiate any of the claims in the
State's case.  Without a finding of guilt, the Court of Appeals is ill-equipped
to say that Courtright was guilty of anything.  To hold otherwise would be to
abrogate the institution of Trial By Jury, so essential to the Anglo-American
concept of Criminal Justice.  Whether or not Courtright had any inappropriate
contact with L. Miller in this regard is germane to the issue of the APPEAL
BECAUSE THE Court of Appeals for the Seventh Circuit relied heavily enough
on these erroneous factoids to include them in the consideration of Courtright's
claims on appeal, thereby depriving him of the right to have his cause deter-
mined on the merits of his claim, without resort to erroneously included
information.

To do so has deprived Courtright of the right to Due Process of the
Laws, as that term is understood within the context of the Fifth Amendment.

En banc review should not be withheld when it is clear, from the
facts and evidence of both the district court and the Panel, that the Panel
which initially decided the matter based its decision on blatantly erroneous
information.

Further, the Court's Panel stated:

> After forging a friendship with Miller, Courtright
> persuaded Miller to pose for explicit photographs.
> -BACKGROUND, p.2

This also appears to place Courtright in the position of a director
and organizer of contact with a minor that is prohibited by law.  But the
evidence at trial paints quite an opposite portrait of the events in which
the Panel relies:

> 18   Q.  Okay.  And you guys thought it was a good
>           idea to have
> 19   pictures taken, didn't you, at the time?
> 20   A.  Yes.
>      -CROSS_EXAM of Lisa Miller, Vol. III, pg. 161

There is a stark difference between Courtright directing Miller to

pose explicitly and Miller and someone else thinking "it was a good idea to have pictures taken...."

The Panel also declared that, "Some of the images were found on a desktop that was password-protected for Courtright's sole access...." (OPINION, p.4). Where, in any transcript from the court below, does it say that any illegal or unlawful images were found on any desktop belonging to Courtright? Where any images were alleged to have been found is critical to the question of guilt. If the Government possessed a desktop computer with images used to convict Courtright, defense counsel should, in keeping with principles of adversarial criminal justice, be allowed to test such a device, and any images alleged by the Government to have come therefrom, to determine if the Government's claims hold true. That is the nature of our adversarial system. But the Panel doesn't stop there. No, they go on to claim that this same desktop yielded evidence that, "...on multiple occasions, the pornographic images were opened around the same time that Courtright's online bank account or social networking profile was accessed." (OPINION, p.4). Not only has the Panel concocted a version of events that does nothing to comport with the evidence offered in the court below, it does so by erecting circumstances that would paint Courtright as a guilty party wholly contrary to the evidence the Panel was obliged to consider.

Maybe the Court's Panel looked at a different case(s) on accident and blended the two mistakenly after long hours at work. No matter the scenario, Courtright is automatically the loser when his case is not decided on its merits but on information the Court of Appeals knows, or, being reasonably prudent jurists, should know, is false.

Indeed, the Panel's reliance upon false information is nothing short of mesmerizing. The Panel claims:

> In both crimes, the perpetrator took time
> to develop a relationship with the victims,
> bought gifts for them, and engaged in
> sexually explicit acts with them under the
> auspices of prividing medical advice.  In
> addition, there was a nine-year gap between
> the assault of L. Miller and the photo shoot
> with S.J.  Courtright was incarcerated --
> and thus incapacitated -- for a large part
> of that time.
>           -OPINION, p.12

The Panel makes a big to-do about the fact that Courtright was incar-
cerated during "...a large part..." of the time in the nine-year period
between the alleged sexual victimization of L. Miller and S.J.  Is this the
truth, or another example of flights of fancy engaged in by the Panel?
Well, Courtright served approximately twelve months during the nine-year
gap the Panel refers to in the above-quoted OPINION.  Relatively, twelve
months is a long period of time, especially to be deprived of Liberty.  But
is twelve months, as the Panel says, "a large part" of a nine-year time span?
Of course, it is not.  Because it is not, one must wonder about the motiva-
tion for making such a claim and the other sometimes-outlandish claims it
has made in its OPINION.  It's as if the Panel cannot distinguish between the
record and its own scenarios.  Where the record says "this," the Panel says
"that."  Where the record says "up," the Panel says "down."

DISCUSSION:

In toto, the Panel's resort to erroneous information to AFFIRM the
conviction and sentence in this case denied Courtright of the right to be
heard in a meaningful manner on APPEAL.

The Panel's flight to Rule 413 is likewise improper.  The Sixth
Article in Amendment to the Constitution for these United States of America
guarantees a criminal-action defendant will be convicted only upon proof
beyond a reasonable doubt.  Now, the court below admitted an accusation
of criminal sexual conduct based upon a charge that was not proven beyond

6

a reasonable doubt, and therefore did not result in a conviction. Without
an evidentiary hearing, this Court must be left with the firm conviction
that inclusion of this prior allegation, in a sexual misconduct with a minor
case, played, at the least, a de minimus role in the jury's decision to
convict Courtright because it made Courtright appear to be the "type"
of a person that would be guilty of the crimes as alleged by the Government,
instead of convicting him on the merits of the Government's onus, beyond
a reasonable doubt. Such an error defies harmless error analysis. Courtright
is therefore entitled to a new trial, absent the inclusion of the Rule 413
Prior Bad Act. In this regard, the prejudicial effect of the inclusion of
the Rule 413 evidence far outweighed such inclusion's probative value in
that it subjected Courtright to conviction on innuendo instead of the proper
reasonable doubt standard. The conviction CANNOT STAND.


## CONCLUSION

Courtright hereby humbly seeks the Motion to Recall the Mandate
in the above captioned case and any other ruling that may be deemed appropriate
and necessary to prevent any miscarriage of justice by this Court, minus
the previously relied upon erroneous information in this Courts previous
Opinion dated January 13, 2011, so that Courtright might have a chance at
being heard in a reasonable manner, in accordance with the guarentees of
the Fifth Amendment's Due Process of Law Clause on his conviction and sentence.

Any questions, concerns, or comments the Honorable Court may have
regarding this request for Motion To Recall the Mandate of January 13, 2011
should be addressed to Courtright at the address provided, infra.

Thanking this Honorable Court for its valuable time and attention
in ths matter.

Carl Albert Courtright III
Fed.id# 07860-025
USP Tucson
P.o.box 24550
Tucson, AZ - 85734 - 4550
United States

Respectfully,

## CERTIFICATE OF SERVICE

I,  <u>Carl Courtright, III</u>  , hereby certify that I have
served a true and correct copy of the following:

Motion to Recall Mandate

Which is deemed filed at the time it was delivered to prison
authorities for forwarding to the court, Houston v. Lack, 101
L.Ed.2d 245 (1988), upon the court and parties to litigation
and/or his/her attorney(s) of record, by placing same in a
sealed, postage-prepaid envelope addressed to:

> Assistant United States Attorney
> Office of the United States Attorney
> Nine Executive Drive
> Fairview Heights, Illinois

and depositing same in the United States Postal Mail at the
United States Penitentiary at <u>Tucson, Arizona</u> .

Signed on this <u>14th</u> day of <u>March</u> , 2011.

Respectfully submitted,

Reg. No.

Carl A. Courtright, III
#07860-025
Tuscon – USP
P.O. Box 24550
Tuscon AZ 85734

Gareth Morris
Law Offices of Gareth Morris
1704 N. Dayton St., Suite 100
Chicago, Illinois 60614

LEGAL MAIL
CONFIDENTIAL

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FROM: 07860025
TO: Morris, Gareth
SUBJECT: Motion to Re-hear
DATE: 1/25/2011 9:29:00 PM


Gareth,

I understand your opinion, but I would respectfully request that you file the below motion asap.

Sincerely,
/s/Carl Courtright


IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
CHICAGO, ILLINOIS

_____

NO: 09-2880

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

CARL A. COURTRIGHT, III,
Defendant-Appellant.

_____

REQUEST FOR REHEARING
WITH SUGGESTION FOR
REHEARING EN BANC

_____

COMES NOW the Appellant in this action, Carl A. Courtright (hereinafter "Courtright" or "Appellant" as the context may, from time to time, require) proceeding before this Honorable Court in propia persona and seeking REHEARING, EN BANC, of the decision reached by OPINION of a triumvirate of this Court.  Appellant humbly asks that this OPINION be more carefully considered in light of the record of the Court of Record, below.

In support of his REQUEST for rehearing, en banc, courtright would affirmatively state:

MISAPPLICATION OF FACT:
_____

As an initial point of concern, it should be pointed out that the Panel of this Circuit relied on information in some circumstances not in the record of the transcript of the court below, and in other circumstances erroneously considered.

One such example of this misapplication of facts is shown when the Panel of the Court of Appeals stated:

Courtright fashions himself as something of an amateur photographer.  Unfortunately, the subjects of his photographs are underage girls engaged in various sexual activities.  Courtright first took up his hobby in 1998, when he met a fifteen-year-old girl, L. Miller,

--------------------------------------------------------------------------------

through his roommate.
--BACKGROUND, p.2

Though this sounds damning, the incident in which the Panel derived its BACKGROUND from was dismissed by the Madison County, Illinois Criminal Court, in approximately September 2000, making such foundation without any basis in law or fact.

To base this Court's decision on some material in which it clearly considers having been erroneously admitted by the court below (SEE page 1 of the Court's OPINION) is to commit the very same error which this Court found was committed by the district court. There was never any finding of guilt "beyond a reasonable doubt" to substantiate any of the claims in the State's case.  Without a finding of guilt, the Court of Appeals is ill-equipped to say that Courtright was guilty of anything.  To hold otherwise would be to abrogate the institution of Trial By Jury, so essential to the Anglo-American concept of Criminal Justice.  Whether or not Courtright had any inappropriate contact with L. Miller in this regard is germane to the issue of the APPEAL because the Court of Appeals for the Seventh Circuit relied heavily enough on these factoids to include them in the consideration of Courtright's claims on appeal, thereby depriving him of the right to have his cause determined on the merits of his claim, without resort to erroneously-included information.

To do so has deprived Courtright of the right to Due Process of the Laws, as that term is understood within the context of the Fifth Amendment.

En banc review should not be withheld when it is clear, from the facts and evidence of both the district court and the Panel, that the Panel which initially decided the matter based on it's decision on blatantly erroneous information.

Further, the Court's Panel stated:

After forging a friendship with Miller, Courtright persuaded Miller to pose for explicit photographs.
--BACKGROUND, p. 2

This also appears to place Courtright in the position of a director and organizer of contact with a minor that is prohibited by law. But the evidence at trial paints quite an opposite portrait of the events in which the Panel relies:

18  Q.  Okay.  And you guys thought it was a good idea to have
19      pictures taken, didn't you, at the time?
20  A.  Yes.
--CROSS-EXAM of Lisa Miller, Vol III, pg 161

There is a stark difference between Courtright directing Miller to pose explicitly and Miller and someone else thinking, "...it was a good idea to have pictures taken...."

The panel also declared tha, "Some of the images were found on a desktop that was password-protected for Courtright's sole access...." (OPINION, p. 4).  Where, in any transcript from the court below, does it say that any illegal or unlawful images were found on any desktop belonging to Courtright?  Where any images were alleged to have been found is critical to the question of guilt.  If the Government possessed a desktop computer with images used to convict Courtright, defense counsel should, in keeping with principles of adversarial criminal justice, be allowed to test such a device, and any images alleged by the Government to have come therefrom, to determine if the Government's claims hold true.  That is the nature of our adversarial system.  But the Panel doesn't stop there.  No, they go on to claim that this same desktop yielded evidence that, "...on multiple occasions, the pornographic images were opened around the same time that Courtright's online bank account or social networking profile was accessed." (See OPINION, p. 4)  Not only has the Panel concocted a version of events that does nothing to comport with the evidence offered in the court below, it does so by erecting circumstances that would paint Courtright as a guilty party wholly contrary to the evidence the Panel was obliged to consider.

Maybe the Court's Panel looked at a different case(s) on accident and blended the two mistakenly after long hours at work.  No matter the scenario, Courtright is automatically the loser when his case is not decided on the merits but on information the Court of Appeals knows, or, being reasonably prudent jurists, should know, is false.

Indeed, the Panel's reliance upon false information is nothing short of mesmerizing.  The Panel claims:

In both crimes, the perpetrator took time to develop a relationship with the victims, bought gifts for them, and engaged in sexually

-----------------------------------------------------------------------------------------------------

explicit acts with them under the auspices of providing medical advice. In addition, there was a nine-year gap between the assault of L. Miller and the photo shoot with S.J., Courtright was incarcerated -- and thus incapacitated -- for a large part of that time. --OPINION, p. 12

The Panel makes a big to-do about the fact that Courtright was incarcerated during "...a large part..." of the time in the nine-year period between the alleged sexual victimization of L. Miller and S.J. Is this the truth, or another example of flights of fancy engaged in by the Panel? Well, Courtright served approximately twelve months during the nine-year gap the Panel refers to in the above-quoted OPINION. Relatively, twelve months is a long period of time, especially to be deprived of Liberty. But is twelve months, as the Panel says, "a large part" of a nine-year time span? Of course, it is not. Because it is not, one must wonder about the Panel's motivation for making such a claim and the other sometimes-outlandish claims it has made in its OPINION. It's as if the Panel cannot distinguish between the record and its own scenarios. where the record says "this," the Panel says "that." Where the record says "up," the Panel says "down."

DISCUSSION
_____

In toto, the Panel's resort to erroneous information to AFFIRM the conviction and sentence in this case denied Courtright of the right to be heard in a meaningful manner on APPEAL.

The Panel's flight to Rule 413 is likewise improper. The Sixth Article In Amendment to the Constitution for these United States of America guarantees a criminal-action defendant will be convicted only upon proof beyond a reasonable doubt.

Now, the court below admitted an accusation of criminal sexual conduct based upon a charge that was not proven beyond a reasonable doubt, and therefore, did not result in a conviction. Without an evidentiary hearing, this Court must be left with the firm conviction that inclusion of this prior allegation, in a sexual misconduct with a minor case, played, at the least, a de minimus role in the jury's decision to convict Courtright because it made Courtright appear to have been the "type" of person that would be guilty of the crimes as alleged by the Government, instead of convicting him on the merits of the Government's onus, beyond a reasonable doubt. Such an error defies harmless error analysis. Courtright is therefore entitled to a new trial, absent the inclusion of the Rule 413 Prior Bad Act. In this regard, the prejudicial effect of the inclusion of the Rule 413 evidence far outweighed such inclusion's probative value in that is subjected Courtright to conviction on innuendo instead of the proper reasonable doubt standard. The conviction CANNOT stand.

CONCLUSION
_____

Courtright hereby humbly seeks en banc review of the above-captioned cause by a Panel of sitting Justices of this Honorable Court, minus the erroneous information, so that he might have a chance at being heard in a reasonable manner, in accordance with the guarantees of the Fifth Amendment's Due Process of Law Clause on his conviction and sentence.

Any question, concerns, or comments this Honorable Court may have regarding this Request for Rehearing With Suggestion for Rehearing En Banc should be addressed to Courtright at the address provided, infra.

Thanking this Honorable Court for its valuable time and attention in this matter.

Respectfully,


_____
Carl A. Courtright, III
Fed. Reg. #07860-025
United States Penitentiary
P.O. Box 24550
Tucson, Arizona  85734-4550

xc: cac,iii
     Suzanne Garrison
     file

**United States Court of Appeals**
**For The Seventh Circuit**
219 South Dearborn Street
Chicago, Illinois 60604

Re:  09-2880

Dear Sir or Madam,

I am returning these documents to you unfiled.

The mandate of this court issued on 2/4/11 which returned the case to the District Court and closed the appeal in this court.

The only filing we could accept in this appeal at this time would be a motion to recall the mandate.

The court requires an original & 3 copies of bound motions with a motion title listing the relief you are requesting, along with a proof of service on the other party.

Sincerely,

Pro Se Clerk

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2880

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CARL A. COURTRIGHT, III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:07-cr-30179—**David R. Herndon**, *Chief Judge.*

ARGUED OCTOBER 29, 2010—DECIDED JANUARY 13, 2011

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Carl Courtright was convicted of production, possession, and receipt of child pornography and sentenced to life plus ten years in prison. Courtright now appeals his conviction, claiming that evidence of a prior sexual assault was erroneously admitted at trial and that certain jury instructions were improper. While we agree that the evidence of Courtright's prior sexual assault was admitted erroneously and

that some of the jury instructions may have been incorrect, reversal is unnecessary because these errors were harmless. As such, we affirm Courtright's conviction.

## I. BACKGROUND

Courtright fashions himself as something of an amateur photographer. Unfortunately, the subjects of his photographs are underage girls engaged in various sexual activities. Courtright first took up his hobby in 1998, when he met a fifteen-year-old girl, L. Miller, through his roommate. After forging a friendship with Miller, Courtright persuaded Miller to pose for explicit photographs. As part of Courtright's photo shoot, he directed Miller into various poses and took pictures of her exposed breasts and genitalia. At one point during the shoot, Courtright told Miller that he had some medical knowledge and needed to examine her. He then inserted his fingers into her vagina. After this conduct came to light, Courtright pled guilty to aggravated sexual abuse pursuant to ILCS 5/12-16(a)(2). As a result of that conviction, Courtright had to register as a sex offender.

In 2007, the Illinois Attorney General began a probe of social networking sites to determine whether registered sex offenders were active users. This investigation revealed that Courtright had an account on Myspace.com. Officers used the Myspace.com records to learn Courtright's IP address, which they fed into a database of addresses found to have offered child pornography for distribution on the Internet. The IP address Courtright used to check his Myspace.com account matched

one used to download child pornography through a file-sharing program called Limewire. Officers used this information to obtain a warrant to search Courtright's residence, where he lived with his parents.

During the search of Courtright's home, officers found several computers and computer equipment. A forensic preview of a laptop found in Courtright's bedroom showed that the hard drive contained child pornography images downloaded through Limewire. In subsequent interviews, Courtright admitted that he was the only user of Limewire in the home and of the laptop found in his bedroom. He went on to state, somewhat ironically, that he downloaded the images after watching an episode of *To Catch a Predator*.[1] He claimed that he was curious about how pornographic images were disseminated and that, after satisfying his curiosity, he immediately deleted the images.

A more detailed analysis of the computers seized from Courtright's home revealed a large inventory of images

---

[1] *To Catch a Predator* was an NBC television program that tracked sexual predators as they used the Internet to engage in explicit communications with apparent minors. Each episode typically culminated with the predator arriving at the home of the presumed minor, often carrying alcohol and contraceptives in a ubiquitous brown bag. The predator was greeted first by a "decoy"—an adult actor who appeared underage—and then by host Chris Hanson and a television crew. *See* Comment, Loren Rigsby, *A Call for Judicial Scrutiny: How Increased Judicial Discretion Has Led to Disparity and Unpredictability in Federal Sentencing for Child Pornography*, 33 Seattle U. L. Rev. 1319, 1338 (2010).

depicting child pornography, many of which were not deleted. Some of the images were found on a desktop that was password-protected for Courtright's sole access, while others were found on a laptop that Courtright had already conceded was for his lone use. The computers' records also showed that, on multiple occasions, the pornographic images were opened around the same time that Courtright's online bank account or social networking profile was accessed. An analysis of the image files showed that the majority of them were downloaded off of the Internet, while eleven others were transferred to the hard drive directly from a Hewlett-Packard camera. The same girl was depicted in each of the camera photos, but she was not readily identifiable—her face was obscured and bandages were applied to identifying marks.

Officers later identified the mystery girl as S.J., a fourteen-year-old who lived with her father in the garage of a residence owned by Courtright's parents. During a teary interview, S.J. recounted the events that led to the photos being taken. She told officers that Courtright first bought her gifts and let her sleep in a bedroom he often occupied in the adjacent house. After the two became acquainted, Courtright offered to give her lotion rubs and massages, going so far as to rub lotion on her buttocks while telling her to "think of him as a doctor" on one occasion.

S.J. claimed that Courtright eventually asked her to pose for explicit photos. After initially rebuking Courtright's advances, S.J. agreed. At Courtright's direction,

S.J. sat in a director's chair and posed in various stages of undress while Courtright took pictures of her. For one photo, Courtright told S.J. to spit on her hand and masturbate. S.J. told officers that Courtright also put his fingers in her vagina during the shoot, telling her that he knew "medical stuff" and needed to "examine" her. Officers later confronted Courtright with this information. While he admitted to owning a Hewlett-Packard camera, he denied ever taking photos of S.J. and had no explanation for how the photos got onto his hard drive.

Based on information from Courtright's computers, officers also learned that Courtright had been ordained as a minister by an online company. He used this status to create an online ministry and then manufactured fake donation checks. Courtright deposited the checks into an account and then used the sums to make a number of large purchases.

On February 18, 2009, Courtright was charged with one count of production of child pornography, two counts of possession of child pornography, one count of receipt of child pornography, and one count of bank fraud. Prior to trial, the government filed a notice indicating that it planned to introduce evidence of Courtright's prior sexual assault of L. Miller and of Courtright's status as a registered sex offender. Courtright conceded that his status as a sex offender was intertwined and admissible, and the district court admitted it on that basis. But Courtright objected to the admission of his prior sexual assault. The district court ultimately agreed with the government and, after determining that the evidence

was relevant and not unduly prejudicial, admitted it pursuant to Rule 413.

The trial began on March 2, 2009, and lasted five days. On the first day of testimony, the district court gave an erroneous elements instruction to the jury, to which the government objected. On the following day, the district court recognized the problem and corrected the elements instruction, despite Courtright's argument that the initial instruction was correct.

During the remainder of the trial, the government called fourteen witnesses. The witnesses included forensic experts and investigating officers who had participated in the investigation, who testified to the contents of the hard drives and Courtright's statements to law enforcement, respectively. S.J. also testified as to all of the details she had previously told officers, with one exception—she did not state that Courtright had inserted his fingers into her vagina during the photo shoot. S.J.'s father testified that Courtright had asked him about taking photographs of S.J. Courtright's cellmate testified that Courtright had admitted to taking pictures of a young girl. Finally, L. Miller testified about the details of Courtright's prior sexual assault, with the district court giving a limiting instruction before and after her testimony. Courtright presented no witnesses.

Following closing arguments, the jury found Courtright guilty of all counts. The district court sentenced him to life plus 120 months' imprisonment for the production count, 240 months' imprisonment for the possession counts, 480 months' imprisonment for the receipt count,

and 360 months' imprisonment for the fraud count. Courtright timely appealed his conviction.

## II. ANALYSIS

On appeal, Courtright argues that the district court made a number of errors warranting a new trial. He claims that evidence of his prior sexual assault was erroneously admitted, that a number of the jury instructions were improper, and that the cumulative effect of these errors deprived him of a fair trial. We will address each argument in turn.

### A. Prior Bad Act

Courtright's first claim is that the district court erred when it admitted evidence of his prior sexual assault. We review a district court's interpretation of the rules of evidence *de novo* and its decision to admit evidence for an abuse of discretion, *United States v. Rogers*, 587 F.3d 816, 819 (7th Cir. 2009), mindful that evidentiary errors do not require reversal if they were harmless, *United States v. Taylor*, 604 F.3d 1011, 1016 (7th Cir. 2010).

The district court admitted the prior sexual assault pursuant to Federal Rule of Evidence 413. Rule 413 provides, in relevant part:

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may

> be considered for its bearing on any matter to
> which it is relevant.

Fed. R. Evid. 413(a). In admitting the evidence, the
district court interpreted the word "accused" broadly,
holding that Rule 413 is triggered when a defendant has
been verbally accused of sexual assault during the course
of an investigation into a separate offense. Courtright
takes issue with this interpretation of Rule 413, arguing
that Rule 413 applies only when a party has been charged
with an "offense of sexual assault" in the indictment.

We do not agree with the district court's reading of
Rule 413. The district court's interpretation was based
on the fact that Rule 413 uses the word "accused" instead
of "charged" to indicate when it is triggered. The govern-
ment defends the district court's reading by noting that,
because the rule drafters use the word "charged" else-
where, the use of the word "accused" in this instance
should be given broader effect. We believe the govern-
ment makes too much of this distinction—at the time
Rule 413 was drafted (and today), the word "accused" was
often used in a technical sense to describe someone
who was charged with a crime. *See Black's Law Dictionary*
22-23 (6th ed. 1990) (defining "accuse" as "to bring a formal
charge against a person"); *Webster's Third New International
Dictionary* 14 (1986) (defining "accuse" as, among other
things, "to charge with an offense judicially or by public
process"). There is nothing in the text or committee notes
of Rule 413 to indicate that the word "accused" was used
in a broader fashion.

We find additional support for this reading of Rule 413 in nearby Rule 412. Rule 412 permits the admission of a victim's sexual behavior by the accused in certain limited circumstances. The committee notes to Rule 412 specify that, for this Rule, "accused" is meant in a broader, "non-technical sense," and that there is "no requirement that there be a criminal charge pending against the person or even that the misconduct would constitute a criminal offense" before evidence of a victim's sexual behavior can be admitted. Fed. R. Evid. 412 advisory committee's note. Rule 413 provides no similar clarification for the use of the word "accused," nor do the rest of the rules.

We therefore conclude that Rule 413 uses the term "accused" in the more narrow, technical sense generally invoked throughout the federal rules.[2] *See* 23 Charles Alan Wright & Michael W. Graham, *Federal Practice and*

---

[2] The more difficult question is whether Courtright was indeed charged with an "offense of sexual assault." Rule 413 defines "offense of sexual assault" quite expansively, stating that it includes a crime "that involved . . . contact, without consent, between any part of the defendant's body or an object and the genitals or an anus of another person." We can imagine an argument that Courtright's charge of production of child pornography "involved" a sexual assault because S.J. initially reported that Courtright touched her vagina during the photo shoot. *Cf. United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005) (noting the possible breadth of the "involved" language). But neither side made this argument, so we need not address it today.

*Procedure* § 5413, at 549-50 (Supp. 2010) ("Since [Rule 413] does not employ the language of Revised Rule 412, it seems reasonable to suppose that the words are used in the technical sense; that is, the evidence of other sexual crimes is only admissible against a criminal defendant and only if the crime charged is sexual assault.").

So we are left with the district court's admission of evidence pursuant to an erroneous interpretation of Rule 413. "[A]n error of law is, by definition, an abuse of discretion." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). But this error would be harmless, and no new trial would be necessary, if the evidence was admissible under another rule. *United States v. Albiola*, 624 F.3d 431, 437 (7th Cir. 2010). The government argues that the error was harmless because the evidence was also admissible pursuant to Rule 404(b). Evidence is admissible under Rule 404(b) if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Stotler*, 591 F.3d 935, 941 (7th Cir. 2010).

The government claims that the first prong is satisfied because the prior bad act evidence was admissible to

prove Courtright's intent, motive, or identity. We agree that the evidence was at least probative of Courtright's motive. L. Miller's testimony shows that, in the past, Courtright engaged in sexually explicit contact with an underage girl. This prior instance of sexual misconduct tends to establish a motive for the crime against S.J.: Courtright may have induced S.J. to take the pictures so that he could again achieve sexual gratification with a minor. *See United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (finding that prior bad acts toward a young victim may show that a defendant has a sexual interest in that age group and therefore provide evidence of a motive to commit future sexually motivated crimes against children); *United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996) ("Most people do not have a taste for sexually molesting children. As between two suspected molesters, then, only one of whom has a history of such molestation, the history establishes a motive that enables the two suspects to be distinguished.").

The government also claims that the second and third prongs are satisfied, and we agree. Admittedly, there was one distinction between the two crimes—in the first, Courtright actually sexual assaulted the victim during the course of the photo shoot, while in the second he only encouraged her to touch herself in an explicit manner while taking the photographs. But the two crimes are still similar in important respects. In both crimes, the perpetrator took time to develop a relationship with the victims, bought gifts for them, and engaged in sexually explicit acts with them under the auspices of providing medical advice. In addition, although there was

a nine-year gap between the assault of L. Miller and the photo shoot with S.J., Courtright was incarcerated—and thus incapacitated—for a large part of that time. Finally, Courtright was found guilty by a jury of the prior bad act.

The government finally argues that the last prong is satisfied because the district court found the evidence probative, analyzed it under Rule 403, and determined that any prejudice could be cured via a limiting instruction. But, as Courtright correctly points out, the trial court conducted a Rule 403 prejudice analysis on the premise that the evidence was being admitted under Rule 413. Rule 413 expressly allows the government to use prior bad acts to show that a defendant acted in conformity therewith—in other words, for propensity purposes. Accordingly, a Rule 413 prejudice analysis is limited and focuses on other sources of prejudice. *Rogers*, 587 F.3d at 823.

Unlike a prejudice analysis for Rule 413, a Rule 404(b) prejudice determination also evaluates whether the evidence will be improperly used by the jury as proof of propensity. *Id.* The risk of a jury using the evidence for this purpose is particularly high where, as here, the prior bad act may establish an addiction to something—like pyromania, drug use, or sexual gratification through the assault of minors—and thus a motive to commit that crime again. *Cunningham*, 103 F.3d at 556. Especially in sex crimes, motive and propensity often dovetail, and a court must be careful "about admitting under the rubric of motive evidence that the jury is

likely to use instead as a basis for inferring the defendant's propensity." *Id.* at 557. The government does not address this propensity problem in its brief, and "we are not in the business of formulating arguments for the parties." *United States v. McClellan*, 165 F.3d 535, 550 (7th Cir. 1999). Accordingly, the government's Rule 404(b) argument is incomplete and waived.

But even assuming the prior bad act evidence was not admissible, reversal is unnecessary if the error had no effect on the outcome of the trial. *United States v. Conner*, 583 F.3d 1011, 1025 (7th Cir. 2009). We are convinced that is the case here. Courtright's status as a sex offender was already before the jury, and thus the likelihood that the prior bad act testimony from L. Miller had any effect on the jury is negligible. More importantly, the evidence of Courtright's guilt was overwhelming. *See United States v. Dennis*, 497 F.3d 765, 769-70 (7th Cir. 2007) (finding harmless error when there was abundant evidence of the defendant's guilt). The images of S.J., along with numerous other images of child pornography and data on the bank fraud scheme, were found on two computers at Courtright's home. Courtright admitted that one of the computers was his, and only Courtright had access to the second. Courtright also stated to law enforcement that he had downloaded a number of the child pornography images found on his hard drives. Furthermore, S.J. testified that Courtright took the pictures of her, her father testified that Courtright asked about taking pictures of S.J., and Courtright's cellmate testified that Courtright confessed to taking pictures of a young girl. Finally, Courtright called no witnesses and

offered no evidence of his innocence, lending further support to a finding of harmless error. *See United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008).

### B. *Jury Instructions*

Courtright's second claim on appeal is that a number of the jury instructions were erroneous. Courtright did not object to these instructions at trial, so we review for plain error. *United States v. Noel*, 581 F.3d 490, 499 (7th Cir. 2009). To establish plain error, Courtright must show that there was an actual error, that the error was plain, that the error "affect[ed] the defendant's substantial rights," and that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Canady*, 578 F.3d 665, 670 (7th Cir. 2009). Plain error review of jury instructions is "particularly light handed," and we will reverse only if the error was of such a "great magnitude that it probably changed the outcome of the trial." *United States v. Moore*, 115 F.3d 1348, 1362 (7th Cir. 1997).

Courtright first takes issue with the initial elements instruction, which was given as a preliminary instruction at the beginning of the trial. That instruction informed the jury that the government had to prove an additional element for the production and possession counts—namely that the "defendant had been previously convicted of a sex offense in which a minor was the victim" for the production count and that the "defendant had a prior conviction . . . relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving

a minor . . . or the production, possession, receipt, mailing, sale, [or] distribution . . . of child pornography" for the possession count. The government realized the additional elements were erroneous and objected. Courtright countered that the instruction was appropriate, but the district court corrected the instruction the following day.

We need not determine whether the initial elements instruction was erroneous because Courtright has waived this claim. A defendant waives an objection to a jury instruction when he affirmatively approves the instruction at issue. *United States v. DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009). By opposing the government's initial objection to the elements instruction and indicating that the instruction was correct, we conclude that Courtright approved the initial instruction and thus foreclosed any appellate review.

Courtright next claims that the corrected jury instruction was erroneous. The argument goes: because the initial instruction provided that the government had to show that Courtright engaged in child molestation in the past, the jury believed that Courtright had actually engaged in child molestation. Without a clear explanation of the differences between the initial instruction and the corrected instruction, Courtright claims that this erroneous belief persisted throughout the trial. We find this argument unpersuasive for a number of reasons. First, as discussed above, Courtright sanctioned the very instruction that produced this purported belief. Second, and more importantly, an error is not plain unless it was extraordinary—so "obvious, crucial, and

egregious that we may and should correct it even though no objection was made below." *Backwater, Inc. v. Penn-American Ins. Co.*, 448 F.3d 962, 965 (7th Cir. 2006). We do not believe that the district court's omission of specific advice regarding the differences between the initial preliminary instruction and the corrected preliminary instruction clears this hurdle.

Courtright finally claims that the limiting instructions given before and after L. Miller's testimony were erroneous, not just because her testimony should not have been considered by the jury at all, but also because the language of the instructions improperly suggested that Courtright was presently charged with a crime of sexual assault and that he was a child molester. We need not determine whether these instructions were erroneous for the simple reason that any error flowing from them had no effect on the outcome of the trial. *See United States v. Peters*, 435 F.3d 746, 754 (7th Cir. 2006). As we have already noted, the evidence of Courtright's guilt was overwhelming, and he has not established that the jury's consideration of his prior offense had an appreciable impact on the verdict. Accordingly, we find that Courtright has failed to establish that the instructions were plainly erroneous.

## C. Cumulative Error

Courtright's final claim on appeal is that, even if each of the individual errors was harmless, taken together the errors were so prejudicial as to deprive him of due process. For Courtright to demonstrate cumulative

error, he must show that there were at least two errors committed during the course of the trial and those errors "so infected the jury's deliberation that they denied [him] a fundamentally fair trial." *United States v. Avila*, 557 F.3d 809, 821-22 (7th Cir. 2009).

At the end of the day, the only errors Courtright has established are the admission of his prior sexual assault of L. Miller under Rule 413 and possibly the jury instructions related to that admission. Even if we assume that these interrelated errors suffice to qualify as two independent errors, reversal is appropriate only if "the errors, considered together, could not have been harmless." *Alvarez v. Boyd*, 225 F.3d 820, 825 (7th Cir. 2000). Again, there was abundant evidence of Courtright's guilt, so L. Miller's testimony and the related jury instructions could not have had any appreciable impact on the jury's verdict. Courtright's claim of cumulative error thus fails. *See Avila*, 557 F.3d at 822.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Courtright's conviction.

1-13-11

CERTIFICATE OF SERVICE

I, __Carl A. Courtright, III____, hereby certify that I have

served a true and correct copy of the following:

     (3) copies of Motion to Recall Mandate

Which is deemed filed at the time it was delivered to prison

authorities for forwarding to the court, Houston v. Lack, 101

L.Ed.2d 245 (1988), upon the court and parties to litigation

and/or his/her attorney(s) of record, by placing same in a

sealed, postage-prepaid envelope addressed to:
     Office of the Clerk
     United States Court of Appeals for the Seventh Circuit
     219 S. Dearborn St.
     Chicago, IL  60604-1874

and depositing same in the United States Postal Mail at the

United States Penitentiary at _Tucson, AZ____.

Signed on this _14th__ day of _March_____, 2011.

                    Respectfully submitted,

                    Reg. No.    07860-025