IN THE
UNITED STATES COURT OF APPEALS
FOR THE
SEVENTH CIRCUIT

NO. 09-2880

U.S.C.A. - 7th Circuit
R E C E I V E D
MAR 27 2017  #5
GINO J. AGNELLO
CLERK

On Appeal from the Southern District of ILLINOIS
East St. Louis, No. 09-cr-30179 The Honorable
David R. Herndon Presiding

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )     PRO SE INDIGENT PRISONER'S
                                   )     IN THE INTEREST'S OF JUSTICE
v.                       ..        )     MOTION TO RECALL MANDATE IN
                                   )     THE ABOVE CITED ACTION
CARL ALBERT COURTRIGHT III,        )
                                   )
          Defendant.               )
_____)


COMES NOW, the Defendant, Carl Albert Courtright III, acting

pro se as an indigent Federal Prisoner, to Move for this Court to

Recall its MANDATE in the above case for the following extraordinary

circumstances and in the interests of justice.

JURISDICTION

The Seventh Circuit Court of Appeals has the "inherent authority"

to Recall Mandates issued by the Court to:

A)    Protect the integrity of the Judicial Process

B)    Prevent/Avoid/Correct an injustice

C)    This Inherent Power is absolute

D)    In extraordinary circumstances (when no other relief is

      available to correct an injustice).

As such authority is possessed by this Court, the Defendant

prays the consideration of the Claims Below:

1.

# CLAIMS I

On July 17, 2009, the Defendant was Sentenced to Life + 10 years, Special Assessment of $500, Fines of $1,500, Restitution of $3,100, and $3,100 Forfeiture, (Restitution and Forfeiture's were related to Bank Fraud 18 U.S.C. §1344; §3664; §982).

The Defendant was assigned CJA Counsel Gareth Morris on Appeal. This Court denied Appeal and Affirmed Judgement.

The sole claims on appeal were the abuse of discretion for the improper inclusion of Rule 413/414 evidence because the Defendant was "accused" and not "charged" with current acts which trigger the use of these rules. The Court "agreed", however ruled it a "harmless error". Mr. Morris did not raise any further issues as an advocate for the Defendant in this case.

> "Appellate Counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger." Winters v. Miller, 274 F.3d 1161,1167 (7th Cir 2001)

Although ineffective-assistance-of-counsel claims are "better" brought in the first instance of a §2255, there are some claims of ineffectiveness which cannot be brought on §2255. For example, if Appellate Counsel fails to raise an "issue that is both obvious and clearly stronger.", and counsel's failure is the direct cause of a "waiver" of the issue, (some issues are not cognizable on §2255), then the only way to bring such issues are on a "Recall of Mandate" and the opportunity to adversarial test the otherwise waived (due to ineffective assistance causing said waiver).

Some claims, (e.g. Restitution/Forfeiture), can only be raised on pretrial or appeal motions. When such an order to be relieved of property (monies) is an illegal order, such an order, if left in force, results in a Manifest Injustice as Due Process protects not

2.

only liberty, but life and property.

> "Because a restitution order imposed when it is not
> authorized by the [§3664 Statute] is no less "illegal"
> than a sentence of imprisonment that exceeds the stat-
> utory maximum...." United States v. Broughton-Jones,
> 71 F.3d 1143,1147 (4th Cir 1995).

The same axiom applies to forfeiture orders imposed when it
is not authorized by the §982 statute are no less "illegal" than
a sentence of imprisonment that exceeds the statutory maximum. As
such sentences are illegal, the punishment is "outside the reach of
the law" to punish conduct which the law cannot apply to the Defen-
dant, this Court should exercise its discretion to avoid harm to
the fairness, integrity or public reputation of judicial procee-
dings and inaction would lead to an injustice.

In Calderon v. Thompson, 523 U.S. 538,550, the SCOTUS allows
courts to exercise this inherent power "for good cause or to prevent
injustice". An illegal sentence violative of Due Process is a clear
injustice.

The instant Defendant has zealously been attacking this (and
other) issues in all forms of motions. The record is replete with
the frustrated attempts of the instant Defendant's quest for his
claims to be given "reliable judicial review" by non-biased jurists.
As in this claim, which any lay-person would understand, the answer
is 'too-bad, try again'.

When an appellate attorney is clearly ineffective, and the
claim(s) he failed to raise are excluded from the relief afforded
under §2255, or are deemed "waived" under §2255 by their nature of
failing to be raised, "a §2255 is not a substitute for a direct ap-
peal", then the need to overcome injustice caused by appellate cou-
nsel's ineffectiveness becomes an extraordinary circumstance.

3.

Trial Court Judge David R. Herndon, is believed to know and to be ultimately responsible to ensure that the law is not broken in his courtroom. Judge Herndon is believed to know that the court cannot arbitrarily enter orders of Forfeiture and Restitution because "the government says so".

> "Federal Courts possess no inherent authority to order restitution [or forfeiture] and may only do so as explicitly empowered by statute." United States v Nicholus, 169 F.3d 1255,1278 (10th Cir 1999)

The court was presented with the same Pre-Sentence Report that the defense received. In this PSR at ¶'s 30 the Probation Department clearly stated under "Offense Conduct" the following:

> "On March 13,2007, Courtright attempted to deposit four counterfeit checks totaling §3,100 into the Truth of God Ministries Account."

Even the Probation Department, (acting allegedly independent of the Government), discovered that these 4 checks were only used in an "attempted" deposit. On Page 242 of the transcript for March 4,2009 (Criminal Document 127), Ms. Gorvosky, AUSA, was questioning a Mr. Joesph Stumph from Regions Bank®.

> Q.  What happened with all these checks?...
> A.  Okay, These particular checks were kept. The four checks that were attempted to use on that deposit were kept at the bank in the subject drawer of way. The teller had at the bank read my e-mail alert, and I guess the excitement and everything like that, and the time it took the subject, she kept the checks.

On page 227 of Document 127, AUSA Gorvosky is questioning a Ms. Angela Marie Dailey, the Teller at Regions Bank® whom is alleged to have been the teller who received the 4 checks in question.

> Q.  On that day did you get some kind of information about an account involving Truth of God Ministries?

4.

A. We were told not to accept any deposits, to forward
anything we get from them over to loss pervention...
pg.228
Q. So you got some fhecks that were to be deposited
in Truth of God Ministries?
A. Correct.
Q. What did you do with those checks?
A. I took them into my supervisor and manager because
I was told that we cannot deposit them in the account
because they're not good checks.

Furthermore, the "loss prevention officer" Joseph Stumph had,
prior to the date of this "attempted deposit":
pg.237

A. I placed a hold on the account, and I carded the
debit card associated, and I sent out an e-mail
alert to all branches in the area <u>not to cash checks</u>
based upon the account, and to contact myself.

As the account was "on hold", no checks were authorized to be
deposited or cashed, then as a reault of this "attempted deposit"
of 4 checks as Indicted and Convicted in Count 5 of the Second Sup-
erceding Indictment which equaled $3,100, could not, and was testi-
fied by the bank not to have, caused the loss $3,100. As the bank
did not deposit nor cash these checks, the Defendant did not receive
$3,100 subject to Forfeiture under §982, nor did the bank suffer a
loss of $3,100 as required to support §3664 for Restitution.

The only information of a §3,100 loss was ¶ 33 of the PSR.

33. Regions Bank has not provided a victim impact state-
ment to date. According to the <u>government</u>, the bank
suffered a loss of $3,100 relating to this offense.

So, based upon no evidence of loss, except the "word" of the

government, there is no Statutory Authority to ajudicate an Order which illegally Sentences the Criminal Monetary Penalty of Forfeiture and Restitution of this $3,100 (respectively) that the Defendant did not gain, nor did the bank lose as a result of the 4 checks as found in Count 5.

This Forfeiture and Restitution are a manifest injustice and are not cognizable on any other relief except that of direct appeal. As, this claim of illegal sentence is obvious and clearly stronger than the unknown gamble of challenging the term "accused" in Rule 413, 414, Mr. Gareth Morris, in his failure to challenge these 2 Criminal Monetary Sentences, was ineffective. The prejudice is an obvious conclusion. The Defendant has been forbiden by statutes to challenge these 2 sentences, and is the result of the FBOP and the AUSA attempting to enforce these illegal judgements.

Wherefore, the Defendant prays this Court act in the interests of justice and exercise its inherent powers to recall the mandate in this appeal so that this illegal sentence may be examined and be the cause of Remand to the District Court for re-sentencing absent the illegal sentences of Restitution and Forfeiture.

CLAIM II

Mr. Gareth Morris's ineffective assistance of counsel was also the cause of the Defendant's Claim of IAC for trial counsel's failure to challenge the Second Superceding Indictment for Double Jeopardy Violations. According to the §2255 judge, this was required to be raised on appeal only and was waived from challenge on §2255.

The error(s) in the Second Superceiding Indictment are clearly stronger (case law supports such claims), and any first year law student would know what Double Jeopardy meant in the criminal

sense.

In Count 2, the Defendant was Indicted for 18 U.S.C. § 2252(a)
(4)(B) for Possession of Child Pornography on a "HP Pavillion ZD7000
Laptop"...The images included, but are not limited to the files
and paths named..." Therefore, the Jury could (and did) covict the
Defendant for any images that may have been on this laptop, even if
the images were never identified to the jury, because the charge was
"not limited to" the known images. This "not limited to" language
is overbroad, ambiguous, and allows for arbitrary enforcement as
will be argued.

> "With respect to criminal pleading, indictment must
> fully, directly, and expressly, without any uncert-
> ainty or ambiguity, set forth all elements necessary
> to constitute offense intended to be punished; crime
> must be charged with percision and certainty, and every
> ingredient of which it is composed must be accurately
> and clearly alleged." Evans v. United States, 153 U.S.
> 584

The Indictment is defective and may be raised at any time. It
is more telling when one discovers that Counts 3 and 4 contain the
same ambiguous, overborad, and arbitrarily enforceable langauge
"not limited to".

Count 3, charges that the Defendant possessed Child Pornography
in violation of § 2252(a)(4)(B) on a "Compaq Presario Laptop"... The
images included, but are not limited to...". This charge violates
not only specificity of an indictment, but Double Jeopardy.

By the language used by Congress in 18 U.S.C. § 2252(a)(4)(B),
it is clear that the "unit of prosecution" for this charge is "one
or more" images, media or otherwise that contains child pornography.
Both Counts 2 and 3 are alleged to have occured during the same time
of January 7, 2007 and August 9, 2007. None of the images carried

7.

specific time stamps to indicate that they were different from the
images possessed in Count 2 during the same time frame. Also with the
"not limited to" language, it is probable that the Jury used the
same images to convict. Congress' crime of possession of one or more
indicates definatively that no matter how many types of media or the
number of images, only one count can be charged.

Mr. Morris was ineffective for not making this obvious and
clearly stronger claim as such a claim is based on well settled law.
The Defendant is prejudiced by being under an additional conviction,
fine, assessment, and sentence as a reault of this claim which the
§2255 court says is not cognizable on §2255.

Count 4 charged that in violation of 18 U.S.C. § 2252(a)(2),
that the Defendant Received child pornography on a "Compaq Presario
Laptop"...The images included, but are not limited to...".
Count 4 charges receipt of child pornography on the same exact
Laptop as found in Count 3. Count 4 claims March 15,2007, which is
within the January 7,2007-August 9,2009 timeframe as Count 3. With
the abmiguous language "not limited to" the jury was able to convict
the Defendant for the same images he possessed in Count 3. Absent
the interviewing of the jury as to which images they used, as they
were not limited to any specific images, it is probable that the
Defendant was indeed convicted of possessing and receiving the
exact same images in both counts.

It is well settled law that Possession is a lesser included
offense to Receipt. One must have received in order to possess, and
if one possess, he most certaintly received.

Counts 3 and 4 are in violation of Double Jeopardy. As such,
ignoring the argument on "not limited to" ambiguity as found in the

Second Superceding Indictment in Counts 2,3,4, Count 3 is multiplicious of Count 4.

Mr. Morris's failure to raise this issue which is obvious and clearly stronger than the unsettled law argument he did raise, was ineffective. As such the Defendant was prejudiced by the additional fine, assessment, sentence due to this Fifth Amendment Violation.

Furthermore, as all three counts contain the "not limited to" language, which even on the best day is clearly ambiguous and is therefore in violation of Due Process, without interviewing the jury to determine which images (not limited to) they used to enter their verdicts.

As such, these 3 counts (2,3,4) must be vacated as the indictment is defective in nature and application.

> "There is no reason why prosecutors should not be required to comply with the universally recognized rule that the evidence to be presented before a Grand Jury should be competent. Where as here [with the "not limited to" phrase], the rule has been completely disregarded, the resulting indictment is invalid and violates the petitioner's constitutional rights." Costello v. United States, 350 US 359

By including the language "not limited to", in reference to the available evidence for conviction, thereby allowing for the jury, as the charge reads, to convict the Petitioner for evidence that may or may not have been presented at the Grand Jury or Trial, is "so standardless that it aurhotizes or encourages seriously discriminatory enforcement." Hill v. Colorado, 530 U.S. 703,732. This has led the Charges (Counts 2-4) of the Secondsuperceding indictment "vague and open-ended in a number of marerial respects." United States v. Broce, 488 U.S. 563,585

As the Habeas Judge Made crystal clear that "Courtright did not [through his attorney] raise issues surrounding the second superce-

ding indictment...", and the defects of the language and double jeo-
pardy risks contained within are obvious, the law on such matters is
clearly precedented and settled, then such challenges to the Second
Superceding Indictment are "clearly stronger" issues for appeal. Had
Appellate Counsel raised this(these) issues, based upon case histories
even in this circuit, the outcome would have been a vacation of these
3 counts.

> "the court asks whetger there is a reasonable probability
> that, but for counsel's unprofessional errors, the result of
> the direct appeal would have been different." Miller v. Zatecky,
> 820 F.3d 275,281 (7th Cir 2016)

To compound the defects within the indictment, defense counsel
Jeffery Rosanswank, after receiving the Second Superceding Indictment
on February 18,2009, entered a Motion to Continue Trial Date on the
23rd of February 2009. Trial date was currently set for March 2,2009.
The trial Court abused its discretion by denying any continuance,
the court even cited that the Second Superceding Indictment in fact
contained a new charge, as claimed by counsel, yet, the court, as is
documented in Trial Document # 78, the "court took the government at
its word", and without hearing, denied the continuance. Had this motion
to continue been Granted, Trial Counsel, being allegedly professional
and competent, would have noted the overbroad language which was the
direct cause duplicity and multiplicity in counts 2-4.

Even more problematic for the trial court's denial is on the day
of trial, March 2,2009, the defense counsel again requested time to
prepare. Add the factor that the Defendant was never arraigned in the
Second Superceding Indictment, In accordance with 18 U.S.C. §3161,
trial is not supposed to begin until at least 30 days after the Def-
endant is arraigned when entering a guilty plea, the court being on

10.

record as biased towards the government's favor (takes the government
at its word), the additional charge, the defects in the indictment,
the fact that trial counsel also avered the inclusion of new evidence
from the government, and this is a clear denial of Due Process of Law
which is a manifest injustice.

Based upon the conclusive fact that, although defense counsel
obtained permission to hire a computer expert, yet never presented
any expert evidence, the fact that although some witnesses were under
defense subpoena, no witnesses were called, the fact that there was
no actual defense given (the defense rests), before closing arguments
it is apparent that the effect of the Government obtaining a Second
Superceding Indictment 12 days before trial, and "inundating" defense
counsel with over 1000 new documents, and the trial courts abuse in
discretion by not Granting the requested continuance, these actions
constructively denied the Defendant Efefctive Assistance of Counsel.

"circumstances of such magnitude that, although counsel is avai-
lable to assist the accused during trial, the liklihood that any
lawyer, even a fully competent one, could provide effective ass-
istance is so small tht a presumption of prejudice is appropriate
without inquiry into the actual conduct of the trial." United
States v. Cronic, 466 U.S. 648, 659-60

Even acting as an educated layman, the Defendant has shown that
Appellate Counsels failure to raise this obvious and clearly stronger
issue on appeal was ineffective assistance of counsel. As Judge David
R. Herndon ruled on the Defendant's §2255 Motion, because these issues
were not raised on appeal, such issues are not cognizable on the §2255
motion. This creates an extraordinary circumstance in which such an
argument must be raised on appeal which requires this Court recall its
mandate under its inherent power to do so.

11.

# CLAIM III

The third issue in which Gareth Morris was Ineffective Assistance
of Appellate Counsel by not raising the Claim that was obvious and is
clearly stronger than the Claim he did raise which was not settled
law, nor had it been raised in such a fashion before, is the FACT that
a combination of a "Huge Mistake" on the part of the U.S. Attorney's
Office, a "big, big, big mostake" by the court itself, and the failure
of trial counsel Jeffery Rosanswank to enter a motion to vacate, the
Verdicts of Guilty in Counts 1,2,5 were all found with prejudice due
to undue influence on a deliberating jury.

Habeas Judge David R. Herndon ruled that the Defendant [through
his attorney], did not raise "any issue concerning the court's handling
of the evidence issue on direct appeal". The habeas court clearly said:

> "A petitioner cannot raise constitutional issues that he could
> have but did not directly appeal." <u>Bousley V. United States</u>,
> 523 U.S. 614,622

Furthermore, the judge stated "A 2255 cannot pursue nonconstitutional
issues thta were not raised on appeal. Therefore, if the Defendant's
Claim(s) are Meritorious, this Court must exercise its discretion to
Recall Mandate and enter a ruling on the merits herein.

On March 6,2009, the date of closing arguments, the court was
clear when it stated to both defense and government counsels to get
with the court officer and ensure that the properly admitted pieces
of evidence were taken to the jury deliberations room prior to deli-
berations. Believing that those instructed were "professional members
of the court", the fact that all evidence was logged on a sheet, it
is improbable that, if there were 30 pieces of evidence on the sheet,
that these professionals would not have counted and ensured that there
was 30 pieces of evidence taken back to hte jury deliberations room.

However, the "worst case senario" did occur. The U.S. Attorney's Office withheld (intentionally or otherwise), 4 pieces of evidence which did not go beck with the jury. Thus is the begining of a "comedy" of errors which led to the Verdicts in Counts 1,2,5 being prejudiced.

When this evidence was discovered by the U.S. Attorney, they notified defense counsel and the court. this resulted in an "evidentiary hearing" concerning how to handle this mishandled evidence.

In violation of the Defendant's Right to be present at every stage of the trial as guaranteed by the Constitution and Rule 43 of the Fed. R.Crim.P., despite the fact the Defendant was a mere 10 paces away in the holding cell behind the courtoom, the Judge did not order the U.S. Marshal to bring the Defendant into the ocurtroom. Defense Counsel was effectively abandoning his client for allowing this hearing to occur in the Defendant's absense, and the U.S. Attorney, whom is responsible to ensure that the Defendant receives a "fair trial", also failed to ensure the Defendant's presence.

> "A defendant's presence at every critical stage of the trial is a right rooted in the Fifth and Sixth Amendment's to the United States Constitution...and therefore appears to be one of the "core" rights, like the decision to testify, that must be made personally, and cannot be waived by defense counsel without the clients consent." Hale v. United States, 2010 U.S. Dist. LEXIS 73604 (NDIL 2010) "Fed.R.Crim.P. 43(a) provides a broader right to be present than the right recognized under the Constitution." United States v. Smith, 31 F.3d 468,473 (7th Cir 1994)

The Trial Court, although the mistake was made by the U.S. Attorney, the burden of proof was alleged to be on the U.S. Attorney, Defense Counsel offered non-prejudicial ways to handle this mishandled evidence, the judge, acting with his bias towards the U.S. Attorney, ensured the Government receive a "fair trial" at the expense of the Defendant.

"Sixth Amendment is limitation on government and does not give

give prosecution right to fair trial". <u>Levine v. U.S. Dist. Court for Cent. Dist.</u>, 764 F.2d 590 (9th Cir 1985) "Sixth and Fourteenth Amendments guarantee defendant on trial for his life right to impartial jury" <u>Ross v. Oklahoma</u>, 487 U.S. 81

On Monday, March 9,2009, because the Defendant was not present for the discusion on the mishandled evidence, the court granted the Defendant the Right to discuss on record what occured.

According to the judge, the mishandling of the evidence was a "Huge Mistake on the U.S. Attorney's Office..." (see Trial Transcript March 9,2009, pg.12 @2-3). When addressing the FACT that the Defendant was not present at the hearing, the court described it as a "big, big big mistake" (see Trial Transcript March 9,2009, pg.12 @4-13). What the Defendant learned was that, "the government at the time was asserting that I should have--I should take the exhibits back, were concerned that between 4:30 and 5:00, the jury "could come back with a verdict" without having the benifit of those exhibits. That was their concern." (Tr.Trans. 3/9/09 pg.12 @13-17); that the judge, "when you look back on Friday's mistake[s], at the end of Friday, I was glad, quite frankly, when they wanted to go home. That meant to me that the whole episode, other than costing us some time, probably meant that it made no difference in their deliberations." (Tr.Trans. 3/9/09 pg. 13,14 @21-25,1); that the judge believed that "there was no prejudicial effect to you because they didn't arrive at a verdict." (Tr.Trans. 3/9/09 pg. 8@24-25); that when the court did take the exhibits back to the deliberating jury at the governments "assertion", the court knew of the potential for prejudice because the court states that "by the way, putting the one nonpornographic exhibit on top" (See Tr.Trans. pg. 4@12-14); and that "there is <u>no rule</u>, there's no book for that" (Tr.Trans. 3/9/09 pg. 12@2-3)

14.

"In a criminal case, <u>any</u> private communication, contact, or tampering directly or indirectly, with a juror during a trial about a matter pending before the jury is, for obvious reasons deemed presumptively prejudicial, if not made in pursuance of <u>known</u> <u>rules</u> of the court and instructions and directions of the court..." <u>Remmer v. United States</u>, 347 U.S. 227,229

It is clear by the judge's own words that there were no rules or books or anyother guidance on how to handle evidence that the U.S. Attorney's Office made a "huge mistake" in mishandling. So the judge, intentionally siding with the government, did personally take the 4 pieces of evidence to the jury deliberations room, while the jury was deliberating, he then did instruct the foreperson that the jury "should not attach any signifigance to the omission" (See 2255 Denial pg 15).

"the subject matter of the private communications between the judge and jury did not deal merely with housekeeping matters but <u>touched</u> on a fundemental issue..." <u>United States v. Smith</u>, 31 F.3d 468,473 (7th Cir 1994)

There was no instruction that a sitting judge that was presiding over the trial in which the jury was observing, that would overcome the overbearing attention being given to these 4 pieces of evidence by the fact that said judge was making a personal visit (as opposed to the normal deputy the jury dealt with), and delivering these 4 pieces of evidence while telling the jury to "wrap up their deliberations for that day" (2255 Denial pg.15). This event prejudiced the Defendant.

"When an accused's right to be present was violated, the conviction must be reversed unless the record negates <u>any</u> <u>prejudice</u>." <u>United States v. Rodriguez</u>, 67 F.3d 1312,1316 (7th Cir 1995)

Prejudice in this instant is obvious. The jury inferred, as any person would, that when the judge said "wrap it up", and by the way here is 4 pieces of evidence that they "should not attach any signifigance to the ommission", yet did not give instructions that they should not give "any signifigance" to the actual evidence because the

was giving this evidence "special handling", that the judge was telling the jury that there they should use this evidence to help "wrap up their deliberations for the day".

Initially the judge, on March 9,2009, did not know of any verdicts. Based upon this lack of knowledge, of verdicts, the judge was able to make an impartial/unbiased ruling as to prejudicial effect of the U.S. Attorney mishandling evidence, the court's own error of not having the Defendant present at the time, and the court's own handling of the 4 pieces of evidence with ex parte communication and special delivery of these pieces of evidence.

The judge ruled that because there was no verdict, there was no prejudicial affect to the Defendant and that there was difference to their deliberations. Ordinarily this would satisfy Rodriguez, Id. in the record negating any possibility of prejudice. However this is not an ordinary case.

On March 9,2009, in the afternoon, the jury returned with 5 signed and dated verdict forms. Tr.Trans. 3/9/09, pg.17 @6, the Verdict for Count 1 was signed and dated March 6,2009. At line 11, Count 2 was signed and dated March 6,2009, and on pg.18 line 1, the verdict in Count 5 was signed and dated March 6,2009.

Therefore, using the trial courts own prejudial affect ruling, and interference with the deliberations of the jury ruling, there was in FACT prejudice and interference.

Using the standards in Rodriguez, Id., the record does not "negate any possibility of prejudice". In fact, there was prejudice due to the Huge Mistake of the government in mishandling the evidence, the Defendant's absense from a "critical stage" of trial, and the judge's ex parte, personal delivery of mishandled evidence with instructions to

wrap up for the day, and here is some evidence that we forgot to give to you (in other words, look at this evidence and if you think you can reach a verdict, do it soon because we need to close the courthouse at 5pm). Therefore, under Rodriguez, id, "the conviction must be reversed".

The record is unambiguous. The events and words as transcribed are true and beyond contestation. The events as described are as obvious as any error or event could be. The events happened in a specific chronological order; (the government mishandled evidence, the court forgot to order the Defendants presence, defense counsel forgot to request the Defendant's presence, the government for got to ensure the Defendant's "presense at all critical stages", defense counsel gave a recomendation that would have removed any prejudicial effect on the evidence, the judge acted with bias against the Defendant and towards the government by siding with the government's recomendation which was the most prejudicial, the trial judge hand delivered the 4 mishandled pieces of evidence ex parte to a deliberating jury, the judge gave instructions to the effect of "hurry up we are locking the doors" when he said "wrap it up" and by the way here is some evidence we forgot to give you, based upon the verdict forms the jury then reached 3 verdicts of guilty on this 3/6/09 Friday, the court ajourned until monday, the Defendant addressed the court on Monday, the court said the U.S. Attorney's Office made a "huge mistake", the court made a "faux pas" but well "faux pas is too mild... it was a big, big, big mistake", the court said that because there were no (known) verdicts determined on Friday 3/6/09 that there was no prejudice and no interference in the deliberations of the jury by the mistakes on Friday, the jury returns later with 5 signed and dated verdict forms where 3 verdicts were in fact determined on Friday 3/6/09 which is obvious, observable, and direct

evidence that the mistakes on Friday 3/6/09 the "mistakes" did have a prejudical effect towards the Defendant and did interfere with their deliberations, neither the court/defense counsel/nor the government protected due process by moving that these 3 verdicts in Counts 1,2,5 be vacated due to the prejudical effect of Friday and Appellate Counsel was ineffective for not raising this ovbious, observable, and clearly stronger claim.

Gareth Morris was trying to "make a name for himself" by causing the court to change how and when 413/414 evidence is applicable. This argument was not a strong argument because until then it was settled that all prior bad acts were admissible in all sex offenses without any dispute. The most similar argument was that 413/414 must pass 403 to be admissible. There was no obvious argument to be made, other than the "gamble" (which is not strategy) the counsel submitted. When the record is so chronologacally clear that 3 verdicts (especially the one with a life plus 10 year mandatory sentence) whould be dropped due to the erroneous events at trial by the government, court, and clearly ineffective assistance of trial counsel in failing to raise the issue, any reasonable, competent, professional attorney would have Gareth Morris effectively abandoned his client for his own personal notariety.

As Habeas Court claimed this was not cognizable on §2255 Motions, and it must be raised on appeal where it was not, the only remedy is for this court to RECALL its Mandate and Vacate the Verdicts and the Sentences in Counts 1,2,5 with prejudice. It was the government's own error that led to the prejudice, so all events are chargable to the U.S. Attorney's Office.

## CLAIM IV

Gareth Morris was ineffective in his assistance as appellate counsel, This issue is not cognizable on §2255 motions accouring to the Habeas Court's Denial because neither trial counsel nor appellate counsel "appeal[ed] this court's decision to strike the motion as untimely". The record made clear that Trial Counsel was ineffective in his failure to timely file the motion to suppress evidence that was obtained by state actors in violation of the Fourth Amendment. As the record is replete with "continuing objects" to evidence based on the "unheard" untimely motion, it was obvious that Mr. Morris was responsible to raise this issue on direct appeal. Fourth Amendment law is clearly stronger than the unknown results of challenging whether the word "accused" means "charged" in the context of rule 413/414. If it were the "obvious" and "clearly stronger" issue, then based upon the argument, the government would have more than likely conceeded. It is clearly obvious that this was not the stronger issue (413/414 words).

> "evidence obtained by state officers during a search which
> if conducted by federal officers, would have violated the
> defendant's immunity from unreasonable searches and seizures
> under Fourth Amendment is inadmissible over the defendant's
> timely objection in a federal Criminal Trial." Elkins v. United
> States, 364 U.S. 206,223

It is clear that the Attorney General for the State of Illinois intentionally violated the Fourth Amendment protections afforded to the Defendant.

On May 18,2007, The AG of Illinois issued Subpoena, purpotedly under its powers contained within the "Illinois Consumer Fraud and Deceptive Practices Act"; 815 ILCS 505/1 et.seq. (herein "fraud act"). According to the Highest Court in Illinois:

> "The language of the act shows that its reach is to be limited
> to the conduct that defrauds or deceives customers or others,

and everyone of the specifically prohibited acts set out in the act describe a situation where a buyer is being harmed by overreaching of fradulent conduct." Laughlin v. Evanston Hosp., 133 ILL 2d 374 (1990)

The said Subpoena was issued againt MySpace®. However, MySpace® was not accused of any Consumer Fraud or Deceptive Practices. Instead, referring to the SENTENAL SAFE TOOL®, which was develpoed by the makers of MySpace®,, to obtain "All subscriber information pertaining to any MySpace® user identified through the Sentinel SAFE tool as a registered sex offender.". (The subpoena was provided with the initial 2255 and is no longer in the Petitioer's property due to the FBOP seizing his legal documents). This was an illegal Subpoena and the execution of this Subpoena was a "fishing expedition" prohibited by the Fourth Amendment of the Constitution of the United States.

"While the language of the Amendment is general, it forbidd every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent." Kerr v. United States, 374 U.S. 23,33

Based upon the language in the Subpoena, the purpose was to act against the "known offenders" in obtaining personal information so that the AG could "go fishing" for some unreported and unknown crimes. This action alone was illegal as there was no probable cause nor any reasonable suspicion against any person(s) that any sepcific crime had been committed.  It would be the same as pulling over every driver that was driving a car that had been cited for DUI with no other sus-picion to go on other than the car had once been involved in a DUI. This extreme  sort of "fishing" is blatantly illegal and unconstitutional. There is also a Due Process violation in the fact that the Defendant was only a member of a "group" of persons. Are we going to authorize the AG of Illinois to "fish" for crimes because a person is a Muslim?

Furthermore, the use of MySpace® is encompassed within the First

Amendment. Absent an actual investigation against the Defendant that would have been caused by an actual offense being reported to have occured, such information is protected by the First Amendment.

> "When a government search or seizure implicates First Amendment Rights, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude."". Maryland v. Macon, 472 U.S. 463,468

Therefore, not only was the Subpoena Fatal on its face, as it did not allege any specific investigations of Fraud or of Deceptive Practice being committed by MySpace® or its subscribers, not only was it over-broad in gaining information of every registered sex offender whether in the jurisdiction of the State of Illinois or not, by using its alleged subpoena powers to "spy" on the First Amendment Activities of any class of persons is unconstitutional.

> "First Amendment protections for speech extend fully to communications made through the medium of the Internet." TV v. Smith-Green, 807 F.Supp 2d 767,777 (7th Dist 2011).

The results of this ILLEGAL/UNCONSTITUTIONAL Subpoena were used to "fish" for some unknown crimes in the ICAC database. Again, this is the same as randomly running license plates through databases to see if the car was related to illegal activity, without a specific report prior to running the license plate, or running it after some cause (i.e. speeding).

> "The government [bears] the burden of showing that it was not conducting a general "fishing expieition."". United States v. Dionisio, 410 U.S. 1,49

As is clearly obvious on the face of the Subpoena itself, the only purpose of this subpoena was to "fish". This is supported by the use of the information after it was discovered. This was a "fishing expieition".

> "The manifest purpose of the Fourth Amendment's requirement that a search warrant [or subpoena]... prevent general sear-

> ches...insures that the search...will not take on the char-
> acter of the wide-ranging exploratory searches the Framer's
> intended to prohibit..." Horton v. California, 496 U.S. 128
> 140

As of date, the AG of Illinois has been given carte blanc under
the "ends justicy the means" to issue whatever piece of paper they
do or do not have the authority to execute in order to fish for crimes
just because of a certain class of offender offends the morals of the
Attorney General. The SDIL's failure to hear the argument (untimely
filed by trial counsel), and the non-factual opinion of the court
making its opinion on the Defendant's §2255 because the court said it
was not cognizable on §2255, has supported the AG's unconstitutional
Fourth and First Amendment violations.

> "It is not the function of this ocurt, even when guilt may
> be obvious, to ignore clearly unconstitutional actions by
> [persons acting under the color of law] in order to assist
> them." United States v. Novak, 870 F.2d 1345,1353 (7th Cir
> 1989)

As the suppression motion was already "on record", appellate
counsel was responsible to challenge the Defendant's case based upon
this illegal subpoena. Any search that was based upon information
seized from an illegal search, is "fruit of the poison tree" and is
therefore inadmissable against a criminal defendant.

> "Evidence seized in an illegal search is excluded in
> criminal prosecutions, not because of the quality of proof,
> but to secure meaningful enforcement of the Fourth Amend-
> ment." Massiah v. United States, 377 U.S. 201,208

Failure to rule this Subpoena and subsequent search as a result
thereof, would be to allow the AG of Illinois to run unchecked and
to allow the Federal U.S.Attorney's Office to use any and all evidence
no matter how such evidence might have been obtained.

In these few pages, the Defendant has "proven" that the illegal
subpoena in violation of the Fourth Amendment was clearly a stronger

issue to have been raised by appellate counsel. Either appellate counsel was ineffective which lead to the conviction of the Defendant in violation of the Fourth Amendment and Due Process, or the Habeas Court abused its discretion when it declared that this issue was not allowed to be raised on §2255 because neither trial nor appeals counsel raised the issue in prior actions, or both. In either circumstance, this issue is a Fundemental Defect in the Trial which lead to the manifest injustice of the Defendant being convicted in violation of the Fourth and Fifth Amendment's.

This is an extraordinary circumstance which requires for the Court to exercise its inherent power to recall a mandate in this case and to correct an obvious, observed, and direct violation of the Constitution. As the Constitutional Violation stands and there is no rule or statute available to the Defendnat to cause a correction of such an error, (not Habeas cognizable), this court must act.

                              CLAIM V

Appellate Counsel was clearly ineffective by not raising the obvious and clearly stronger issue that the Defendnat's statement was involuntary and should have been suppressed.

In pretrial motions, the court ruled that the Defendant's statement was voluntary. This is because the court believed that the established fact that the Defendant had taken Percocet® and Valium® prior to questioning did not affect the Defendant's "free will".

Yet, the court did note that the Defendant appeared "relaxed" in a situation that would have been otherwise stressful. Therefore, the courts own words indicated a difference in demeanor (the court had the Defendant on the stand during pretrial motions). Even to the court, the Defendant's "normal" demeanor had changed.

23.

"Percocet...contain[s] the active ingredient oxycodone, an opiod with arrtibutes similar to morphine and which may impair the mental and physical abilities required for the performance of potentially hazardous tasks. Physcian's Desk Reference 1245-46(2004). The most frequently observed adverse reactions include light-headiness, dizziness, sedation, nausea and vomitting; other adverse reactions include euphoria and dysphoria. ID. at 1246. It is at least arguable that a normal dose leading to some of these reactions would have seriously interfered with Howard's ability to make a reasoned chouce..."United States v. Howard, 381 F.3d 873,880 (9th Cir 2004)

Couple the "arguable" effects of Percocet with Valium and it is no wonder why the Defendant acted as he was invincible during the questioning in his "relaxed" state. It was established that Detective Wojotivicz, the lead investigator, personally examined the prescription bottles of the Defendant before the Defendant ingested these pills before being driven to the Granite City Police Department and then questioned for several hours. Because this is FACT, the Detective "tried to paly it off" and claimed (very unconvincingly), that a seasoned detective of many years, when given the prescription bottles he only looked at the name of the Defendnat and the dose without bothering to look at the name of the drug. The court found this more credible than Percocet and Valium affected the Defendant's free will.

The primary denial was based on the fact that trial counsel did not submitt any medical evidence (not WebMD or PDR or testimony of a Walgreens Pharmacy Technician), to support the Defendant's claims of free will interference. This evidence was readily and clearly available to trial counsel. The record made plain his ineffectiviness. Appellate counsel was ineffective for failing to raise this issue as it was obvious and clearly stronger than the "guess-work" on the word "accused".

# CLAIM VI

The Defendant was sentenced to a Life Sentence pursuant to 18 U.S.C. §3559(e) in violation of Due Process of Law. To "justify" a sentence under §3559(e), the trial court merely looked into the actual conduct as charged, and not into the statute under Illinois Law. This was a clear violation of clearly established Federal Law.

> "Whether a state conviction falls within a federal definition of a crime...it generally requires the trial court to look only to the fact of a conviction and the statutory definition of the prior offense." <u>Taylor v. United States</u>, 495 U.S. 575,600,602; Under the categorical approach, the Seventh Circuit considers the offense generically; the United States Court of Appeals may <u>not</u> inquire into the specific conduct of a particular offender." <u>United States v. Woods</u>, 576 F.3d 400, 404 (7th Cir 2009)

This information was known, or should have been known by defense counsel and appellate counsel respectively.. Furthermore, the trial court was required to know these facts in case law. Because the U.S. Attorney's Office had an obligation under due process to know this, and the failure to exercise this knowledge caused a denial of the entire judicial proceeding in violation of the Fifth and Sixth Amendment.

Because the <u>Woods</u>, Id., case occured in time for direct appeal, the appeal on an unlawful Life Sentence that's outside the power of the law to impose against the Defendant, is an obvious and clearly stronger argument than the "gamble" of the definition as applied to the term "accused" in 413/414 cases. This clearly renders Gareth Morris as an ineffective appellate counsel in violation of the Sixth Amendment. It also is an obvious abuse of discretion on the trial court in violation of Due Process. A life sentence which is an illegal sentence is an observable, obvious and direct trial error which is a Manifest Injustice.

Recently in <u>United States v. Fifer</u>, 2016 U.S. Dist. LEXIS 65590

erroneous facts which were not on record.

In this Court's Denial of the Defendant's Direct Appeal, the errors of fact are as follows:

1) This Court stated that "Courtright first took up his hobby in 1998" @365. However the "evidence of a 1998 hobby of photography" was based on charges that were dismissed for lack of evidence and on testimony that this Court clearly stated was inadmissable under the Rules of Evidence. It therefore prejudiced the Defendant in this Court's decision.

2) At 366, this Court states the victims face was "obscured", yet the images at trial clearly show no face as the images were alleged to be from the neck down.

3) At 367, this Court states that the victim "rebuked" the Defendant's alleged "advances". Yet the record clearly reflects that the victim clearly testified that she allegedly told the Defendant that she wanted the Defendant to take her pictures for money. There were no alleged "advances" nor any alleged "rebukes" by or to the Defendant.

4) This Court at 367 confuses the inadmissible testimony of Lisa Miller with the record of fact on the alleged victim. The Court claims that the Defendant "put his finger in her vagina". This was the testimony of the prior bad act which was inadmissible. At no place in the record did the victim ever state the Defendant even allegedly touched the vitcim on any genital or other illegal area. The Victim stated when asked about this "touching" that the Defendant did not, "not even close".

5) This Court justifies a "harmless error" because the Defendant

allegedly "asked him [the victims father] about taking phoro-
graphs of the victim." @370. Yet the record makes clear that
the victims father articulated without ambiguity that he did
not have any knowledge of images or anything until the Granite
City Police Department came to him.

6) This Court again mismatches the inadmissible prior bad acts
testimony with the testimony of the victim. The Court states
that the Defendant allegedly "engaged in sesually explicit
acts with them." The only alleged "sexual activity" came
from the prior bad acts. The victim clearly stated that the
Defendant did not even come close to sexual contact. @370

7) Then this Court alludes to the Defendant's fellow jail
inmate solicited a confession from the Defendant. First,
at the time this "solicitation" occured, the Defendant was
represented by counsel. Second, the "confession" based on
the advanced terms (type of computer etc...) used is not
only improbable, but unbelievable. Thjrd, as the Defendant
has been described as very inteligent, knowing the nature
of the allegations against the Defendant, the fact the Def-
endant was going to trial, the knowledge of the risk to life
based upon the nature of charges and the fact the Defendant
knew these risks. he would not have admitted to a crime he
was pleading not-guilty to. Also this violates Messiah!s
prohibition of "snitches for the government to those with
an attorney".

8) Finally @370 this Court stated that the Defendant did not
call any witnesses or present any evidence of his actual
innocence. This is a failure of trial counsel and it is a

true claim of ineffective assistance of trial counsel, and the Habeas Court barred the Defendant from raising any of these issues on §2255, the Defendant's Denial on Direct Appeal by this Court is cognizable on a Recall of Mandate.

These fallacious non-record facts used by this Court in the Defendant's Direct Appeal rendered my Appellate Counsel Constructively Ineffective under Cronic, id. 466 U.S. at 659-60. No competent or any other Attorney could provide effective assistance of counsel when the reviewing court uses information not in record, mis-matches facts, uses testimony in violation of Miranda, and prejudices the Defendant on page one of the opinion with unproven conduct. This presumes that the Defendant was prejudiced.

### CONCLUSION

Many Fundemental Errors occured from day one of this case.

> "An error of fundamental character is one that renders the proceeding itself irregular or invalid or results in a complete miscarriage of justice." Frias-Castro v. United States, 1994 U.S. App. LEXIS 2217 (7th Cir 1994).

There are numerous errors of a fundamendtal character that have occured in the various stages of this case. Many of these errors are infact the cause of a manifest injustice. The Defendant is suffering under sentences which are not cognizable under the law to inflict on the Defendant. These are illegal sentences. The Defendant is actually innocent of the Sentence under §3559(e), §3664, §982. The Defendant has not received "a reasonable opportunity to obtain reliable judicial determination of the fundamental legality of his conviction and sentence." In re Davenport, 147 F.3d 605,609 (7th Cir 1998).

When claims of ineffective assistance of appellate counsel are

not cognizable in a Habeas Motion because the issues were not raised
on Direct Appeal, then the only cognizable motion to file by any
Defendant is for the United States Court of Appeals to Recall the
Mandate of the Appeal where counsel was ineffective for not raising
the contestable issues.

> "Appellate Counsel's performance is deficient if counsel
> fails to appeal an issue that is both obvious and clearly
> stronger than the one that was raised." Winters v Miller,
> 274 F.3d 1161,1167 (7th Cir 2001)

The Supreme Court sanctions that this Court may Recall a Mandate
"for good cause of to prevent injustice". Calderon v. Thompson, 523
U.S. 538,550. A manifest injustice is "an error that is direct, obvious
and observable..." Blakeney v. Ascension Servs. L.P., 2016 U.S. Dist.
LEXIS 159687 (N.D.CA 2016)

All the errors claimed in this Motion to Recall Mandate are the
result of direct, obvious, and observable errors by the trial court,
the U.S. Attorney's Office, Defense Counsel and Appellate Counsel, as
well as errors by this Court. This has violated the Substantial Rights
of the Defendant in this case. "Substantial Rights are those that
affect the outcome of the case." United States Bishawi, 272 F.3d 458
462 (7th Cir 2001).

> "The appearance of evenhanded justice... is at the core
> of due process." Mayberry v. Pennsylvania, 400 U.S. 455,469

When this record is reviewed, and the bias of the nature of the
case is removed, and the prejudice towards pro se litigants is over-
come, it is apparent that there was not even the appearance of any
justice for any party except the Government. The desire to "protect"
the Government's case and conviction and sentence has been the theme
of this action against the Defendant. From:

1). Failing to arraign on the new indictment and postpone

30.

the trial for the minimum of 30 days as required by the
Speedy Trial Act.

2). The failure to continue although Defense Counsel was himself
concerned with being ineffective due to being "inundated"
with paperwork, a new indictment with a new charge, and
his failure to previously "timely" file suppression motions.

3). The open agreement with the U.S. Attorney's Office in their
prejudicial "recomendation" on how to handle evidence that
had been "mishandled" by the government, ignoring any and
all possibility of prejudice suggestions by defense counsel.

4). "Taking the government at its word" that the new indictment
was "house-cleaning".

5). Refusing to vacate Counts 1,2,5 sua sponte when the court
had ruled "no verdict=no prejudice" when the court itself
discovered that there were in fact 3 verdicts which must
equal 3 instances of prejudice.

6). Hand carrying evidence ex parte to a deliberating jury.

7). Denying the Defendant's Rule 32(e)(2) "at least 35 days
before sentencing unless waived by the defendant" delivery
of the PSR to the Defendant.

Just in these facts, there is no doubt that the "record shows actual
bias or leaves an abiding impression that the jury perceived an app-
erance of advocacy or partiality." (see United States v. Laurins,
857 F.2d 529,537 (9th Cir 1988)).

Because Due Process demands more than that the judge actually
be impartial, (see Robertson v. California , 498 US 1004), and that
"preserving public confidence includes maintaining the perception of
judicial propriety." Re Munchinson,349 U.S. 133,136, when the trial

record in its entirety, when given independent review, demonstrates that instead of ensuring a "fair trial" for the Defendant, on some critical decisions, the trial court clearly abused its discretion in disregarding established law when the Defendant has not clearly waived his rights in order to ensure that the government is the one who gets a "fair trial", Justice has not satisfied the appearance of justice.

This entire motion revolves on the FACT that because the Defendnt's Appellate Counsel was obviously and observabley ineffective and at one point constructively ineffective, counsel did not raise these "obvious and clearly stronger" issues on Direct Appeal. Some of these errors (most of them), resulted in ineffective assistance of trial counsel, and reading the law, should have been cognizable on §2255. Whether the Habeas Court applied an unreasonable application of clearly established federal law, or the Habeas Court did not treat the pro se document liberally, or the habeas court was exercising a bias against the Defendant in his actions, or for what ever reason, the Habeas Court, without the use of an evidentiary hearing, decided that the Defendant's claims, first, could not be raised on §2255 because the claims were not raised on appeal, and second, that, again without an evidentiary hearing, that the Defendant had no merit to his claims in that he failed to show error or ineffective counsel. A cursory reading of this motion gives more than a reasonable cause to believe that the Defendant has suffered an injustice. Substantial, Fundamental, and constitutional rights and protections have been systematically denied/destroyed.

> "it is constitutional error to enter a conviction against against a defendant for both receipt and possession of child pornography for the same conduct." (see Brown v.

Ohio, 432 U.S. 161,168-69)

This Court must entertain this motion because "a fundamental miscarriage will result from the failure to entertain his claim". McCleskey v. Zant, 499 U.S. 467, 494-95. Furthermore, "In behalf of the unfortunates, Federal Courts should act in doing justice if the record makes plain the right to relief." United States v. Morgan, 346 U.S. 502,506.

Wherefore, the Defendant prays upon this Court to see that justice is fulfilled, that impartiality is upheld, that the Defendant not be forced to have unconstitutional/illegal sentences executed against him, to charge the ineffective assistance of both trial and appellate counsel be charged against the government, that access to justice not be denied to pro se litigants for the reason of being pro se, that Due Process is not destroyed because:

> "this prisoner was sentenced on the basis of assumptions concerning his criminal which were materially untrue. Such a result, whether caused by carelesness or design is inconsistent with due process of law and such a conviction cannot stand.." Townsend v. Burke, 334 U.S. 736,741

and that Defendants are not denied justice just because of the social/political pressures related to the offenses charged.

The "cost of correction is... small because a remand for sentencing...doesn't require that a defendant be released or retried." Molina-Martinez v. United States, 136 S. Ct. 1338,1349.

The Defendant hereby requests for the reasons ablve that this Court GRANT this Motion to Recall Mandate and to review a-new the claims raised herein. As the pro se Defendant has taken only 33 pages to evidence the merits of these claims, there is no tactic or strategy to excuse appointed counsel(s) from making the same arguments.

Respectively Submitted,

33

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,          )
                 Plaintiff,        )
                                   )
v.                                 )  CASE NO. 09-2880
                                   )  On Appeal From the Southern
CARL ALBERT COURTRIGHT,III,        )  District of ILLINOIS, # 07-cr
_____Defendant._____ )  -30179-DRH, E.St.Louis

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPE-FACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.   This Brief complies with type-volume limitations of Fed.R.

     App.P. 32(a)(7)(B) because:

          This brief uses a momospaced typeface and contains 1057

          lines of text.

2.   This Brief complies with the type-face requirements of Fed.

     R.App.P. 32(a)(5) and the type-style  requirements of 32(a)(6)

     because:

          This brief has been prepared in a monospaced typeface

          using a Swintec® Typewriter with a 10 characters per

          inch Roman text style print wheel.

Date: Murch 21 ,2017              By: _____
                                       Carl A. Courtright, III
                                       Pro Se Litigant

# CERTIFICATE OF SERVICE

I, __Carl Albert Courtright, III__ , hereby certify that I have served a true and correct copy of the foregoing:

Motion to Recall Mandate

Which is deemed filed at the time it was delivered to prison authorities for forwarding to the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

The U.S. Court of Appeals for the Seventh Circuit
219 S. Dearborn St., Room 2722, Chicago, IL 60604-1702

&

United States Attornies Office
Nine Executive Dr. Fairview Heights, IL 62208
and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this ___21___ day of __March__, 2017  *Pursuant to 28 U.S.C. §1746*

Respectfully Submitted,

REG. NO. 07860-025